IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) No. 3:19-CR-218-TAV-DCP |
| GLENN FRED GLATZ, | ) |
| Defendant. | ) |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation as may be appropriate. This case is before the Court on multiple *pro se* motions by Defendant Glenn Fred Glatz, who asks to be transferred to another detention facility [Docs. 119-4, 129, 131, 131-1, 133, & 133-1]. Defendant Glatz, who is representing himself,[1] is detained at the Blount County Detention Facility ("BCDF"). Defendant contends that the conditions at the BCDF prevent him from defending himself in this case. Defendant alleges five categories of issues that interfere with his ability to represent himself: (1) Defendant has no or little access to the law library, (2) Defendant cannot get needed stationery supplies (paper, pens, and stamped envelopes), (3) Defendant has no access to elbow counsel, (4) Defendant has not received needed medical care, and (5) Defendant's physical condition and energy level have declined due to insufficient nutrients. The Government has not responded to Defendant's new motions for transfer, although it previously [Doc. 130] took no position on

---

[1] On June 8, 2021, the undersigned found that Defendant Glatz knowingly and voluntarily waived his right to counsel, permitted Defendant to represent himself, and appointed Assistant Federal Defender Jonathan A. Moffatt as elbow counsel [Doc. 48].

Defendant's request for transfer but argued that a transfer would not rectify the issues raised by Defendant Glatz.

The Court has reviewed Defendant's allegations, conferred with the United States Marshals Service ("USMS") regarding Defendant's circumstances and the conditions at the BCDF, and finds that Defendant's motions for transfer should be denied for the reasons stated herein.

I.   BACKGROUND

By way of background, the Court observes that Defendant Glatz previously filed a motion to transfer detention facilities, alleging he had no access to a law library, writing supplies, a telephone, or his elbow counsel at the BCDF [Doc. 117]. The Court heard argument on this motion on November 23, 2021. Based upon information provided in oral argument, the Court denied [Doc. 124] the request for transfer, finding Defendant failed to demonstrate that transfer to another facility would improve his access to a law library; Defendant acknowledged access to writing supplies; and that Defendant's telephone and visitation privileges were restricted until January 2, 2022, for disciplinary reasons, but that Defendant may contact elbow counsel and potential experts in writing during that time. The Court directed elbow counsel to consult with the USMS about possible solutions to expand Defendant's access to the law library while in pod D6 at the jail. Finally, the Court expressly directed Defendant Glatz not to file additional motions seeking transfer to another facility until he has exhausted the administrative procedures available to him at the jail and through elbow counsel [Doc. 124, p.12].

Defendant appealed [Doc. 128] the undersigned's ruling denying transfer to United States District Judge Thomas A. Varlan, arguing that he would not be subjected to the same restrictions or classified as an inmate who must be segregated from other inmates at another facility. On January 21, 2022, Judge Varlan denied Defendant's appeal, holding

> [In the Memorandum and Order,] Judge Poplin stated that this Court leaves matters of securing and housing pretrial detainees to the United States Marshals Service and that defendant must use administrative procedures available to him at the jail to appeal a disciplinary action [Doc. 124, p. 10]. Judge Poplin also found that three of defendant's four reasons for seeking transfer can or have been ameliorated [Id.]. The Court finds that these conclusions are well-founded, not opposed in this appeal, and serve as adequate grounds for the denial of defendant's motion to transfer. Accordingly, . . . defendant has not shown that Judge Poplin's denial of his motion to transfer was clearly erroneous or contrary to law[.]

[Doc. 132, p.8].

## II.  ANALYSIS

In the current motions for transfer, Defendant Glatz raises some of the same issues that he raised in November 2021: (1) Defendant has no or little access to the law library, (2) Defendant cannot get needed stationery supplies (paper, pens, and stamped envelopes), and (3) Defendant has no access to elbow counsel. Defendant now adds two additional allegations: (4) Defendant has not received needed medical care and (5) Defendant's physical condition and energy level have declined due to insufficient nutrients. The Court begins by again observing that it leaves matters of securing and housing pretrial detainees to the USMS. The Court previously directed Defendant that he must exhaust the administrative avenues available to him at the BCDF before filing motions for transfer. Defendant's *pro se* filings do not indicate whether he exhausted the administrative procedures, and his failure to demonstrate such exhaustion of administrative remedies alone is a sufficient basis to deny his renewed motions for transfer. Nevertheless, the Court has reviewed Defendant's allegations with the USMS and finds that Defendant's request for transfer should again be denied.

### A. Access to Law Library

At the November 23 motion hearing, Defendant stated that since his transfer to D pod, he only has access to the communal kiosk on which he can view the electronic law library for one hour daily and that during that hour, the kiosk must be shared with other inmates and Defendant must conduct other activities such as showering and requesting medical visits. On January 5, 2022, Defendant filed a renewed motion for transfer [Doc. 129], dated December 31, 2022, contending that he had no access to the law library in the last two weeks. On January 12, 2022, Defendant filed a motion for leave [Doc. 131] to file an attached Emergency Motion to be Housed in Other Facility [Doc. 131-1, p.4], which states that he has "virtually no access to [the] law library." He contends that from late November to early December, he was allowed to use the law library kiosk in the booking/intake area almost daily but that this access was discontinued around December 10 or 15 [Doc. 131-1, p. 5]. Defendant contends that since that time, around December 15, through the writing of the motion on January 9, he has gone to the law library kiosk once on January 4, 2022 [Doc. 131-1, p.5]. Defendant argues that he cannot defend himself without access to the law library.

As stated above, the Court has conferred with the USMS, which states that the BCDF has provided Defendant access to a law library kiosk, which is separate from the communal kiosk in his pod and which Defendant has used for up to three hours at a time. According to the USMS, records from BCDF show that Defendant used the law library kiosk for nearly thirty (30) hours between December 1, 2021, and January 4, 2022, including over nine (9) hours during the two-week period during which Defendant claims to have had no access. The Court finds that Defendant Glatz is being afforded access to the law library, despite being housed in D pod.

### B. Writing Supplies

Defendant alleges that he has no access to writing supplies or envelopes [Doc. 129] and that ten stamped envelopes were stolen from him when he was moved from C pod to D pod [Doc. 131-1]. Defendant also contends that he was not provided an "indigent pack," which includes paper, envelopes, and a pen, on one occasion [Doc. 131-1, p.5]. The USMS states that elbow counsel has provided pens, envelopes, and an ample paper supply (more than 1,000 sheets) for Defendant, which are distributed to Defendant as needed. The Defendant's filings confirm that he has access to stationery supplies.

### C. Access to Elbow Counsel

Defendant's telephone and visitation privileges were restricted through January 2, 2022, for a disciplinary infraction. In its prior Memorandum and Order [Doc. 124], the Court noted that Defendant could write to elbow counsel and potential experts, until his privileges were reinstated. The USMS confirmed that Defendant's telephone and visitation privileges, which were removed from November 2, 2021, through January 1, 2022, have been restored.

### D. Medical Care

In a filing dated January 9, 2022 [Doc. 131-1, p.9], Defendant states that he is not receiving medical care for a suspected skin cancer on his scalp and that he has been on a waiting list for an optometry appointment for six months. Defendant also contends that the BCDF's "medical staff cut [him] off from [his] psychiatric med[ication]s prescribed by a psychiatrist because [he] could not swallow them due to nausea due to constant hunger" [Doc. 131-1, p.9].

The USMS confirmed that Defendant received a biopsy on his head and the sutures were removed on January 21, 2022. Also, BCDF records reflect that a doctor approved discontinuation of Defendant's medication because he was not taking it. The Court has no information on

5

Defendant's requested optometry appointment; however, the Court finds that the delay of this appointment does not appear to be hindering Defendant's ability to defend himself.

**E. Diet**

In the most recent of his filings [Doc. 133-1], Defendant Glatz alleges that his physical condition is deteriorating and his energy and thought processes are declining due to the BCDF depriving him of sufficient nutrients.[2] Defendant asserts that his physical and mental decline are affecting his ability to defend himself in this case. Defendant states that he arrived at the jail weighing 215 pounds and "quickly" lost down to 175 pounds due to the inadequate nutrients [Doc. 133-1, p.4]. Defendant describes his extreme aversion to the peanut butter sandwiches served daily at the jail, states they make him nauseous, and that he stopped eating them [Doc. 133-1, pp.3-4].[3] Defendant states that due to his weight loss, the medical staff placed him on "double portions" from January through October 2021, and his weight rose to 207 pounds. Defendant contends that the double portions were discontinued in early October, which coincides with the events that resulted in his transfer to D pod [Doc. 133-1, p.4].

---

[2] Defendant also briefly mentions that the BCDF is renown among prisoners for sleep deprivation and that he has been the victim of violent assaults in the BCDF and other jails [Doc. 133-1, p.2]. These assertions are not explained, and the focus of Defendant's supplemental brief is on the food at the BCDF.

[3] In his most recent filing, Defendant states that the peanut butter sandwiches are served on "soggy, moldy bread" [Doc. 133-1, p.3]. However, this is the only reference to mold on the bread in a three-page discussion of the sandwiches served at the BCDF. Defendant does not complain of the bread used for the cheese or turkey sandwiches. Additionally, no mention is made of problems with the bread in Defendant's January 12 filings, although he discusses his aversion to the peanut butter sandwiches [Doc. 131-1, pp. 6, 8]. Defendant also briefly mentions his suspicions that other inmates are tampering with his food in the motion received January 12 [Doc. 131-1, p.8]. In light of Defendant's numerous complaints about conditions at the BCDF, several of which are contradicted in his own subsequent filings, the Court takes Defendant's reference to "moldy bread" to be hyperbole and his reference to food tampering to be speculative.

Defendant contends that he reported his extreme hunger and low energy to the doctor, who ordered that he be provided cheese sandwiches instead of peanut butter; however, according to Defendant, a nurse overrode this order, and he began receiving peanut butter sandwiches again [Doc. 133-1, p.4]. Defendant subsequently requested a Kosher diet and began receiving turkey sandwiches [Doc. 133-1, pp.4-5]. Defendant contends that turkey sandwiches were discontinued around January 9, 2022 [Doc. 133-1, p.5]. When Defendant inquired about this change, BCDF staff told him that turkey sandwiches were no longer served to the inmates, because the sandwiches, which are provided with the breakfast tray, are unrefrigerated if saved until lunch as intended [Doc. 133-1, pp.5-6]. Defendant contends that he believes that turkey sandwiches are being withheld only from him, because he subsequently received turkey sandwiches on a tray intended for another inmate [Doc. 133-1, p.6].

While the Court is concerned about Defendant's weight loss, it finds, even according to Defendant's account, his weight is being monitored by BCDF medical staff. According to the USMS, Defendant's weight declined from 207 pounds in October 2021 to 194 pounds on January 24, 2022. The USMS reports that Defendant is now receiving jelly sandwiches. From the information before it, the Court finds that the jail is monitoring and addressing Defendant's medical and dietary issues.

### III. CONCLUSION

The Court has examined the issues raised in Defendant's multiple motions for transfer to another detention facility and finds no basis to transfer Defendant Glatz. Additionally, the Court finds that Defendant has failed to demonstrate that he exhausted available administrative remedies. Accordingly, the Court **ORDERS** as follows:

>  (1) Defendant's motions [**Docs. 119-4, 129, 131, 131-1, 133, & 133-1**] are **DENIED**;

7

Case 3:19-cr-00218-TAV-DCP   Document 135   Filed 02/14/22   Page 7 of 8   PageID #: 2723

(2) Defendant is again **DIRECTED** not to file additional motions seeking transfer to another facility until he has exhausted the administrative remedies available at the BCDF **and** asked elbow counsel to raise his new issues with the USMS. Defendant must demonstrate compliance with these requirements in any future motion for transfer or said motion may be summarily denied; and

(3) The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum and Order to Defendant Glatz at the BCDF.

**IT IS SO ORDERED.**

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge