UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 3:19-CR-218-TAV-DCP |
| v. | ) | |
| | ) | |
| GLENN FRED GLATZ, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

All pretrial motions in this case have been referred to the undersigned pursuant to 28 U.S.C. § 636(b) for disposition or report and recommendation as may be appropriate. This matter is before the Court on Defendant Glen Fred Glatz's pro se motions for leave [Docs. 73, 119, & 144] to file four motions for subpoenas duces tecum:

(1) Motion to Receive Judicial Authorization to Have a Subpoena Duces Tecum and Warrant Issued to deviantART Website [Doc. 74];

(2) Motion to Subpoena Complete Phone Records from Metro by T-Mobile (Formerly Metro PCS) for Defendant's Phone Account [Doc. 119-2];

(3) Motion to Subpoena JCSO Camera Footage [Doc. 119-3]; and

(4) Motion Seeking Court Issuance of Subpoena to Google, LLC/Gmail for Defendant [Doc. 144-1].

Pursuant to Federal Rule of Criminal Procedure 17(b)–(c), Defendant asks the Court to issue subpoenas for records and video recordings from a website, a cellular service provider, the Jefferson County Sheriff's Office ("JCSO"), and an internet service provider. Defendant argues these records and video recordings are necessary for him to oppose pretrial motions. For the reasons discussed herein, Defendant's requests for issuance of subpoenas duces tecum [**Docs. 74,**

1

**119-2, 119-3, & 144/144-1]** are **DENIED**.

I.     **ANALYSIS**

Defendant requests subpoenas under Federal Rule of Criminal Procedure 17(b) and (c). Rule 17(b) of the Federal Rules of Criminal Procedure provides:

> Upon a defendant's ex parte application, the court must order that a subpoena be issued for a named witness if the defendant shows an inability to pay the witness's fees and the necessity of the witness's presence for an adequate defense. If the court orders a subpoena to be issued, the process costs and witness fees will be paid in the same manner as those paid for witnesses the government subpoenas.

Although "the right of an indigent criminal defendant to subpoena witnesses rests not only on Rule 17(b), but also on the Sixth Amendment right to compulsory process and on the Fifth Amendment right not to be subjected to disabilities by the criminal justice system because of financial status," the defendant nevertheless must make a preliminary showing that the requested witness is necessary to an adequate defense. *United States v. Moore*, 917 F.2d 215, 230 (6th Cir. 1990) (internal citations omitted). With respect to this preliminary showing required of indigent defendants, the Sixth Circuit held "[n]either rich nor poor defendants have an unfettered right to subpoenas without discretionary review by the district court." *Id.* "Necessary" in this context means "relevant, material, and useful to an adequate defense." *Id.* To properly make this preliminary showing, the defendant must offer more than mere generalities about the necessity of a witness or document. *United States v. McCaskill*, 48 F. App'x 961, 962 (6th Cir. 2002) (citing *United States v. Barker*, 553 F.2d 1013, 1020-21 (6th Cir. 1977)). Because such a showing necessarily reveals a defendant's defense, the Rule permits an application for subpoenas to be filed ex parte. Fed. R. Crim. P. 17(b).

Additionally, Federal Rule of Criminal Procedure 17(c)(1) provides, "[a] subpoena may order [a] witness to produce any books, papers, documents, data, or other objects the subpoena

designates."[1]  "A subpoena duces tecum must be reasonable, specific, and the documents requested must be relevant."  *United States v. Justice,* 14 F. App'x 426, 433 (6th Cir. 2001).  Importantly, Rule 17(c) is not intended to be used as a discovery device.  *United States v. Nixon*, 418 U.S. 683, 702 (1974); *see also United States v. Vassar,* 346 F. App'x 17, 24 (6th Cir. 2009); *Justice*, 14 F. App'x at 432.  Instead, as the plain language of the rule states, the items designated in a subpoena duces tecum are to be produced *for entry into evidence*, even though the court may permit their production and inspection by the parties before the trial or proceeding at which they are to be introduced.  Fed. R. Crim. P. 17(c)(1).

The Supreme Court provided a test for courts to apply when determining whether to issue or deny a Rule 17(c) subpoena in *United States v. Nixon*, 418 U.S. 683, 699 (1974).  A court should require production pursuant to a Rule 17(c) request only if the moving party shows:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

*Id.*; *United States v. Hughes*, 895 F.2d 1135, 1146 (6th Cir. 1990) (listing the *Nixon* factors).  The Court will briefly consider the application of the *Nixon* requirements to Defendant's four requests.

### A. Subpoena Duces Tecum to deviantART Website

Defendant asks the Court to issue a subpoena duces tecum to the "deviantART" website for production of its "mature tag policy" that states what materials are not suitable for minors and

---

[1]  Although the scope of production anticipated under this Rule is broad, the Court may quash a Rule 17(c)(1) subpoena after issuing it if compliance with it "would be unreasonable or oppressive."  Fed. R. Crim. P. 17(c)(2).  Furthermore, parties may not use subpoenas duces tecum as an additional discovery tool.  *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951).

3

for subscriber information for the "TennesseeTomcat.deviantart.com account" and the "nolifelady.deviantart.com account" [Doc. 74 p. 1].[2] Defendant contends that this information is necessary to show that the TennesseeTomcat account was deactivated and could not be viewed by the public during the time that Samantha Taveras made a complaint to the JCSO [*Id*. at 2]. Defendant characterizes the deactivated status of the TennesseeTomcat account as a material omission from the affidavit in support of the May 3, 2018 state search warrant [*Id*. at 5]. Defendant also seeks the requested information to show that Detective Richard Collins lied during his testimony at the April 14, 2021 evidentiary hearing that he accessed the TennesseeTomcat account after it was deactivated [*Id*. at 2].[3] Defendant also states this information is needed to establish that Jaycee Corum was the owner of the TennesseeTomcat account [*Id*. at 3 – 4]. He contends this information is necessary because the May 3, 2018 state search warrant alleges a violation of the sex offender registry based upon his failure to list the TennesseeTomcat account on his registry form [*Id*. at 4]. Defendant asserts that subscriber information on the nolifelady account would permit him to challenge the veracity of information in the affidavit supporting the May 3, 2018 state search warrant that the account holder of that account was female and a minor [*Id*.].

---

[2]   Defendant also seeks a search warrant pursuant to 18 U.S.C. § 2703(b)(1) and (2) to seize content—specifically, two pieces of artwork from April 2018—from the nolifelady account [Doc. 74 pp. 1–2]. Section 2703(b) limits search warrants for content to "governmental entit[ies]." Defendant is not a governmental entity. *See* 18 U.S.C. § 2711(4) (defining "governmental entity" as "a department or agency of the United States, or any State or political subdivision thereof"). Accordingly, Defendant's request for a search warrant or order pursuant to § 2703 is denied.

[3]   Defendant cites to a portion of Detective Collins's testimony on cross-examination in which he is asked if he attempted to search for the TennesseeTomcat account on the deviantART website [*See* Doc. 44 p. 47]. Detective Collins responded that he thought Detective Pamela Taylor was searching the website for that username when she was out of the room during the May 2, 2018 interview and returned with images and information from the website [*Id*. at 47–48].

4

The Court finds Defendant has failed to show that the requested information is relevant to any issue at trial or that it is material to Defendant's preparation for his defense at trial. Instead, Defendant seeks this information for use in relation to his argument that the May 3, 2018 search warrant contains false statements or material omissions. The Court has already addressed those arguments in its Report and Recommendation of May 1, 2023, finding that the ownership status of the TennesseeTomcat account is not material because Defendant admitted to using the account in the May 2, 2023 interview [Doc. 199 pp. 43–47 & n.18]. Moreover, Defendant fails to show that the deviantART website's "mature tag policy" is not available through other means, such as a search of the website's terms and policies for users. Defendant's request for a subpoena duces tecum to the deviantART website [**Doc. 74**] is **DENIED**.

### B. Subpoena Duces Tecum to T-Mobile

Defendant also seeks a subpoena duces tecum to T-Mobile, which was Metro PCS at the time Defendant used that business for cellular and internet service, to provide him with his telephone records from April 1, 2018, to November 18, 2021, to include "what dates and times the cellular telephone was being used" [Doc. 119-2 p. 1]. Defendant alleges this information will show that the Federal Bureau of Investigation ("FBI") tampered with his cellular telephone and SD card after law enforcement seized them from him [*Id*. at 2]. In a separate motion, Defendant contends that the reliability and authenticity of the data from his cellphone was compromised by law enforcement turning the cellphone on after it was seized from Defendant May 2, 2018 [Doc. 119-6 p. 4]. Defendant alleges that comparing the data from his cellular telephone and his telephone records from T-Mobile will allow him to prove he did not create some of the files on his cellphone [Doc. 119-2 p. 2].

5

The Court finds the records requested are not relevant. At a hearing on July 20, 2021, the undersigned approved Defendant's request to hire an information technology expert ("IT expert" or "expert") to assist him with his case [Doc. 66 pp. 1–2]. On November 24, 2021, Defendant moved for leave [Doc. 119] to file a Motion to Suppress All Evidence Obtained from Defendant's LG Cellphone and Micro SD Card Due to Tampering with the Evidence by the FBI [Doc. 119-6]. Defendant alleged that his review of a report of part of the data extracted from his cellphone and SD card contains indications of the creation and deletion of "thousands of files" on his cellphone and SD card after the time that they were seized [*Id*. at 3]. He alleges these alterations occurred while law enforcement had custody of his cellphone and SD card and that they render "the evidence from his cellphone and micro SD card . . . no longer reliable [and] not authentic as it once was at 10:15 a.m. on May 2, 2018[,]" when seized by detectives of the JCSO [*Id*. at 3–4]. Defendant stated while he had gathered instances of suspected tampering from his review of a report of a portion of the extracted data, he could not yet determine what caused the suspected alterations [*Id*. at 6].[4]

The Court subsequently permitted Defendant time to either withdraw the proposed motion alleging tampering or to file a supplemental brief, after working with his expert [*See* Doc. 156 p. 7; Doc. 173 p. 4; Doc. 187 p. 3]. On March 30, 2023, Defendant filed a supplemental brief to the proposed motion on tampering, attaching exhibits including a document in which his expert answers questions posed by Defendant in a previous letter [Doc. 193 & 193-2].[5] In his letter to

---

[4] In his motion for leave, Defendant reiterates that he "has located great quantities of . . . highly suspicious data that he has, of yet, not been able to decipher what activities caused them, but will continue to exam[ine the data] and also enlist the help of his future expert in doing so" [Doc. 119 pp. 4–5].

[5] Defendant's supplemental brief and exhibits were first filed on March 30, 2023, as attachments to a motion to exceed the page limitations in the Local Rules [Doc. 191]. The

6

his expert, Defendant states that he has moved the Court to subpoena the Metro PCS records from his cellphone and directs "I want you to examine Metro PCS's records for any evidence of post-seizure activity(s)" [Doc. 193-1 pp. 2–3].  In response, the expert stated that "Metro PCS would not have logs of any activity of the phone unless it connected to a cellular network" and that Defendant's question regarding post-seizure activity "can be determined by analyzing extractions of the phone" [Doc. 193-2 p. 1].  Based on this response from the Defendant's expert, the Court finds that Defendant has failed to show the requested cellphone records are relevant to a matter before the Court in the trial of this case.  Accordingly, Defendant's motion for a subpoena duces tecum to T-Mobile [**Doc. 119-2**] is **DENIED**.

C. **Subpoena Duces Tecum to JCSO**

In a related issue to part B. above, Defendant asks to subpoena the surveillance camera footage from the JCSO Justice Center's parking lot and lobby from 9:45 a.m. to 10:15 a.m., on May 2, 2018 [Doc. 119-3 p. 1].  Defendant alleges "two types of tampering" in relation to his cellphone [Doc. 119 p. 6].  First, he asserts that the FBI created and deleted files after Defendant last used his cellphone and SD card at "approximately 3:00 a.m.[, on] May 2, 2018[,] and after their seizure" during the May 2, 2018 interview, which he alleges occurred at 10:00 a.m. [*Id*.].  Second, he contends that the FBI "reset" the date and time functions on the cellphone back to "3:50 a.m.[,] on May 2, 2018[,] so that the thousands of files created and deleted by the FBI would appear to have been performed by Defendant" [*Id*.].  He contends that to prove that law enforcement tampered with his cellphone and SD card, he must show when he arrived in the JCSO parking lot for a meeting with JCSO detectives [Doc. 119-3 pp. 1–2].  Defendant states that the requested

---

supplemental brief and exhibits were docketed, as directed by the Court's Order [Doc. 192], on April 4, 2023.

7

video footage will show that he did not use his cellular telephone while in the parking lot and entering the building to meet with the JCSO detectives on May 2, 2018 [*Id*. at 2]. He maintains that the video footage will also prove that he appeared for the interview at 10:00 a.m. and that his cellphone was seized at approximately 10:15 a.m., which differs from the time stamps on the video recording of the interview, which begins at 8:28 a.m. [Doc. 119 p. 7].

The Court finds that Defendant fails to show that the requested video footage is necessary to his defense. Although Defendant's expert found evidence that Defendant's cellphone was turned on after its seizure,[6] Defendant presents no evidence that the data relevant to this case, i.e., photographs and video images containing child pornography were in some way altered [*See* Doc. 193]. Moreover, the Court observes that other evidence in this case, such as the Admonition and Waiver[7] that Defendant signed and on which he noted the time during the May 2, 2018 interview, allow Defendant to establish the time of day that his cellphone and SD card were seized. Thus, Defendant's motion to subpoena video footage from JCSO [**Doc. 119-3**] is **DENIED**.

### D. Subpoena Duces Tecum to Google, LLC and Gmail

Defendant also asks to subpoena records from Google, LLC and Gmail for his three Google Drive accounts [Doc. 144-1 pp. 1 – 2]. Specifically, he seeks "activity logs" showing who accessed his accounts; the date and time of access; the IP address, city, and state from where the accounts were accessed; and other text-only information from April 18, 2018, through the present [*Id*. at 2]. Defendant argues that these records are necessary to show whether law enforcement accessed his

---

[6] Defendant's expert notes that the Defendant's cellphone had to be "powered on" for law enforcement to perform the type of extraction conducted in this case [See Doc. 193-2 p. 3].

[7] This waiver was introduced as exhibit 5 to the April 14, 2021 evidentiary hearing and provides the time of signing as 11:00 a.m. on May 2, 2018 [See Doc. 40, Exhibit and Witness List].

Google Drive accounts and "what activities took place when law enforcement accessed the accounts" [*Id*. at 4]. Defendant acknowledges that the Government denies obtaining any evidence from his Google Drive accounts and stipulated that it will not use any evidence from his Google Drive accounts at trial, but he "refuses to accept" this assertion that it did not access his accounts without performing his own verification [Id.]. He contends that he cannot gain these records by other means, such as through his expert, because the three accounts are "locked out" by the Government [*Id*. at 2].

The Government responds in opposition to the requested subpoena for records from the Google Drive accounts, arguing Defendant fails to show good cause [Doc. 146 p. 1–2]. It observes that the Court previously found Defendant's Motion to Suppress Evidence Obtained from a Google Cloud Storage Service [Doc. 33] to be moot because the Government stipulated it would not use any evidence from Defendant's Google Drive accounts [*Id*. at 1; *see* Doc. 124 p. 6]. In reply, Defendant contends that he is entitled to determine whether the FBI illegally accessed his Google Drive accounts to establish a violation of his privacy under the Stored Communications Act, 18 U.S.C. 2701, *et seq*. [Doc. 147 p. 2]. Defendant clarifies that he does not want to pursue arguments in his prior suppression motion related to his Google Cloud account but, instead, only seeks to determine whether law enforcement looked at the content of his accounts "illegally" without a search warrant [*Id*. at 3].

The Court finds the Defendant again fails to show that the requested records are relevant to the trial of this case or to his defense at trial. Defendant acknowledges the Government's stipulation that it will not use any evidence from his Google Drive accounts at trial and hints that he seeks the requested records for other litigation. The Court finds Defendant has failed to comply with the *Nixon* factors and, instead, appears to be mounting a "fishing expedition" to gather

9

evidence for his own purposes unrelated to the trial of this case. Such is not an appropriate exercise of the Court's subpoena powers. Defendant's request for a subpoena duces tecum for Google, LLC and Gmail [**Doc. 144-1**] is **DENIED**.

## II. CONCLUSION

In summary, the Court **ORDERS** as follows:

(1) Defendant's motion for leave [**Doc. 73**] and his Motion to Receive Judicial Authorization to Have a Subpoena Duces Tecum and Warrant Issued to deviantART Website [**Doc. 74**] are **DENIED**;

(2) Defendant's motion for leave [**Doc. 119**] and his Motion to Subpoena Complete Phone Records from Metro by T-Mobile (Formerly Metro PCS) for Defendant's Phone Account [**Doc. 119-2**] are **DENIED**;

(3) Defendant's motion for leave [**Doc. 119**] and his Motion to Subpoena JCSO Camera Footage [**Doc. 119-3**] are **DENIED**;

(4) Defendant's motion for leave [**Doc. 144**] and his Motion Seeking Court Issuance of Subpoena to Google, LLC/Gmail for Defendant [**Doc. 144-1**] are **DENIED**; and

(5) The Clerk of Court is **DIRECTED** to mail a copy of this Memorandum and Order to Defendant Glatz at the jail.

**IT IS SO ORDERED**.

ENTER:

*Debra C. Poplin*
Debra C. Poplin
United States Magistrate Judge