UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,          )
                                )
v.                              )        No.:   3:19-CR-218-TAV-DCP-1
                                )
GLENN FRED GLATZ,               )
                                )
            Defendant.          )

## MEMORANDUM OPINION AND ORDER

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on February 21, 2023 [Doc. 175]. The R&R addresses defendant's Motion to Suppress All Evidence Resulting from the Warrantless Seizure of Defendant's LG Cellphone and an SD Card [Doc. 19] and related post-hearing briefs [Docs. 96 & 112], following the government's responses on the issue [Docs. 23 & 103] and an evidentiary and suppression hearing held on April 14, 2021. Judge Poplin then issued the R&R, recommending that the Court grant in part defendant's motion to suppress evidence in that his May 2, 2018, statements to Jefferson County Sheriff's Office ("JCSO") law enforcement officials cannot be used in the government's case-in-chief at trial, and deny defendant's motion in all other respects [Doc. 175, p. 3].

Defendant filed objections to the R&R [Doc. 202], the government filed responses [Docs. 189 & 206], and defendant filed replies [Docs. 194 & 215]; therefore, the matter is now ripe for the Court's review. *See* E.D. Tenn. L.R. 7.1(a). For the reasons that follow,

the Court will **OVERRULE** defendant's objections [Doc. 202], **ACCEPT IN WHOLE** the R&R [Doc. 175], and **GRANT IN PART** defendant's Motion to Suppress [Doc. 19] in that his May 2, 2018, statements to the JCSO detectives cannot be used in the government's case-in-chief at trial, **DENYING** the motion in all other respects.

## I.    Relevant Facts

The Court presumes familiarity with the facts of this case and will only recite facts necessary to the determination of the instant motion.

### A.    Background

On December 17, 2019, Defendant was charged in a nine-count indictment with various child pornography related offenses during the time period between December 2015 and May 2, 2018 [Doc. 1].  Specifically, defendant is charged with inducing a minor to engage in sexually explicit conduct to produce child pornography, as set forth in Counts 1, 4, 6, and 8; with receiving child pornography, as set forth in Count 2; with transfer of obscene materials to a minor, as set forth in Counts 3, 5, and 7; and with possession of child pornography, as set forth in Count 9 [*Id.*].  The charges in this case stem from data extracted from defendant's cellphone and SD card, which were seized by the JCSO on May 2, 2018 [*see* Doc. 175, p. 3].

On June 19, 2020, defendant filed a motion to suppress all evidence gained from the warrantless seizure of his LG cellphone and SD Card [Doc. 19], arguing that the JCSO law enforcement officials violated his constitutional rights.  In particular, the suppression motion argues that:  (1) the seizure of his cellphone and SD card on May 2, 2018, and the

2

resulting searches of their contents, were made without a search warrant or probable cause, in violation of his rights under the Fourth Amendment; (2) the statements he made to law enforcement on May 2, 2018, were obtained before he was advised of the *Miranda* warnings and that, even after the officers provided the *Miranda* warnings and he signed a rights waiver, his statements were the product of police coercion, in violation of the Fifth Amendment; (3) the search of his person was made without a warrant or probable cause on May 2, 2018, in violation of the Fourth Amendment; and (4) his arrest was unlawful on May 3, 2018, in violation of the Fourth Amendment [*see* Doc. 175, p. 5]. On April 14, 2021, Judge Poplin conducted an evidentiary and suppression hearing [Doc. 39], and the transcript of this proceeding was filed on May 7, 2021 [Doc. 44].

After the suppression hearing, the magistrate judge issued the R&R and made the following findings: (1) law enforcement properly seized defendant's cellphone and SD card, which she further found was contained within the cellphone, because the officers had probable cause to believe defendant's cellphone contained evidence of his violations of the sex offender registry and a reasonable belief that he would destroy any evidence on the phone and card; (2) defendant's statements to law enforcement on May 2, 2018, cannot be used in the government's case-in-chief at trial, because they were obtained in violation of his rights under the Fifth Amendment; (3) the search of defendant's person during the May 2, 2018, interview was reasonable and no evidence was seized; and (4) law enforcement had probable cause to arrest defendant on May 3, 2018 for a violation of the sex offender registration law [Doc. 175, p. 2]. The magistrate judge accordingly

recommends that the Court grant in part defendant's request for suppression in that his May 2, 2018, statements to JCSO detectives cannot be used in the government's case-in-chief at trial, and that his request for suppression be denied in all other respects [*Id.* at 3].

### B. Testimony and Evidence

At the suppression hearing, Detective Richard Collins, a five-year law enforcement officer with the JCSO, was called to testify by the government as the only witness [Doc. 40, Doc. 44, p. 11; Doc. 175, p. 6]. Detective Collins is a special victims investigator investigating child cases, and he is responsible for handling the Sex Offender Registry in Jefferson County, Tennessee [Doc. 44, pp. 11-12; Doc. 175, pp. 6-7]. He explained that Tennessee law requires some sex offenders to provide information to law enforcement on a quarterly basis regarding their residential address, phone numbers, work locations, email addresses, instant message or chat accounts, and social media accounts, with a specific requirement that any such new accounts must be reported within three days [Doc. 44, pp. 12-14; Doc. 175, p. 7].

Section B of the Tennessee Sexual Offender/Violent Sexual Offender/ Registration/Verification/Tracking Form ("sex offender tracking form") requires disclosure of the "Offender's complete electronic mail address information, any instant message, chat, or other Internet communication name or identity information" [Doc. 44, pp. 15-16, Ex. 1]. Detective Collins testified that he was familiar with defendant, a resident of Dandridge, who had registered as a sex offender with the JCSO around 2017 [Doc. 44, p. 14, Ex. 1; Doc. 175, p. 7].

4

Defendant's sex offender tracking form, which was signed by defendant and dated March 28, 2018, discloses the following email addresses: glennglatz56@gmail.com; gfgkodak@gmail.com; and animatedsackofmolecules@gmail.com [Doc. 44, pp. 15-16, Ex. 1; Doc. 175, p. 11]. Defendant's sex offender tracking form also discloses the following chat id's: manglenn.deviantart.com; petergriffinislove.deviantart.com; manglenn.tumblr.com; glennglatz.wordpress.com; and manglenn.skype.com [*Id.*]. Detective Collins testified that defendant's sex offender tracking form did not disclose the usage of "Tennesseetomcat" as an online ID, as required [Doc. 44, p. 16, Ex. 1; Doc. 175, pp. 7, 25].

Detective Collins testified that JCSO Deputy Blake Cupp received a dispatched call on April 24, 2018, from a citizen complaining that she saw an online journal which indicated that defendant was "role playing" with a 13-year-old girl and sending pictures of his "private area" [Doc. 44, pp. 18-19; Doc. 175, pp. 7, 25]. During his testimony, Detective Collins read from the summary of this complaint, which Deputy Cupp memorialized in the JCSO Preliminary Investigative Report:

> On 4-24-18 I was dispatched to a call by phone in reference to a phone by call [sic]. I made contact with the complainant [Samantha Taveras[1]]. The complainant stated that a subject that lived in Dandridge Tennessee was the offender in this alleged incident. The complainant stated that a 'Journal' was made about the offender for allegedly role playing with a (13 year old) girl. The complainant stated that the journal contained pictures of the offender sending pictures of his private area. The complainant also stated a (Youtube) video was made about the offender and his username to be on the lookout for this offender. The complainant stated that she did not know who the victim was and that she just saw the post that was posted on

---

[1] For ease of reference, the Court will refer to Samantha Taveras's citizen complaint as "the Taveras complaint."

5

the website. The complainant stated that she did a little more investigation and found out the alleged offender resided in Dandridge. The alleged offender is (Glenn Glatz) that resides at 1601 East Highway 25 70 (Sherman Oaks) Campground.

[Doc. 44, pp. 17-18, Ex. 2; Doc. 175, pp. 7, 25].

The JCSO report issued by Deputy Cupp further states regarding the Taveras complaint: "The website that has been used by the offender and the victim is (deviantart.com). The offender has previously used the username (Tennesseetomcat). I advised complainant that I would be doing a report on this incident and that if any other information she could think of she needed to contact the Jefferson County Sheriff's Office." [Doc. 44, Ex. 2]. Detective Collins was assigned to investigate the Taveras complaint, along with JCSO Detective Pamela Taylor, who assisted in registering individuals as sex offenders [Doc. 44, pp. 19, 22; Doc. 175, pp. 7, 25].

Thereafter, Detective Taylor did some online investigation and discovered that the journal entry mentioned in the Taveras complaint was attributed to the username "Nolifelady" [Doc. 44, p. 44, Ex. 3; Doc. 175, p. 19]. Detective Collins contacted defendant on May 1, 2018, and asked him to come in and update some paperwork at the JCSO on May 2, 2018 [Doc. 44, pp. 20, 42; Doc. 175, pp. 8, 25-26]. In response to this request, defendant arrived at the JCSO department on May 2, 2018, to speak with law enforcement [Doc. 44, p. 20; Doc. 175, pp. 8, 26]. He brought his dogs with him and left them in his truck while he went inside the facility [Doc. 44, p. 20; Doc. 175, pp. 9, 26].

The meeting occurred between defendant and Detectives Collins and Taylor in an interview room approximately 10x14 in size, with the door closed but not locked [Doc. 44,

6

pp. 21-24; Doc. 175, pp. 8, 26].   The room was equipped with recording equipment, including audio and video, Detective Collins was likely armed but not in uniform, and Detective Taylor was not in uniform [Doc. 44, pp. 21, 24; Doc. 175, pp. 8, 26].   At this point in time, defendant was not under arrest and the interview lasted approximately 80 minutes [Doc. 44, p. 24, Ex. 3; Doc. 175, p. 8].

Throughout his testimony, both on direct examination and cross examination, Detective Collins provided details about the defendant's interview and played portions of the video [Doc. 44, pp. 22-23, Ex. 3; Doc. 175, pp. 8-30].   After talking about defendant's dogs and some interactions with his neighbors, Detectives Collins and Taylor questioned defendant about his usage of the DeviantArt website, which is a social media type site where people can chat and share pictures [Doc. 44, pp. 25-26, Ex. 3; Doc. 175, pp. 9-10, 26].

When defendant initially denied using the DeviantArt website any longer and stated he could not recall the last time he did so, Detective Taylor told defendant that he needed to be honest, that the JCSO had already done the research and knew the answers, and that the JCSO would work with him the best they can if he is honest [Doc. 44, p. 53, Ex. 3; Doc. 175, pp. 10, 26-27].   Thereafter, defendant stated that he had previously used computers but now was using his "phone" within the past couple months to access the DeviantArt website and that he was only doing so through two username accounts, "Petergriffinislove" and "Manglenn," both of which were reported on his sex offender registry [Doc. 44, pp. 26-27, Ex. 3; Doc. 175, pp. 10-11, 26-27].   Defendant explained that

7

he was arrested in 2016 for failing to have the "Manglenn" username on his sex offender registry [Doc. 44, Ex. 3; Doc. 175, pp. 12, 61 n. 31].

At this point in the interview, Detective Taylor requested defendant's consent to look at his cellphone, which he denied, stating that his cellphone is private [Doc. 44, Ex. 3; Doc. 175, pp. 10, 26]. Then, Detective Taylor questioned defendant about his usage of "Tennesseetomcat" on the DeviantArt website [Doc. 44, p. 29, Ex. 3; Doc. 175, pp. 11, 26-27]. When Defendant denied using this account, Detective Taylor again warned defendant not to lie, told him that he would go to jail, and stated that his dogs would go to the shelter [Doc. 44, p. 55, Ex. 3; Doc. 175, pp. 11, 27].

Upon further questioning about the "Tennessetomcat" account, defendant explained this account is "not me" but rather was created by his friend Jaycee Corum in September or October 2017 [Doc. 44, pp. 27, 40, Ex. 3; Doc. 175, pp. 11-12, 27]. After Detective Collins gave him one more chance to be honest or she would continue to build a case on him, defendant stated that he used the "Tennesseetomcat" account with Corum a few times [Doc. 44, pp. 27-28, Ex. 3; Doc. 175, pp. 12, 27]. Detective Collins then directed defendant to place his cellphone on the table and explained that she would obtain a search warrant for his phone [Doc. 44, p. 28, Ex. 3; Doc. 175, pp. 12-13, 27]. Defendant complied with this request and laid his cellphone on the table [*Id.*].

At this point in the interview, Detective Collins showed defendant a printed page and confronted him about using the unregistered "Tennesseetomcat" account to send a picture of himself in his underwear to a 13-year-old girl who was using the "Nolifelady"

account, all on the DeviantArt website [Doc. 44, pp. 29-30, Ex. 3; Doc. 175, pp. 13-15, 27-28]. Several photographs were discussed during the interview, including one of defendant in his underwear with a "bulge in [his] pants" and one described as a "peekaboo" picture where defendant is pulling his pants out and taking a picture toward his penis [Doc. 44, p. 29, Ex. 3; Doc. 175, pp. 13-14, 27-28]. Defendant responded that his pictures were "nothing more than modeling" [Doc. 44, Ex. 3; Doc. 175, pp. 13, 27]. Detective Collins agreed during his testimony that these pictures were sexually suggestive [Doc. 44, p. 31; Doc. 175, pp. 15, 36-37 n. 21].

Defendant initially stated that he did not know the "Nolifelady" account was being used by a 13-year-old girl [Doc. 44, pp. 30-31, Ex. 3; Doc. 175, pp. 14, 28]. Defendant explained his belief that the account belonged to an adult woman living in Panama based on a graphic naked drawing on her account [Doc. 44, pp. 35-36, Ex. 3; Doc. 175, pp. 16, 28]. Defendant eventually stated that he chatted with "Nolifelady" using the "Tennesseetomcat" account over a two-day period about one month ago and to knowing that the user of the "Nolifelady" account was 13 years old, near the end of exchanging notes with her on the DeviantArt website [Doc. 44, pp. 27-28, 31, Ex. 3; Doc. 175, pp. 16, 28]. Detective Collins testified that by this point in the interview defendant had corroborated the information from the Taveras complaint [Doc. 44, p. 31; Doc. 175, p. 15]. During the interview, Detective Taylor stated that DeviantArt "shut [him] down because everybody started giving pedophile warnings," while defendant stated that he deactivated the account [Doc. 44, p. 60, Ex. 3; Doc. 175, pp. 14, 28].

9

At this point, Detective Taylor again broached the subject of defendant consenting to the search of his cellphone while filling out a consent form, and defendant responded "I don't like the idea of my private phone being looked in" [Doc. 175, p. 22 n. 13, 28, Ex. 3]. Then, defendant stated, "You know, I really don't understand the technicalities and stuff. Can I talk to a lawyer about it?" [Doc. 44, p. 61, Ex. 3; Doc. 175, pp. 22-23 n. 13, 28]. Both Detective Collins and Detective Taylor responded in the affirmative that he could obtain a lawyer [Doc. 44, p. 61, Ex. 3; Doc. 175, pp. 22-23 n. 13, 28].

Detective Taylor left the room to conduct some more investigation about the "Nolifelady" account, stating that she was going to start the search warrant process [Doc. 44, Ex. 3]. While Detective Taylor was out of the room, Detective Collins and defendant engaged in further conversation about obtaining a lawyer [Doc. 44, Ex. 3; Doc. 175, pp. 28-29]. Detective Collins left the matter up to defendant, who then stated, "I mean, I'm talking to you guys. So, I'm not saying I ain't talking to you." [Doc. 44, p. 61, Ex. 3; Doc. 175, pp. 22-23 n. 13, 28-29]. Thereafter, defendant continued to speak to the JCSO detectives but declined to provide the passcode for his cellphone [Doc. 44, p. 65, Ex. 3; Doc. 175, pp. 23, 29].

While Detective Taylor was getting defendant some water at his request, Detective Collins asked defendant if he had any weapons on him [Doc. 44, pp. 63-64, Ex. 3; Doc. 175, pp. 15, 29]. Defendant stated that he had a pocketknife, so Detective Collins asked defendant to empty his pockets on the table [Doc. 44, pp. 32, 63, Ex. 3; Doc. 175, pp. 23, 29]. Defendant placed his pocketknife on the table, and then Detective Collins

10

frisked defendant in the interview room [Doc. 44, pp. 32, 63-64, Ex. 3; Doc. 175, pp. 23, 29]. Detective Collins testified that he did not recall the SD card, which is a storage device on defendant's cellphone, being separated from the cellphone before being placed into evidence storage and signed over to JCSO Detective Stallings for a Cellebrite analysis [Doc. 44, pp. 65-66; Doc. 175, p. 24].

Shortly after the frisk, Detective Taylor advised defendant of his *Miranda* rights, and defendant expressed his understanding of those rights and did not have any questions [Doc. 44, pp. 32-33, Ex. 3; Doc. 175, pp. 15-16, 29]. Defendant also signed a *Miranda* waiver [Doc. 44, p. 33, Ex. 3 & Ex. 5; Doc. 175, pp. 16, 29]. Detective Taylor again requested that defendant provide them with the passcode for his cellphone, and defendant declined to provide it [Doc. 44, p. 65; Doc. 175, pp. 23, 62]. At this point in the interview, Detective Taylor stated that she was seizing his cellphone [Doc. 44, p. 65, Ex. 3; Doc. 175, p. 23].

Defendant agreed to continue with the interview and provided more details concerning his communications through the "Tennesseetomcat" account with "Nolifelady" on the DeviantArt website [Doc. 44, pp. 33-35, Ex. 3; Doc. 175, pp. 16, 29]. At the conclusion of the interview, defendant was not arrested and was permitted to leave the JCSO facility [Doc. 44, pp. 36-37; Doc. 175, pp. 17, 30]. Following this meeting, on May 3, 2018, Detective Taylor obtained a search warrant for defendant's cellphone [Doc. 44, pp. 37-38, 40, Ex. 6; Doc. 175, pp. 18, 30]. On May 3, 2018, defendant was arrested for

11

violation of the Tennessee Sex Offender Registration law [Doc. 44, p. 40; Doc. 175, pp. 19, 30].

## II.    Standard of Review

The Court generally reviews *de novo* those portions of the R&R to which the defendant has objected.  28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b).  Accordingly, the Court considers the R&R, the motion to suppress, the parties' underlying and supporting briefs, defendant's objections, the government's responses to those objections, and defendant's replies, all in light of the applicable law.

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)).  "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object."  *Cole v. Yukins et al.*, 7 F. App'x 354, 356 (6th Cir. 2001).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection[.]'"  *VanDiver v. Martin et al.*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004).  If "objections merely restate the party's arguments raised … previously [and] addressed by the magistrate judge, then the Court may deem the objections waived."  *Johnson v. Colvin*,

12

No. 3:13-CV-690, 2014 WL 7272326, at *2 (E.D. Tenn. Dec. 18, 2014) (citing *VanDiver*, 304 F. Supp. 2d at 937)).

Moreover, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard*, 932 F.2d at 509.

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting *United States v. Bermudez*, 228 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000)). The Court notes that "[i]t has long been the practice of our judicial system to leave credibility determinations to the fact finder best equipped to make those determinations." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *2 (E.D. Tenn. Jan. 14, 2015) (applying this principle to a magistrate judge's credibility finding from a suppression hearing).

"When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determination, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses

he sees and hears." *United States v. Robinson*, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citing *United States v. Ailemen*, 986 F. Supp. 1228, 1231 (N.D. Cal. 1997)). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." *Robinson*, 2007 WL 2138635, at *1 (citing *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D. Del. 1984)).

## III. Analysis

### A. Procedural History

Given the voluminous record before the Court, a brief overview of the relevant procedural history with respect to the parties' filings is in order. On behalf of defendant, defense counsel filed the initial motion to suppress relating to the cellphone and SD card on June 19, 2020 [Doc. 19]. Counsel also represented defendant at the suppression hearing before Judge Poplin [Doc. 44]. Following the hearing, defendant made the decision to represent himself knowingly and voluntarily, with former defense counsel assigned as elbow counsel [Doc. 48].

Defendant, acting *pro se*, and the government exchanged the following documents with respect to the suppression issue and the resulting R&R:

(1) Government's "Response in Opposition to Motion to Suppress Warrantless Seizure of the Defendant's Cellular Telephone" filed on July 10, 2020 [Doc. 23];

(2) Defendant's "Post-Hearing Brief on Suppression Hearing Part I, and Memorandum in Support" filed on September 24, 2021 [Doc. 96];

14

(3) Government's "Post-Hearing Brief Regarding Motion to Suppress Warrantless Seizure of the Defendant's Cellular Telephone" filed on October 15, 2021 [Doc. 103];

(4) Defendant's "Reply to Government's Post-Hearing Brief [Doc. 103] and Memorandum in Support" filed on October 25, 2021 [Doc. 112];

(5) Defendant's "Objections to United States Magistrate Judge Poplin's Report and Recommendation Regarding Warrantless Seizure of Cellphone and Micro SD Card and Memorandum of Law in Support Thereof" filed on March 14, 2023 [Doc. 188];[2]

(6) Government's "Response to Defendant's Objections to Magistrate Court's Report and Recommendation [Doc. 188]" filed on March 27, 2023 [Doc. 189];

(7) Defendant's "Reply to United States Response to Defendant's Objections to R&R" filed on April 5, 2023 [Doc. 194];

(8) Defendant's "Objections to United States Magistrate Judge Poplin's Report and Recommendation ("R&R") Regarding Warrantless Seizure of Cellphone and Micro SD Card and Memorandum" filed on May 2, 2023 [Doc. 202];

(9) Defendant's "Supplemental Brief of New Developments in Support of Defendant's Motions to Suppress Evidence and Memorandum of Fact and Law" filed on May 2, 2023 [Doc. 203];

(10) Government's "Response to Defendant's Objections to Magistrate Court's Report and Recommendation [Doc. 202] and Defendant's Supplemental Brief of New Developments in support of Defendant's Suppression Motion [Doc. 203]" filed on May 4, 2023 [Doc. 206];[3] and

(11) Defendant's "Reply to United States' Response to Defendant's Objections to Magistrate Court's Report and Recommendation [Doc. 202] and Defendant's Supplemental Brief of New Developments in Support of Defendant's Suppression Motion [Doc. 203]" filed on May 16, 2023 [Doc. 215].

---

[2] Defendant's initial objections to the R&R [Doc. 188] consisted of 192 pages. On April 20, 2023, the Court ordered defendant to resubmit his objections in a brief not to exceed 25 pages in accordance with the applicable local rule on page limitations for briefs set forth in E.D. Tenn. L.R. 7.1(b) [Doc. 198]. This resulted in some filings being out of sequence.

[3] In this filing, the government noted that the response it had previously filed as Doc. 189 should be considered as incorporated by reference within this response, intending to "re-affirm[] its opposition to defendant's previously raised substantive arguments" [Doc. 206, pp. 1, 3].

15

## B. Defendant's Objections to the R&R

At the outset of his objections to the R&R, defendant objects to the Court's order [Doc. 198] restricting his brief on objections to 25 pages [Doc. 202, pp. 1-2]. He contends this decision "effectively results in a gag order" and is a "miscarriage of justice," and he requests that the Court consider his initial 192-page objections [*Id.*]. He terms his resubmitted objections as "his most compelling objections" and further urges "for full argument, please see Document 188 also" [*Id.* at 2, 25]. Defendant's request for the Court to consider his initial objections consisting of 192 pages [Doc. 188] is hereby summarily denied. E.D. Tenn. L.R. 7.1(b); *Nam, et al. v. U.S. Xpress, Inc., et al.*, No. 1:11-CV-116, 2012 WL 10161528, at *1-3 (E.D. Tenn. June 25, 2012) (district court struck various dispositive motions, responses, and replies filed by the parties who repeatedly circumvented Local Rule 7.1(b),[4] with leave to refile limited briefs in compliance with the court's directives, including applicable local rules and judicial preferences); *Trinity Commc'ns, LLC v. Titan Global Ent., Inc., et al.*, No. 1:06-CV-205, 2007 WL 9734654, at *2 (E.D. Tenn. June 14, 2007) (district court denied defendants' Motion for Entry of Final Judgment based on the failure to comply with Local Rule 7.1(b)).

In his resubmitted objections, defendant outlines 22 objections [Doc. 202] to virtually all findings of fact and conclusions of law rendered by the magistrate judge in the

---

[4] The multiple parties in the *Nam* case filed over ten thousand pages of material on the docket spread out over approximately 350 docket entries. 2012 WL 10161528, at *1. In the instant case, nearly five thousand pages of material have been filed over approximately 240 docket entries thus far. As noted herein, both the magistrate judge and this Court have waded through the vast record to address all of defendant's arguments.

16

R&R.  The Court has carefully sifted through defendant's objections, which overlap to a great extent, and therefore the analysis below endeavors to capture defendant's objections under either the Fourth Amendment or the Fifth Amendment.  The Fourth Amendment protects citizens against unreasonable searches or seizures.  U.S. Const. amend IV.  In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized."  *Id.*  The Fifth Amendment provides the right not to incriminate oneself.  U.S. Const. amend V.

The government responds that the findings of fact and conclusions of law in the R&R are sound and should be adopted in full, as defendant's objections add nothing new to the previous briefs filed and are unsupported by fact or law [Docs. 189 & 206].  Finally, defendant raises "new developments" about the constitutionality of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004 ("TSOR law") in a supplemental brief [Doc. 203].  The government filed a response that the TSOR issue is untimely and therefore waived [Doc. 206], and defendant filed a reply [Doc. 215].

As explored below, the Court finds that defendant's objections to essentially the entirety of the R&R are general and conclusory objections and/or a restatement of arguments previously made to the magistrate judge, who was in the best position to make credibility determinations about the testimony and evidence before her.  Accordingly, Judge Poplin's analysis of the various issues is well-reasoned, and her findings of fact and

17

conclusions of law will be adopted in whole.  Further, the Court finds that defendant's objection about the TSOR law is untimely and therefore waived.

### 1.    Defendant's Fourth Amendment Objections

#### a.    Objections relating to defendant's interview at the JCSO

The magistrate judge found that defendant's interview at the JCSO, which she determined was custodial, did not violate the Fourth Amendment[5] [Doc. 175, pp. 44-45 n. 27, 48].  In doing so, Judge Poplin addressed defendant's arguments in his post-hearing brief [Doc. 96, pp. 7, 22] that he was questioned in custody without probable cause and therefore his statements were made in violation of the Fourth Amendment [Doc. 175, p. 44 n. 27].  Judge Poplin analyzed the long-standing Supreme Court holdings, cited in defendant's briefing [Doc. 96, p. 8], in *Florida v. Royer*, 460 U.S. 491, 499 (1983); *Hayes v. Florida*, 470 U.S. 811, 815 (1985), *Dunaway v. New York*, 442 U.S. 200, 212 (1979); *Brown v. Illinois*, 422 U.S. 590, 603-05 (1975), *Davis v. Mississippi*, 394 U.S. 721, 726-28 (1969) [Doc. 175, p. 44 n. 27].  After doing a comparative analysis of this caselaw, the magistrate judge reasoned that defendant's "'investigatory detention' was not mandatory" because he was asked to come to the JCSO facility for a meeting about his sex offender registration forms and he appeared at the facility with his dogs, which indicates

---

[5]    The magistrate judge analyzed defendant's custodial interrogation under the Fifth Amendment when addressing his statements to JCSO detectives during the interview [Doc. 175, p. 44, section V(B)].  However, Judge Poplin addressed defendant's additional argument that his interview violated the Fourth Amendment [*Id.* at 44-45 n. 27].  Therefore, the Court will address below in section III(B)(2)(i) defendant's objections that his statements were not voluntary in violation of the Fifth Amendment.

18

he did not believe he was being arrested and instead thought that he would be free to leave [*Id.*].

In his objections, defendant asserts that the magistrate judge erred in concluding that his interview did not violate the Fourth Amendment [Doc. 202, p. 9]. Specifically, he complains that Judge Poplin "made an erroneous conclusion of law that at any time on May 2, 2018 JCSO was conducting an 'investigatory detention' on defendant" [*Id.*]. Defendant also objects that the "R&R attempts to distinguish the instant case from the series of 4th Am. violations in *Royer*, *Hayes*, *Dunaway*, *Brown*, and *Davis* by claiming Def's investigatory detention was not mandatory" [*Id.* at 10]. In this regard, defendant states that the R&R "contradicts itself by stating that Defendant's showing up at JCSO really *was* mandatory" [Doc. 202, p. 10] when Judge Poplin also stated that defendant "arguably believed he could not refuse [the detective's request that he come to the JCSO facility]" [Doc. 202, pp. 10-11, citing Doc. 175, p. 47].

Judge Poplin considered and addressed defendant's arguments that his statements were made in violation of the Fourth Amendment. She analyzed the Supreme Court decisions that he cited in his post-hearing brief, and she correctly concluded that his interview did not violate the Fourth Amendment. Therefore, defendant has simply reiterated the same arguments to this Court that he made to the magistrate judge regarding his claim that his statements during the interview at the JCSO violated the Fourth Amendment. With respect to defendant's attempt to cast Judge Poplin's reasoning as contradictory in stating that his investigatory detention was not mandatory and later stating

19

that he, as a sex offender, could not refuse the JCSO's request to come to the facility, this Court finds no such contradiction in her analysis of these two issues.

For all of these reasons, defendant's objections on this issue are **OVERRULED**.

### b. Objections relating to Taveras complaint and probable cause

The magistrate judge found that the JCSO detectives corroborated much of the information in the Taveras complaint, which she also found to be reliable, in the following respects: "that Defendant was a sex offender, his residence, and that the user of the Tennesseetomcat account sent a picture of a male's genital area (albeit clad in underwear) to a minor female on the DeviantArt website" [Doc. 175, pp. 35-36]. In addition, Judge Poplin found that the Taveras complaint "gave the officers reasonable suspicion that Defendant was sending illegal photographs to a minor … [which] ripened into probable cause when Defendant told the detectives that he used his cellphone to access the internet and that he used the Tenensseetomcat account with Corum" [*Id.* at 36-37]. She cites to Supreme Court decisions in *Illinois v. McArthur*, 531 U.S. 326, 331 (2001), *Riley v. California*, 573 U.S. 373, 388 (2014), and *Chimel v. California*, 395 U.S. 752-762-63 (1969), for the holding that it has been deemed reasonable under the Fourth Amendment for officers to seize property for a brief period to prevent the potential destruction of evidence, while law enforcement is seeking a search warrant [*Id.* at 31-32]. Citing to *United States v. Galpin*, 720 F.3d 436, 448-50 (2d Cir. 2013), Judge Poplin also addressed defendant's argument that no nexus existed to allow the officers to believe that evidence of a registry violation would be found on his cellphone [*Id.* at 37].

Defendant raises several objections regarding Judge Poplin's findings that the initial complaint made by Samantha Taveras was reliable and corroborated and therefore could be used to support a finding of reasonable suspicion and probable cause [Doc. 202, pp. 2-8, 17-18]. Defendant first objects to the magistrate judge's finding that Taveras's initial complaint was reliable and corroborated by JCSO detectives [*Id.*]. Second, defendant argues that the magistrate judge erred in concluding that the Taveras complaint gave the officers reasonable suspicion and probable cause to believe that defendant was sending illegal photographs to a minor [*Id.*].

In support of these arguments, defendant complains that the Taveras complaint is hearsay as she had no firsthand knowledge about what she was reporting from a journal appearing on the DeviantArt website with the username "Nolifelady" [*Id.*]. He submits that there has been no identification of who owned the "Nolifelady" account or who authored the journal at issue under this account [*Id.*]. He contends that Taveras did not specifically say that defendant was using the "Tennesseetomcat" account on the DeviantArt website or that he was a sex offender [*Id.*].

Defendant argues that only the issuance of a subpoena to DeviantArt would have revealed the true registered account holder of "Tennesseetomcat," which the JCSO detectives failed to do [*Id.*]. Defendant states that a subpoena would have shown that Jaycee Corum was the owner and sole user of the "Tennesseetomcat" account, which was deactivated before Taveras's complaint on April 24, 2018, thereby making it impossible for the public, including detectives, to view anything from "Tennesseetomcat" on the

21

DeviantArt website [*Id.*]. He maintains that both Detective Taylor and Detective Collins failed to perform any investigation into Taveras's complaint and further that both detectives committed perjury[6] in this respect [*Id.*].

The thrust of defendant's arguments is that the magistrate judge relied upon false statements of Detective Collins and Detective Taylor to support the erroneous finding that the Taveras complaint was reliable and corroborated, leading to an erroneous conclusion that the Taveras complaint equates to reasonable suspicion and probable cause that defendant was sending illegal photographs to a minor. Relying upon *Galpin*, wherein a proper nexus was established after the issuance of a subpoena to an internet provider, defendant asserts that there was no "nexus between the suspected crime of failure to register Tennesseetomcat with Def's cellphone" [*Id.* at 12].

Given that there are no photographs introduced as evidence, defendant also contends that Taveras falsely accused defendant of sending pictures of his private area to "Nolifelady" by way of the "Tennesseetomcat" username on the DeviantArt website and further that the detectives falsely stated the photographs showed defendant with a "bulge in his pants" and a "peekaboo" photo taken toward his genital area while pulling his pants away from his body, in that, again, the "Tennesseetomcat" account had been deactivated and there was no way to see any such photographs [*Id.* at 8]. He complains that the

---

[6] Defendant relies upon an unofficial transcript of a preliminary hearing dated September 21, 2018, in which Detective Taylor testified [*see* Doc. 98-2].

descriptions of these photographs are "inaccurate, prejudicial, inflammatory, and not in the record" [*Id.*].

The government responds that the Taveras complaint was reliable and corroborated because the JCSO detectives verified Taveras's identity and visited the DeviantArt website to discover an illegal photograph sent by the "Tennesseetomcat" account to the "Nolifelady" account on the DeviantArt website [Doc. 103, p. 9; Doc. 189, pp. 3-4]. Moreover, the government points out that defendant admitted he did not disclose the "Tennesseetomcat" account on his sex offender registration yet stated he used this account along with his cellphone to access the DeviantArt website [*Id.*]. Therefore, the government maintains that Judge Poplin's determination that probable cause existed to search defendant's cellphone was entirely proper given the officers relied upon the Taveras complaint as credible following their investigation [*Id.*]. As to defendant's challenge that Detective Collins committed perjury with respect to his investigation, the government asserts that the magistrate judge is entitled to make credibility determinations after seeing and hearing a witness first-hand [*Id.*].

Turning to his objections, defendant has repeated the very same arguments to this Court that he made to the magistrate judge regarding the Taveras complaint and the resulting conclusion that reasonable suspicion ripened into probable cause. Judge Poplin correctly concluded that "at the time Detective Taylor seized Defendant's phone, the detectives had probable cause to believe it contained evidence of a crime, i.e., Defendant's use of the Tennesseetomcat account, which he failed to report on his sex offender

23

registration form" [Doc. 175, p. 38]. In doing so, Judge Poplin carefully and thoroughly exhausted each of defendant's arguments and his citations to caselaw on this issue throughout her well-reasoned decision [*Id.* at 31-38]. Further, based upon the first-hand observations of the testimony and evidence introduced at the suppression hearing, Judge Poplin was in the best position to make credibility determinations in this case. The magistrate judge specifically noted that she did not question Detective Collins's testimony regarding the photographs being sexually suggestive [*Id.* at 36-37 n. 21]. Defendant has presented no reason for the Court to question Judge Poplin's assessment of credibility regarding any of her factual findings.

For all of these reasons, defendant's objections on this issue are **OVERRULED**.

### c. Objections relating to warrantless seizure of defendant's cellphone and SD card

The magistrate judge determined that the JCSO detectives seized defendant's cellphone to prevent the destruction of evidence, specifically finding that an exigency arose "from Defendant's knowledge that the officers wanted to search his cellphone and the ease with which Defendant could have deleted evidence on the cellphone and SD card" and that the "detectives did not create the exigent circumstances requiring the warrantless seizure of Defendant's cellphone" [Doc. 175, pp. 38-42].[7] Moreover, she found that "the warrantless seizure of Defendant's cellphone for approximately twenty-nine hours while law enforcement obtained a search warrant was reasonable, particularly in light of the

---

[7] The magistrate judge found that the SD card was found within defendant's cellphone [Doc. 175, pp. 2, 33, 65-66 n. 32].

24

significant governmental interest in protecting minors" [*Id.* at 42]. Accordingly, Judge Poplin concluded that the seizure of defendant's cellphone did not violate his rights under the Fourth Amendment [*Id.* at 44]. Having only examined the warrantless seizure of the cellphone, and finding it constitutional, she determined that she "need not reach the matter of the fruits of the seizure or the propriety of suppression of the evidence" [*Id.* at 44 n. 26].

In his objections, defendant asserts: "[C]ustodial interrogation without probable cause and without an exception to the warrant requirement is a violation of Def's 4th Am. Rights to be free from unreasonable search and seizure and the fruits of the poisonous tree – LG cellphone and Micro SD card and their contents (tangential), and statements (testimonial) – may not be used at all. The Exclusionary Rule must apply, and since those seizures were not even pursuant to a warrant, the Good Faith Doctrine cannot save the evidence" [Doc. 202, p. 8].[8] Defendant further raises several objections regarding Judge Poplin's findings that the seizure of his cellphone and SD card was based on exigent

---

[8] In this vein, defendant also objects: "The illegally obtained contents of the micro SD card were the basis for the June 6th, 2018 federal search warrant which formed the basis for the two Cellebrite extractions in June of 2018 and February of 2019 which provided the blu-ray disks that were the (1) place to be searched, (2) the items to be seized, and also (3) the items listed as the items seized on the inventory sheet, all from the supposed November 2019 last federal search warrant. All these things are then derivative fruits of the poisonous tree and must be suppressed." [Doc. 202, pp. 8-9]. Further, defendant objects that "illegally obtained evidence – the 'fruit' – may not be used at all – not for any purpose – not in affidavits, not in determinations of probable cause, etc.: []any 'tainted' information then must be removed from the warrant affidavits as such information is not permitted to be used" [*Id.* at 11]. To the extent that defendant objects to the search warrants herein, these objections will be addressed by the Court upon a *de novo* review of Judge Poplin's subsequent R&R [Doc. 199]. As noted by the magistrate judge, such "challenges fall outside the scope of the issues raised in his suppression motion [Doc. 19] and the evidence presented at the April 14, 2021 evidentiary hearing" [Doc. 175, p. 67].

25

circumstances, not created by the JCSO detectives, to prevent the destruction of evidence [*Id.* at 13-17]. Of relevance on this issue, the magistrate judge concluded:

> After the May 2 interview, Defendant knew that officers suspected him of sending and requesting photographs to and from a minor and that they were seeking a search warrant to search the contents of his cellphone. Additionally, the information provided by Defendant in the interview that he had closed his reported account on DeviantArt, that he was using an account created by Corum, and that he had previously withheld the ManGlen[n] account name from his registration form all suggest that Defendant was trying to avoid being linked with his activity on the website. Thus, detectives reasonably concluded that Defendant, suspecting the search of his cellphone was imminent, could if given the opportunity, quickly destroy any incriminating evidence on his cellphone and SD card.

[Doc. 175, p. 40]. Regarding the deactivation of his account, defendant complains that the magistrate judge "crafted an heroic and remarkable scenario in the attempt to show exigency and imminent destruction," labeling her reasoning as "a preposterous *non sequitur* scenario for the possibility of destruction" [Doc. 202, p. 15].

In support of this argument, defendant contends that the imminent destruction of evidence must first be proven by the police, not the judge, before any balancing of governmental interests takes place [*Id.*]. Therefore, he also objects to the magistrate judge's conclusion that the significant governmental interest of protecting minors outweighs the temporary seizure of his cellphone while obtaining a search warrant [*Id.* at 16]. Defendant complains about the magistrate judge's reliance upon caselaw on this issue, stating "all analyses regarding exigency and imminent destruction of evidence are all part and parcel of the type of temporary seizures warrantlessly conducted under Terry-stop rules and none of them applied here and need to be discarded: disregard *McArthur*, *Bradley*, *Friar*, *Mason*, *Sangineto-Miranda*, *Plavcak*, and *VanLeeuwen*"

26

[*Id.* at 13]. The government responds that exigent circumstances existed for the JCSO detectives to seize defendant's cellphone, given that electronic evidence is inherently perishable, and the law enforcement officials reasonably believed the evidence could have easily been destroyed, especially because defendant was aware of his sex offender registry violation [Doc. 23, pp. 3-4; Doc. 103, pp. 9-11; Doc. 189, pp. 4-5].

Again, defendant's objections regarding the magistrate judge's findings relating to exigency and imminent destruction of evidence supporting the warrantless and temporary seizure of his cell phone are merely restatements of the arguments he made previously on this issue in his post-hearing brief [*see* Doc. 96, pp. 18-19]. When reciting the evidence, Judge Poplin certainly did not "craft … a preposterous … scenario" as defendant contends. Rather, she carefully listened to the testimony, evaluated the evidence, and exhausted the issues raised by the parties to reach her conclusions. As stated earlier, Judge Poplin was in the best position to make credibility determinations in this case upon observing the testimony and evidence before her. Further, the magistrate judge correctly determined that it was not necessary to reach the matter of the fruits of the seizure or the propriety of suppression of the evidence, having only examined the warrantless seizure of the cellphone and finding it constitutional. Defendant, who is simply restating his previous arguments, has failed to present any valid challenge to her findings in this regard.

With regard to his disagreement about the magistrate judge's reliance on the caselaw, defendant's post-hearing brief specifically states, "[a]ll of the *Friar* progeny cases deal with Terry-style brief detentions so all are misplaced because the illegal warrantless

27

seizure of Defendant's LG cell phone was a 'full-blown' seizure requiring probable cause and an exigency, or a warrant" [Doc. 96, p. 23].  The government addressed much of this case law relating to this issue both in its response in opposition to defendant's motion to suppress [Doc. 23, pp. 3-4] and in its post-hearing brief [Doc. 103, pp. 9-10].  The magistrate judge correctly analyzed the applicable law, which has been thoroughly debated by the parties.  Defendant has simply not proffered any adequate basis for the Court to sustain his objections, which are merely a disagreement with the findings and conclusions reached by the magistrate judge.

For all of these reasons, defendant's objections on this issue are **OVERRULED**.

## 2. Defendant's Fifth Amendment Objections

### a. Objections relating to voluntariness of defendant's statements

The magistrate judge found that defendant's "statements to law enforcement on May 2, 2018, cannot be used in the Government's case-in-chief at trial, because they were obtained in violation of his rights under the Fifth Amendment" [Doc. 175, p. 2].  She specifically found that the "provision of the *Miranda* warnings approximately halfway through the interview was not effective and the entire interview is inadmissible at trial due to the failure to provide the *Miranda* warnings before the interrogation began" [*Id.* at 54].  However, as Judge Poplin pointed out, voluntary but unwarned custodial statements are not "inherently tainted" fruits and may be used for other purposes, such as to impeach a defendant on cross-examination or to admit physical evidence [*Id.* at 55-56, citing

28

*Vega v. Tekoh*, 142 S. Ct. 2095, 2103 (2022); *United States v. Sangineto-Miranda*, 859 F.2d 1501, 1518 (6th Cir. 1988)].

Thereafter, the magistrate judge turned to an analysis of whether defendant's statements were nevertheless voluntary under the totality of the circumstances [Doc. 175, p. 57]. She determined that "to find a statement is involuntary, the court must find the following three factors are present: (1) 'the police activity was 'objectively coercive';' (2) 'the coercion in question was 'sufficient to overbear defendant's will';' and (3) 'the alleged police misconduct 'was the crucial motivating factor in the defendant's decision to offer the statements'" [*Id.* at 58, quoting *United States v. Luck*, 852 F.3d 615, 622 (6th Cir. 2017)]. Applying these factors to the evidence at hand, Judge Poplin concluded that defendant's statements, though unwarned, were voluntary [Doc. 175, at p. 62]. She further determined that defendant's voluntary statements may be used for other purposes, such as permitting Detective Collins to seek an arrest warrant [*Id.* at 70].

In his objections, defendant complains that the magistrate judge erred in finding that his statements were voluntary and not violative of the Fifth Amendment [Doc. 202, pp. 18-23]. Defendant objects as follows:

> Def. objects that the R&R found and concluded that any of his statements made were voluntary that were made once JCSO began asking him incriminating questions about his internet usage, during custodial interrogation, without probable cause, and without *Miranda* warnings, and Def. states that all such testimony and statements were involuntary and in violation of the 5th Amendment and therefore, all fruits of those statements and all fruits of that custodial interrogation, namely LG cellular telephone and micro SD card and all the contents thereof, and all statements made by Def., may not be used at all, not for any purpose.

29

[*Id.* at 18].  He frames his objections around the three factors for testing whether a confession is involuntary due to police coercion, as outlined by the Sixth Circuit in *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999) [*Id.*].  Judge Poplin utilized the same three factors, which are also set forth in *Luck*, and the evidence before her in concluding that (1) the threat to arrest defendant and take his dogs to a shelter did not rise to the level of coercion; (2) even taking this threat as coercive, the video recording of defendant's interview reveals that his will was not overborne; and (3) this threat was not the crucial and motivating factor in his decision to give his statements [Doc. 175, pp. 58-62].

Defendant objects to each of these conclusions, and he takes particular issue with Judge Poplin's finding that the threat to his dogs was "serious but not necessarily a threat of fatal consequence" [Doc. 202, p. 20, citing Doc. 175, p. 61].  Defendant maintains that all of his statements after the threat to take his dogs to the shelter "clearly qualify as involuntary under the 3 *Mahan* factors" [Doc. 202, p. 23].  He quotes from a portion of his interview, near the end, in which he can be heard lamenting the fate of his dogs while both detectives are out of the room:

> At the end of the torture session, one does NOT hear Def. bemoaning "Oh no! They're gonna search my phone!"  No.  But what we do hear is Def. bemoaning his dogs' fate because even at that point he believed he had failed to save their lives (Doc. 98-1, p. 47) ("Oh my God.  My dogs … Oh no …"; "[laughs] Woo … Oh, God, my dogs … etc.). See also Doc. 98-1, p. 49.

[Doc. 202, p. 23, citing to unofficial transcript].[9]

---

[9] For clarification, the Court points out that defendant can also be heard saying, "It never ends.  Every year.  It never ends.  Never, never, never.  It never ends … Oh, my God.  Come on … Oh, for God's sake …" [Doc. 44, Ex. 3].  At this point, defendant is certainly not speaking

30

The government responds that defendant's statements were properly found by the magistrate judge to be voluntary such that suppression is not warranted [Doc. 189, p. 6]. As set forth in its brief, "[a] review of the hearing evidence – which included recorded video of defendant's questioning by detectives – supports the Magistrate Court's conclusion that, although defendant was subject[ed] to routine interrogation tactics and some coercive statements, overall, defendant's behavior on video demonstrated that his will was not overborne and his statements were voluntary" [*Id.*]. The government maintains that defendant has provided no justification in his objections for altering this ruling [*Id.*].

Turning to his objections, defendant has again repeated the same arguments to this Court that he made to the magistrate judge regarding the voluntariness of his statements on May 2, 2018. A review of his post-hearing brief reveals that defendant previously argued that his statements were not voluntary or reliable after the detective made a threat to send

---

about his dogs; rather, he is speaking about the fact that he has been questioned by law enforcement about a sex offender registry violation yet again. Several facts illustrate this. First, defendant was convicted of two counts of child molestation on or about May 24, 1995, in the State of Georgia, as is the subject of the government's Notices of Enhanced Penalties [Docs. 127 & 201]. Defendant stated during his interview in the instant case that he served 16 years in prison, which was related to these convictions [Doc. 44, Ex. 3]. Second, defendant stated during the interview that he was arrested for failing to put his "Manglenn" account on his sex offender registration form [*Id.*]. Finally, in September 2018, defendant was tried in Sevier County, Tennessee, on charges of possessing items in an attempt to lure a minor to engage in sexual activity, violation of the sex offender registry, and contributing to the delinquency of a minor. *State v. Glatz*, E2019-00431-CCA-R3-CD, 2020 WL 865071, at *1 (Tenn. Crim. App. Feb. 21, 2020). The jury convicted defendant on attempted sexual exploitation of a minor and contributing to the delinquency of a minor. *Id.* The Court of Criminal Appeals reversed his conviction for attempted sexual exploitation of a minor but affirmed his conviction for contributing to the delinquency of a minor. *Id.* at *5-7.

31

his dogs to the shelter [*see* Doc. 96, pp. 12-15, 25-26]. Being in the best position to make credibility determinations, Judge Poplin again carefully listened to the testimony, evaluated the evidence, and exhausted the issues raised by the parties to reach her conclusions. Simply stated, defendant is merely disagreeing with the magistrate judge's findings and conclusions. He has not presented any valid basis for sustaining his objections or for questioning the credibility determinations.

For all of these reasons, defendant's objections on this issue are **OVERRULED**.

### b. Objections relating to trustworthiness and corroboration of defendant's statements

Defendant further objects that "the compelled statements obtained were untrustworthy and uncorroborated" and further that "the compelled and coerced statements extracted by JCSO violated Def's 5th Am. rights and as such, all statements – all testimonial evidence, and all seized property – LG cell phone, micro SD card, and their contents, the tangential evidence, must be suppressed" [Doc. 202, pp. 23, 25]. He complains that his statements to JCSO detectives were unreliable and inconsistent based on other statements he made during the interview suggesting that he was not responsible for using the "Tennesseetomcat" account [*Id.* at 24]. According to defendant, his statements also lacked independent corroboration by JCSO detectives [*Id.* at 24-25]. In support, he repeats the arguments he made earlier regarding the lack of corroboration of the Taveras complaint [*Id.*].

As indicated above, the Court has already determined that the magistrate judge correctly concluded that the Taveras complaint was reliable and corroborated such that it

32

supports a finding of probable cause, and further that defendant's statements were voluntary such that they can be used for purposes outside the government's case-in-chief. Therefore, defendant's objections in this respect are iterations of arguments already raised and which the Court has overruled. To the extent that defendant argues the corroboration principle requires evidence of crimes independent of his compelled statements, the Court notes that the government will be required to prove each element of the offenses charged beyond a reasonable doubt.

For all of these reasons, defendant's objections on this issue are **OVERRULED**.

### 3.    Defendant's TSOR Law Objections

Finally, defendant challenges the constitutionality of the TSOR law found at Tenn. Code Ann. § 40-39-201 *et seq.* In his objections, defendant states that the Tennessee sex offender registration law is an "Ex Post Facto Law being unconstitutionally retroactively misapplied to Def. because it has been found to be facially punitive (see *Does #1-9 v. Lee*, No. 3:21-CV-590 (M.D. Tenn.), appeal filed No. 23-5248 (6th Cir.)"[10] [Doc. 202, p. 16]. Listed under Objection #15, defendant references a Supplemental Brief being filed contemporaneously with his objections to "prove this EPFC claim" [*Id.*]. In his supplemental brief, defendant asserts the following:

---

[10]    The full cite is *Does #1-9 v. Lee, et al.*, No. 3:21-CV-590, No. 3:21-CV-593, No. 3:21-CV-594, No. 3:21-CV-595, No. 3:21-CV-596, No. 3:21-CV-597, No. 3:21-CV-598, No. 3:21-CV-624, No. 3:21-CV-671, 2023 WL 2335639, *17 (M.D. Tenn. March 2, 2023), in which the district court found that summary judgment should be granted to plaintiffs as prior sex offenders challenging various restrictions imposed by the TSOR law, relying upon the Sixth Circuit decision in *Does #1-5 v. Snyder*, 834 F.3d 696 (6th Cir. 2016), which "overwhelmingly supports a holding that the [TSOR law] is punitive for Ex Post Facto Clause purposes."

33

Based on new court precedents, both binding and persuasive, all having been decided after September 24, 2021, Def. can finally prove that, long before the events of May 2, 2018 (seizure of devices) and May 3, 2018 (obtaining warrant based on TSOR violation), Def. was being unconstitutionally subjected to the retroactive misapplication of punitive TSOR. This fact undermines, eliminates, and invalidates any finding of probable cause to warrantlessly seize the devices, and it undermines, eliminates, and invalidates the suspected crime at issue in the May 3, 2018 warrant. This necessitates a finding by the Court that all evidence in the instant case, that is the subject of Docs. 19 and 20, was illegally obtained and must be suppressed.

[Doc. 203, pp. 1-2].

The government responds that defendant's challenge to the constitutionality of the TSOR law based upon a violation of the *ex post facto* clause should not be considered by the Court because he waived the argument by not raising it before the magistrate judge [Doc. 206, pp. 2-3]. In support of this position, the government relies upon caselaw wherein it has been noted that a *de novo* review by the district court of objections timely filed does not allow parties to raise new arguments that were not presented to the magistrate judge [*Id.* at 2-3 (citing *Murr v. United States*, 200 F.3d 895, 902 n. 1 (6th Cir. 2000); *United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998), *superseded by rule*, 956 F.3d 904 (6th Cir. 2020); *Farmer v. Upchurch*, No. 1:21-CV-153, 2022 WL 989475, *1 (E.D. Tenn. April 1, 2022))].

In his reply, defendant readily "acknowledge[s] that "[t]he Govt is correct that 'a review of the record shows that defendant never raised this constitutional claim [previously]'" [Doc. 215, p. 1]. However, he urges the Court that this argument is not an objection to the R&R, explaining: "Def. reminds this Honorable Court that nowhere in his supplement brief does Def. characterize or state his supplemental brief as an objection to

34

the R&R. Indeed, the supplemental brief is not an objection to the R&R and, as such, is ineligible to be waived under the authority provided by Govt (see Doc. 206, p. 2)" [*Id.*]. Regarding the "new developments that have completely reshaped the landscape of punitive retroactive TSOR," defendant maintains:

> [A] combination of recently released precedents have finally nudged the analysis of whether the [TSOR law] is punitive or not to the conclusion that retroactive TSOR is facially punitive. Up until now, therefore, Def. would have had to prove in his civil suit (Case No. 3:19-CV-00026 (E.D. Tenn)) [sic][11] that TSOR was punitive as-applied to him, only. Since his civil suit is still pending, it would have been premature to make such an as-applied constitutional challenge in his criminal case, but, of even greater significance, such a challenge would have been inappropriate as being completely and exactly duplicative of his civil case and a waste of judicial resources that would have been prohibited akin to one of the reasonings behind the Younger Abstention Doctrine.

[Doc. 215, pp. 1-2].

From the outset of his objection period, Judge Poplin placed defendant on notice that "[o]nly specific objections are reserved for appellate review" [Doc. 175, p. 71 n. 36 (citing *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987))]. The caselaw, as cited by the government above, is well-established on this point. Moreover, the Sixth Circuit acknowledges that the failure to raise an objection to a magistrate judge's report and recommendation related to an *ex post facto* clause challenge to a statute constitutes waiver. *Thrower v. Montgomery et al.*, 50 F. Appx. 262, 263-64 (6th Cir. 2002) (citations omitted) (plaintiff Thrower's § 1983 suit alleged in part that Ohio's parole guidelines violated the *ex post facto* clause; the magistrate judge

---

[11] The docket number for the *Glatz v. Rausch et al.* case is 3:21-CV-26 (E.D. Tenn.), as defendant correctly notes in other areas of his briefing.

recommended that the complaint be dismissed and the district court adopted the report and recommendation; on appeal, Thrower argued that the district court erred in dismissing his *ex post facto* claim; the Sixth Circuit held that the district court properly dismissed the action because Thrower failed to object with specificity to the magistrate judge's report and recommendation, given the established case law in this circuit that failure to file objections to the magistrate judge's report and recommendation constitutes waiver of the right to appeal).

The Court finds defendant's position on this matter to be untenable. While defendant is attempting, impermissibly, to cast his argument as a supplemental brief on new developments, he clearly raised the constitutionality of the TSOR law for the first time in his objections to the R&R as "Obj #15" [Doc. 202, p. 16] and then provided more details in a supplemental brief [Doc. 203] and a reply [Doc. 215], even the title of which belies his stance [*Id.*]. Indeed, defendant admits that he did not raise this claim previously [Doc. 215, p. 1]. Moreover, as early as January 21, 2021, upon filing a civil suit, defendant raised an "'as-applied challenge of the constitutionality of the [TSOR law]" against multiple defendants, including of relevance herein Detectives Taylor and Collins as well as Deputy Cupp, [*see* Glatz *v. Rausch et al.*, No. 3:21-CV-26, Doc. 1, filed Jan. 21, 2021].[12] By failing

---

[12] While defendant asserts herein that it would have been premature for him to raise an as-applied constitutional challenge to the TSOR law, it is interesting to note that in *Does #1-9 v. Lee, et al.*, 2023 WL 2335639, at *17, the district court observed: "The distinction between so-called 'facial' and 'as-applied' challenges has surfaced repeatedly in the litigation surrounding this issue, and it has rarely, if ever, been useful. '[T]he proper approach to a constitutional case typically turns on the applicable substantive constitutional doctrine and the institutional setting, not the classification of a case as a facial or as-applied challenge.'" (citation omitted).

36

to raise any constitutional challenge to the TSOR law in his suppression motion and various post-hearing briefs before the magistrate judge, the Court finds that defendant waived this issue.

For all of these reasons, defendant's objections on this issue are **WAIVED**.

## IV.    Conclusion

In sum, after reviewing the record in this case, including the R&R, the objections, the underlying briefs, and the relevant law, the Court will **OVERRULE** defendant's objections [Doc. 202], **ACCEPT IN WHOLE** the R&R [Doc. 175], and **GRANT IN PART** defendant's Motion to Suppress [Doc. 19] in that his May 2, 2018, statements to the JCSO detectives cannot be used in the government's case-in-chief at trial, **DENYING** the motion in all other respects.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE