UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,           )
                                    )
                    Plaintiff,      )
                                    )
v.                                  )        No.:    3:19-CR-218-TAV-DCP-1
                                    )
GLENN FRED GLATZ,                   )
                                    )
                    Defendant.      )

<u>**MEMORANDUM OPINION AND ORDER**</u>

This criminal matter is before the Court for consideration of the Report and Recommendation ("R&R") entered by United States Magistrate Judge Debra C. Poplin on May 1, 2023 [Doc. 199].  The R&R addresses defendant's Motion to Suppress All Evidence Obtained by a May 3, 2018 Jefferson County Search Warrant, a June 6, 2018 Federal Search Warrant, and a November 2019 Federal Search Warrant [Doc. 20] , Motion for a "Franks" Hearing [Doc. 34], and pro se motion relating to irregularities with the November 2019 search warrant [Doc. 99, pp. 4-6].  Following an evidentiary and suppression hearing held on April 14, 2021 [Docs. 39, 44] and considering the parties' filings, Judge Poplin then issued the R&R recommending that the Court deny defendant's motions to suppress and for a *Franks* hearing [Doc. 199].

Defendant filed objections to the R&R [Doc. 227], and the government filed a response [Doc. 233].  Defendant filed no reply brief and the time for doing so has passed.  Accordingly, the matter is now ripe for the Court's review.  *See* Fed. R. Crim. P. 59(b); E.D. Tenn. L.R. 7.1(a).  For the reasons that follow, the Court will **OVERRULE**

defendant's objections [Doc. 227], **ACCEPT IN WHOLE** the R&R [Doc. 199], and

**DENY** defendant's motions to suppress and for a *Franks* hearing [Docs. 20, 34, 99].

## I. Relevant Facts

The Court presumes familiarity with the facts of this case. For background, the

Court references the relevant facts set forth in its Memorandum Opinion and Order issued

on June 15, 2023 [Doc. 244]. In addition, the Court includes the following background as

articulated in the R&R [Doc. 199]:

> Defendant is charged [Doc. 1] with four counts of inducing a minor to engage in sexually explicit conduct to produce child pornography (Counts 1, 4, 6, & 8), one count of receiving child pornography (Count 2), three counts of transfer of obscene materials to a minor (Counts 3, 5, & 7), and one count of possession of child pornography (Count 9). These charges are alleged to have occurred between December 2015 through May 2, 2018. Count 1 relates to minor A.A., and Counts 3 through 6 and Count 8 relate to minor F.R. Counts 3, 5, and 7 relate to a minor under age sixteen, and Count 9 relates to a minor under age twelve. These charges all arise from the data extracted from Defendant's cellular telephone and SD card, which were seized on May 2, 2018, by the Jefferson County Sheriff's Office ("JCSO").
>
> On May 2, 2018, JCSO Detectives Richard Collins and Pamela Taylor interviewed Defendant Glatz at the Jefferson County Justice Center and seized his cellular telephone, which contained a 16-gigabyte micro-SD card. The following day, May 3, 2018, Detective Taylor applied for and received a search warrant for Defendant's LG cellphone and "16 gigabyte sim card" [Doc. 20-1 p. 1].
>
> In her supporting affidavit, Detective Taylor alleges the following as probable cause to search Defendant's cellphone and "sim card" for evidence of solicitation of a minor and violation of the sex offender registration law: On April 28, 2018, law enforcement received a complaint from Samantha Taveras, a user of the DeviantArt website, who reported that Glenn Glatz, a registered sex offender, was using the username Tennesseetomcat on DeviantArt and was "chatting and 'role-playing'" with a thirteen-year-old girl, who used the username Nolifelady [*Id.* at 2]. Detective Taylor also stated that Glatz was sending "inappropriate" photographs of himself and asking the minor to send photographs of herself to him [*Id.*]. Detective Taylor alleged that Glatz failed to report using the Tennesseetomcat username on the

2

DeviantArt website [*Id.*]. Detective Taylor stated that "Mr. Glatz was interviewed on 5/2/18 and did admit to using the username, Tennesseetomcat and also chatting with the minor child and requesting a photograph" [*Id.*]. Detective Taylor stated that based upon this evidence and her knowledge, training, and experience, she believes Glatz's cellphone will contain text messages, photographs, unreported website usage, and unreported usernames, all "depicting illegal activity," namely solicitation of a minor in violation of Tennessee Code Annotated § 39-13-528 and violation of the Tennessee sex offender registration laws at § 40-39-208 [*Id.* at 4]. A judge issued the search warrant on May 3, 2018 [*Id.* at 1].

According to Detective Richard Collins, who testified at the April 14, 2021 evidentiary hearing in this case, Glatz's cellphone was submitted to Detective Michael Stallings, forensic examiner, for a Cellebrite analysis [Doc. 44, Transcript, p. 66]. Detective Collins testified that the execution of the May 3, 2018 search warrant resulted in the seizure of child pornography [*Id.* at 40].

On June 6, 2018, Federal Bureau of Investigation ("FBI") Special Agent Bianca Pearson ("SA Pearson") sought and obtained a federal search warrant for the contents of Defendant's LG cellular phone and SD card "previously installed inside the cellular telephone" [Doc. 35-1, p. 1]. The warrant permits the search of the cellphone and SD card for "visual depictions . . . of minors engaged in sexually explicit conduct," child erotica, passwords and security devices, and evidence of who was using the cellphone at the time the aforementioned items were created, all of which constitute evidence of violations of the receipt and possession of child pornography in violation of 18 U.S.C. § 2252A and enticement of minors to engage in sexual activity in violation of 18 U.S.C. § 2422(b) [*Id.* at 5 (Attachment B)].

In her affidavit in support of the June 6, 2018 search warrant, SA Pearson states that she met with JCSO Detective Richard Collins on May 23, 2018, and learned that based on a May 2, 2018 interview of Glatz, he was arrested for violation of the Tennessee Sex Offender Registration law for failing to report "a chat application and email address" on the registry [Doc. 35-1 ¶17]. The affidavit relates that in May 2018, Detective Michael Stallings of the Jefferson City Police Department examined Glatz's cellphone and SD card pursuant to a May 2018 search warrant issued by Jefferson County Circuit Court Judge Duane Slone [*Id.* at ¶18]. Detective Stallings was not able to search the cellphone's memory, which was "pass code encrypted," but he searched the SD card and seized images of a nude minor female [*Id.* at ¶¶18–19]. The affidavit describes four of the images seized from the SD card, stating three images were focused on the minor's face and naked breasts and one on her naked vagina [*Id.* at ¶19]. The words "Glenny's Bitch" are superimposed over and just above image of the minor's vagina [*Id.*].

3

SA Pearson's affidavit states the SD card also contained an image of three SIM cards and one SD card taped to a note from "Mindy" asking "Rainna" to forward the attached SIM and SD cards to another female [*Id.* at ¶21]. In the same image with the note is an envelope addressed to Rainna Nelson in Alaska with a return address to Mindy Parks in Dandridge, Tennessee [*Id.*]. The affidavit relates that Postal Inspector John Wallace Bowden believes that the parties mentioned in the note and on the envelope "are attempting to hide their true identity by using fictitious names in order to exchange digital storage media" [*Id.* at ¶21]. SA Pearson states that based upon her "training, experience, and discussions with FBI computer forensic examiners, the FBI has the capability to examine the internal memory of the device by bypassing the pass-code lock features of this phone" [*Id.* at ¶22]. Finally, the affidavit states that Glatz was arrested for child molestation and sentenced to twenty years of incarceration "on May 24, 2005" [*Id.* at ¶23] and was indicted in Sevier County, Tennessee, on September 11, 2017, for possessing items in an attempt to lure a minor to engage in sexual activity, violation of the sex offender registry, and contributing to the delinquency of a minor [*Id.* at ¶16]. The affidavit relates that Defendant's SD card also contained photographs of the clothed minor involved in the Sevier County charges while she was inside Defendant's camper [*Id.* at ¶20].

On November 19, 2019, FBI Special Agent Kristina L. Norris ("SA Norris") sought and obtained a federal search warrant for four Blu-ray discs containing the extracted data from the Defendant's cellphone and SD card [Doc. 102-1 pp. 1–5]. The search warrant permits the search of four Blu-ray discs, containing the extractions from Defendant's LG cellphone and micro-SD card for the items in Attachment B, which are images of child pornography as defined in 18 U.S.C. § 2256; data reflecting the transfer of obscene material to minors under age sixteen; communications concerning child pornography, transferring obscene materials to minors under age sixteen, or soliciting minors for sex; child erotica; data on ownership of the devices used in the commission of these offenses; passwords and data security devices; and data revealing the presence of malware or viruses on the devices [*Id.* at pp. 1, 3].

In her affidavit in support of the second federal search warrant, SA Norris states that on May 22, 2018, JCSO Detective Richard Collins contacted SA Pearson for assistance with an investigation of Glenn Glatz, who was in custody for violating the Tennessee sex offender registration law and sexual exploitation of a minor [Doc. 35-2 ¶15]. The affidavit relates that SA Pearson met with Detective Collins on May 23, 2018, and learned Collins "had received a report that Glatz was using social media to communicate with a 13[-]year-old girl" [*Id.* at ¶16]. Detective Collins asked Defendant to come for a "sex offender compliance check" and interviewed Defendant on May 2, 2018 [*Id.*]. "Based on [this] interview," Defendant "was subsequently arrested for violation of the Tennessee Sex Offender

4

Registration law because [he] was using a chat application and e-mail address that were not listed on his sex offender registry as required" [*Id.* at ¶16]. The affidavit states that the JSCO obtained a search warrant for Defendant's LG cellphone "containing a micro SD card, 16GB," but law enforcement was able to search only the SD card because the cellphone was "password encrypted" [*Id.* at ¶17].

SA Norris's affidavit relates that pursuant to a federal search warrant, the FBI accessed Defendant's cellphone in February 2019, extracted the contents of the cellphone, and placed the results of the forensic examination of the cellphone on four Blu-ray discs [*Id.*]. The affidavit alleges that probable cause for the first federal search warrant relied in part on the evidence gained from the state search warrant and "[u]pon further review, the facts set forth in the affidavit in support of the state search warrant arguably may not sufficiently establish probable cause for the state search warrant" [*Id.* at ¶18]. SA Norris states that "out of an abundance of caution," she seeks "to search the same data without relying on the information obtained through" the prior state and federal search warrants [*Id.*].

Agent Norris's affidavit provides the facts in support of this separate probable cause as follows: Beginning shortly after his arrest, Defendant made over sixty recorded jail telephone calls to a telephone number that law enforcement identified as that of a minor female ("V1") from Hawthorne, Florida [*Id.* at ¶19]. Identifying information (V1's unique first name, that she lives in Florida, and that she moved to Florida from Alaska) disclosed during the recorded calls allowed law enforcement to identify V1 and her parents [*Id.* at ¶20]. On January 31, 2019, FBI agents contacted V1 and her parents and interviewed V1, who said she met Defendant on DeviantArt, Defendant was her boyfriend, she knew Defendant was "much older" than her, and she told Defendant she was eighteen, although she had recently turned fourteen [*Id.* at ¶21]. V1 told agents that Defendant gave her a SIM card to use in communicating with him, and she confirmed that she sent naked pictures of herself to Defendant over the internet shortly before his arrest in May 2018 [*Id.* at ¶22].

SA Norris's affidavit further relates that on July 18, 2019, FBI agents contacted a second minor ("V2"), who was communicating with Defendant and V1 [*Id.* at ¶23]. V2's parents permitted the FBI to perform a forensic evaluation of V2's cellphone, which revealed that V2 communicated with Defendant and V1 on the WhatsApp messaging application at Defendant's direction, "because it has end to end encryption" preventing others from viewing the conversations [*Id.* at ¶23]. The affidavit recounts several conversations taken from V2's cellphone in which Defendant tells V1 and V2 that the application they are using is "safe for perverts" [*Id.* at ¶24(b)], Defendant tells V2 that V1 is only thirteen so V2 will need to "take the lead" in lesbian "rp" (role-play) [*Id.* at ¶24(e)], V1 tells V2 that she is concerned

5

and embarrassed about police finding pictures of "her body" after Defendant's arrest [*Id.* at ¶26], V1 tells V2 that she wished her cellphone did not delete the "hottt" [sic] pictures Defendant sent her and that she knows Defendant sent V2 and others "dick pics or vids or something" once when he was mad at V1 [*Id.* at ¶27], and after Defendant's arrest, V1 told V2 that she deleted her pictures and videos from Defendant, changed her password, and "locked [her] apps" in case the police seized her cellphone, knowing that she could get "new stuff" if Defendant got out of jail [*Id.* at ¶28(c)]. The affidavit states V2's contact lists for both WhatsApp and her cellphone contain Defendant's cellphone number [*Id.* at ¶29].

SA Norris's affidavit provides the following additional information in support of probable cause: Defendant was arrested for child molestation and sentenced by a Georgia criminal court to twenty years of incarceration "on May 24, 2005" [*Id.* at ¶30]. Defendant's adult male roommate told the manager of the trailer park where they lived that Defendant tried to convince girls, aged thirteen or fourteen, from North Carolina to come to his trailer [*Id.* at ¶31]. The trailer park manager saw Defendant throw a laptop computer and cellphones into a dumpster, after Defendant was approached by law enforcement and after his LG cellphone was seized by officers [*Id.* at ¶31]. The FBI reviewed Defendant's correspondence, written while in state custody, in which he discussed his online friendships with teenage girls he met on DeviantArt and that he was accused of being a "pedophile" by users of DeviantArt website [*Id.* at ¶32]. Defendant also used an adult friend to send V2 handwritten correspondence professing his love for V2 and discussing "sexual matters" [*Id.* at ¶33]. SA Norris submitted that based upon this information, probable cause exists to believe evidence of violations of 18 U.S.C. §§ 1470, 2252A, and 2422(b) would be found in the data on the four Blu-ray discs [*Id.* at ¶39].

[Doc. 199, pp. 2-10, footnotes omitted].

For ease of reference, the Court relies upon the three search warrants and corresponding affidavits cited by Judge Poplin, as follows: (1) Doc. 20-1 is the state search warrant dated May 3, 2018, which includes the Affidavit of JCSO Detective Pamela Taylor [*see* Doc. 199, p. 3 n. 2]; (2) Doc. 35-1 is the first federal search warrant dated June 6, 2018, which includes the Affidavit of SA Pearson with attachments [*see Id.* at 4 n. 3]; and (3) Doc. 102-1 is the second federal search warrant dated November 19, 2019, along with the Affidavit of SA Norris with attachments as Doc. 35-2 [*see Id.* at 6 n. 4].

## II. Standard of Review

The Court generally reviews *de novo* those portions of the R&R to which the defendant has objected. 28 U.S.C. § 636(b)(1); Fed. R. Crim. P. 59(b). Therefore, the Court considers the R&R, the motions at issue, the parties' underlying and supporting briefs, defendant's objections, and the government's response to those objections, all in light of the applicable law.

Objections to a magistrate judge's R&R must be clear enough to enable the Court to discern the issues that are dispositive and contentious. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505, 508–09 (6th Cir. 1991)). "The filing of vague, general, or conclusory objections does not meet the requirement of specific objections and is tantamount to a complete failure to object." *Cole v. Yukins et al.*, 7 F. App'x 354, 356 (6th Cir. 2001).

"A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge. An 'objection' that does nothing more than state a disagreement with a magistrate judge's suggested resolution, or simply summarizes what has been presented before, is not an 'objection[.]'" *VanDiver v. Martin et al.*, 304 F. Supp. 2d 934, 937 (E.D. Mich. 2004). If "objections merely restate the party's arguments raised … previously [and] addressed by the magistrate judge, then the Court may deem the objections waived." *Johnson v. Colvin*, No. 3:13-CV-690, 2014 WL 7272326, at *2 (E.D. Tenn. Dec. 18, 2014) (citing *VanDiver*, 304 F. Supp. 2d at 937)).

7

Moreover, "[a] general objection to the entirety of the magistrate's report has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrates Act." *Howard*, 932 F.2d at 509.

"When a magistrate's findings and recommendations rest upon the evaluation of the credibility of a witness, the district court is not required to rehear the testimony in order to conduct a de novo determination of the issues." *United States v. Johnson*, No. 10-20176, 2011 WL 3844194, at *2 (W.D. Tenn. Aug. 30, 2011) (quoting *United States v. Bermudez*, 228 F.3d 424, 2000 WL 1871676, at *3 (6th Cir. Dec. 11, 2000)). The Court notes that "[i]t has long been the practice of our judicial system to leave credibility determinations to the fact finder best equipped to make those determinations." *United States v. Caldwell*, No. 1:13-CR-128, 2015 WL 179583, at *2 (E.D. Tenn. Jan. 14, 2015) (applying this principle to a magistrate judge's credibility finding from a suppression hearing).

"When reviewing a magistrate judge's credibility determinations on a motion to suppress, the district court may accept or reject the magistrate judge's determination, while recognizing a magistrate judge is in the better position to assess the credibility of witnesses he sees and hears." *United States v. Robinson*, No. 1:07-CR-01, 2007 WL 2138635, at *1 (E.D. Tenn. July 23, 2007) (citing *United States v. Ailemen*, 986 F. Supp. 1228, 1231 (N.D.

8

Cal. 1997)). "Credibility determinations of the magistrate judge who personally listened to the testimony of a witness should be accepted by a district judge unless in his de novo review of the record he finds a reason to question the magistrate judge's assessment." *Robinson*, 2007 WL 2138635, at *1 (citing *Blizzard v. Quillen*, 579 F. Supp. 1446, 1449 (D. Del. 1984)).

## III.    Analysis

### A.    Procedural History

Given the vast record, the Court will provide a brief overview of the relevant procedural history with respect to the parties' filings. On behalf of defendant, defense counsel filed a Motion to Suppress All Evidence Obtained by a May 3, 2018 Jefferson County Search Warrant, a June 6, 2018 Federal Search Warrant, and a November 2019 Federal Search Warrant [Doc. 20] and Motion for a "Franks" Hearing [Doc. 34]. After deciding to represent himself knowingly and voluntarily [*see* Doc. 48], defendant filed a motion relating to irregularities with the November 2019 search warrant [Doc. 99, pp. 4-6].[1]

With respect to the motion relating to the search warrants [Doc. 20], the government filed a response in opposition [Doc. 24]; defendant filed a post-hearing brief [Doc. 97]; the

---

[1]    The remainder of this filing involves defendant's "Motion to petition the Honorable Court to impose discipline upon Assistant United States Attorney Matthew T. Morris due to egregious multitudes of violations of the Rules of Professional Conduct" [Doc. 99]. The magistrate judge denied this motion relating to AUSA Morris, but reserved ruling on the issue of the irregularities in the second federal search warrant dated November 2019 [Doc. 101], which is now at issue as part of the instant R&R [Doc. 199].

9

government filed a post-hearing brief [Doc. 104]; and defendant filed a reply [Doc. 113]. Regarding the *Franks* hearing motion [Doc. 34], the government filed a response in opposition [Doc. 35]; defendant filed a post-hearing brief [Doc. 100]; and the government filed a post-hearing brief [Doc. 105]. As to the motion relating to irregularities in the November 2019 search warrant [Doc. 99, pp. 4-6], the government filed a response [Doc. 102] and defendant filed a reply [Doc. 111].

As noted, the magistrate judge held an evidentiary and suppression hearing on April 14, 2021 [Docs. 39, 44], and various exhibits were introduced into evidence [Doc. 40]. On May 1, 2023, the magistrate judge issued the R&R [Doc. 199]. Drawing from the voluminous filings, Judge Poplin accurately summarized the position of the parties with respect to the three motions at hand:

> Defendant Glatz asks the Court to dismiss all evidence obtained from the execution of the state search warrant and the two federal search warrants because they were issued without probable cause [Doc. 20 pp. 8-10]. Defendant further contends that all three affidavits contain false statements and/or material omissions necessary for probable cause [Doc. 34 pp. 1-5; Doc. 100 p. 1]. He argues that the three search warrants fail to state the items to be seized with sufficient particularity [Doc. 97 pp. 7-8]. He also maintains that law enforcement exceeded the scope of the state search warrant, which did not permit the search of his SD card [Doc. 20 pp. 8-9]. He asserts that the information used to provide probable cause for the two federal search warrants stems from the search of his SD card in May 2018 [Doc. 20 p. 9]. Defendant also contends that law enforcement "unreasonably delayed" seeking the second federal search warrant [Doc. 20 pp. 9-10]. Finally, Defendant argues that the second federal search warrant was never issued by a judge based upon irregularities in format, disclosure in discovery, and docketing [Doc. 97 pp. 1, 4; Doc. 99 pp. 4-6; Doc. 113].

> The Government responds that Defendant's cellphone and SD card and the date contained thereon were lawfully searched pursuant to three valid search warrants [Doc. 24]. It contends that the state and federal search warrants are supported by ample probable cause, including information from Defendant's consensual

10

interview [Doc. 24 p. 1]. The Government argues that even if probable cause was lacking for the issuance of the state search warrant, the second federal search warrant is based upon probable cause independent of the investigation and fruits of the state search warrant [Doc. 24 p. 9]. The Government alleges that Defendant has failed to make a substantial preliminary showing that the affiants deliberately or recklessly included false information or made material omissions necessary to probable cause [Doc. 35 pp. 1-2; Doc. 105 p. 1]. It contends that the state search warrant is sufficiently particular because it directs the executing officers to search for evidence of a specific crime or crimes [Doc. 104 pp. 6-7]. The Government also asserts that the state search warrant's reference to the SD card as a "SIM" card was a clerical mistake, which does not affect the authority of law enforcement to search the SD card contained within the cellphone [Doc. 24 p. 2 n. 2; Doc. 35 pp. 7-8]. Finally, it maintains that suppression of the evidence seized from the execution of the search warrants is not the appropriate remedy because law enforcement acted in good faith reliance on the search warrants [Doc. 24 pp. 1, 10-12].

[Doc. 199, pp. 12-13]. Defendant filed objections to the R&R [Doc. 227], the government filed a response [Doc. 233], and defendant did not file a reply.

### B. Defendant's Objections to the R&R

At the outset of his objections to the R&R, defendant objects to the Court's order restricting his brief on objections to 25 pages [Doc. 227, pp. 1, 25, citing Doc. 198]. The Court's order [Doc. 198] restricting his briefing to 25 pages pursuant to E.D. Tenn. L.R. 7.1(b) pertained to defendant's objections to the first R&R after he filed objections consisting of 192 pages [*see* Doc. 188]. With respect to the instant R&R, defendant filed a "Motion for Leave of Court to File Untimely Motion for Continuance and to Submit Separate Objections to Combined R&R" [Doc. 209], seeking to file unlimited pages or alternatively a limit of 33 pages for each objection, in other words a total of nearly 100 pages. Thereafter, the Court issued an order denying this motion and ordering defendant to file any objections to the R&R in a brief not to exceed 25 pages in length [Doc. 211].

Given the page limit restriction established by the Court, defendant begins his objections by stating that "he will not be able to lodge his objections to the Franks Hearing request denial (pp. 39-61 of R&R) at all, and will most likely get cut short in his objections concerning the fraudulent attempt by all other parties to establish that case no. 3:19-MJ-1117 was a validly issued warrant" [Doc. 227, p. 1]. He requests to be allowed 75 pages, if not 99 pages, for his objections relating to the three motions at hand [*Id.*]. Defendant further objects to "being limited to 25 pages because it equates to suppression of the truth," and he warns "God is watching and we all must answer to Him" [*Id.* at 25].

The Court has adequately and repeatedly informed defendant about the applicable rule for page limitations of briefs set forth in E.D. Tenn. L.R. 7.1 [*see* Docs. 87, 101, 107, 198, 209, 211], and hereby denies any requests to circumvent this rule and overrules any objections in this regard. E.D. Tenn. L.R. 7.1(b); *Nam, et al. v. U.S. Xpress, Inc., et al.*, No. 1:11-CV-116, 2012 WL 10161528, at *1-3 (E.D. Tenn. June 25, 2012) (district court struck various dispositive motions, responses, and replies filed by the parties who repeatedly circumvented Local Rule 7.1(b),[2] with leave to refile limited briefs in compliance with the court's directives, including applicable local rules and judicial preferences); *Trinity Commc'ns, LLC v. Titan Global Ent., Inc., et al.*, No. 1:06-CV-205,

---

[2] The multiple parties in the *Nam* case filed over ten thousand pages of material on the docket spread out over approximately 350 docket entries. 2012 WL 10161528, at *1. In the instant case, more than five thousand pages of material have been filed over nearly 260 docket entries thus far. As noted herein, both the magistrate judge and this Court have waded through the vast record to address all of defendant's arguments.

2007 WL 9734654, at *2 (E.D. Tenn. June 14, 2007) (district court denied defendants' Motion for Entry of Final Judgment based on the failure to comply with Local Rule 7.1(b)).

As an initial matter, the Court must also address defendant's mistaken belief as to the proper standard of review of his objections to the R&R. Defendant makes several references in his objections that the standard of review includes a clearly erroneous standard of review, specifically stating: "It is literally impossible to cram all necessary objection's arguments into 25 pages. Henceforth Def. incorporates his post-hearing briefs (Doc. 96, 97, and 100)[3] into this objection and pleads for the reviewing Honorable Judges to carefully review them for clearly erroneous findings of fact and *de novo* review of conclusions of law." [Doc. 227, p. 2]. Further, he maintains that several findings by the magistrate judge are "clearly erroneous" and "very clearly erroneous" [*Id.* at 17].

The correct standard of review for specific objections to the magistrate judge's R&R is *de novo*, as set forth above in Section II. In contrast, a party who is seeking reversal of a magistrate judge's decision on a non-dispositive motion must show that the decision was "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* E.D. Tenn. L.R. 72.4(b). "A finding is clearly erroneous when the reviewing court . . . is left with the definite and firm conviction that a mistake has been made." *Heights Cmty. Cong. v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985) (addressing the "clearly erroneous" standard

---

[3] As explored in the analysis below, the incorporation of defendant's post-hearing briefs, which are voluminous, is indicative of defendant's propensity to raise the same arguments previously made while asserting general and conclusory objections to virtually all of the magistrate judge's findings and conclusions.

13

on appeal for issues of fact); *see Tri-Star Airlines, Inc. v. Willis Careen Corp. of Los Angeles*, 75 F. Supp. 2d 835, 839 (W.D. Tenn. 1999) (applying the same standard to appeals of magistrate judge orders under § 636(b)(1)(A)).

As succinctly explained in *Damron v. Dodrill*, No. 2:17-CV-0337, 2022 WL 225023 (S.D. Ohio Jan. 26, 2022): "Where objections are made to a Magistrate Judge's nondispositive order, the Court will set aside the order only if it 'is clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). This is a **much higher standard** than is used on a Report and Recommendation. *Compare id. with* Fed. R. Civ. P. 72(b)(3) ('de novo' review upon proper objection)." *Id.* at *1 (emphasis added).[4] In *United States v. Mandycz*, 200 F.R.D. 353, 357 (E.D. Mich. May 11, 2001), the district court corrected the defendant who had confused the standard of review by "peppering his objections with allusions to the need for a 'de novo hearing'" when the district court was actually facing objections to the magistrate judge's pretrial order on a non-dispositive matter subject to the clearly erroneous or contrary to law standard of review.

In his objections, defendant outlines 23 objections [Doc. 227] to virtually all findings of fact and conclusions of law rendered by the magistrate judge in the R&R. The government responds that the findings of fact and conclusions of law in the R&R are sound and should be adopted in full, as defendant's objections add nothing new to the previous

---

[4] While the Court acknowledges that the *Damron* decision is a civil case, the same clearly erroneous or contrary to law standard of review for non-dispositive matters and the same *de novo* standard of review for dispositive matters rendered by a magistrate judge apply in a criminal case. *See* Fed. R. Crim. P. 59(a), (b).

14

briefs filed and are unsupported by fact or law [Doc. 233]. The government asserts that no substantive response is necessary because the R&R "addresses and answers every point raised by defendant" [*Id.*].

The Fourth Amendment protects citizens against unreasonable searches or seizures. U.S. Const. amend IV. In this respect, a judge shall not issue a warrant for the search of a person, home, or personal property except upon a finding of "probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the persons or things to be seized." *Id.* The Court has carefully reviewed the evidence alongside defendant's objections and compared them to his previous filings. As explored below, the Court finds that defendant's objections to essentially the entirety of the R&R are general and conclusory objections and/or a restatement of arguments previously made to the magistrate judge, who was in the best position to make credibility determinations about the evidence before her. Accordingly, Judge Poplin's thoughtful and detailed analysis of the various issues is well-reasoned, and her findings of fact and conclusions of law will be accepted in whole.

It bears noting that defendant makes some duplicative objections to those raised with respect to the first R&R, such as defendant's arguments that his statements during the May 2, 2018, interview with JCSO detectives were coerced and involuntary and further that his cellphone and SD card were seized illegally [Doc. 227, Obj. #21, incorporating his objections to the first R&R in Doc. 202], that the SD card was not located within his cellphone [Doc. 227, Obj. #4, Obj. #15, Obj. #21, incorporating Doc. 139-1], and that the

15

TSOR law is an *ex post facto* law unconstitutionally and retroactively misapplied to him [Doc. 227, Obj. #5]. To the extent that defendant attempts to resurrect these objections, the Court made final determinations on these matters in its Memorandum Opinion and Order dated June 15, 2023, finding them to be either overruled or waived and accepting in whole the magistrate judge's findings and conclusions [Doc. 244]. Accordingly, the Court will not revisit those issues. Finally, the Court has endeavored to pinpoint the location of each of defendant's objections within Doc. 227 and each of his previous arguments in his post-hearing briefing; however, this task has been difficult given that defendant's objections and arguments overlap to a great extent within and across various documents, and therefore, the Court's citations in its analysis below are not meant to capture each and every instance where defendant makes a particular statement.

1.     **Defendant's Objections relating to Probable Cause, Particularity, Execution, and Good Faith as to the State Search Warrant**

The magistrate judge found that the state search warrant is supported by probable cause [Doc. 199, pp. 14-28], that the state search warrant is sufficiently particular [*Id.* at 62-64], that there was no error in the execution of the state search warrant [*Id.* at 68-70, 74], and that there was good faith reliance by the officer as to the state search warrant and no Fourth Amendment violation with its execution [*Id.* at 78-79]. In reaching these findings and conclusions, Judge Poplin carefully considered and addressed the positions briefed at length by each party. With respect to these issues, defendant raises a number of objections.

16

### a.    Probable Cause

Defendant asserted three primary arguments to probable cause for the issuance of the state search warrant.  As to defendant's first argument that the complainant Samantha Taveras was not sufficiently reliable and failed to allege a crime [*see* Docs. 20, 34, 100], the magistrate judge considered this position and specifically determined that the information from Taveras was reliable as she gave her name to law enforcement, such that she could be prosecuted if her report proved to be false [Doc. 199, pp. 14-18].  Regarding his second argument that his unwarned statements cannot be considered in the probable cause analysis [*see* Doc. 20], the magistrate judge determined that defendant's statements at the May 2, 2018, interview were voluntary, as previously determined in the first R&R [Doc. 175], and that the *Miranda* violation does not create a barrier to the use of defendant's statements in support of probable cause [Doc. 199, pp. 14, 18-21].

Finally, as to defendant's third argument that Detective Taylor's affidavit fails to establish a nexus between his cellphone and SD card and the alleged crimes [*see* Doc. 20], the magistrate judge agreed that Detective Taylor's affidavit fails to establish a nexus between defendant's cellphone and the evidence sought by failing to show that defendant used his cellphone to access the DeviantArt website to chat with a minor or to send or request photographs [Doc. 199, pp. 14, 21-23].  Nevertheless, Judge Poplin ultimately found the following: "… Detective Taylor's affidavit is 'not so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' *Merriweather*, 728 F. App'x at 504 (internal quotation omitted).  Detective Stallings, the

17

executing officer, reasonably relied on the warrant in good faith and evidence seized from the search of Defendant's cellphone and SD card pursuant to the state search warrant should not be suppressed." [Doc. 199, pp. 27-28]. In so deciding, the magistrate judge touched on the *Leon* good faith exception to the exclusionary rule and the meaning of a "bare bones affidavit," determining that the facts support the officer's reasonable reliance on the search warrant [*Id.* at pp. 24-27].

### b. Particularity

On the issue of particularity, defendant argued that the state search warrant is a general warrant because it authorizes the seizure of all digital evidence and improperly authorizes the search for photographs, which he asserts are not evidence of either a registry violation or solicitation of a minor [*see* Doc. 97], all of which Judge Poplin considered before reaching the finding the state search warrant is sufficiently particular [Doc. 199, pp. 61-64]. As part of this issue, Judge Poplin addressed and disagreed with defendant's assertion that photographs cannot be evidence of solicitation of a minor [*Id.* at 63].

### c. Execution

In challenging the execution of the state search warrant, defendant contended that Detective Stallings's search of his SD card exceeded the scope of the state search warrant, which authorized the search of his cellphone and "SIM" card, not his SD card [*see* Doc. 20], with Judge Poplin determining that "the authority to search Defendant's cellphone granted by the state search warrant [for evidence of both solicitation of a minor and a registry violation] also permitted the search of the SD card, which was located inside

18

the cellphone and component part thereof … [and] [a]ccordingly, the search of the SD card did not exceed the scope of the state search warrant" [Doc. 199, p. 70].

### d.    Good Faith

With respect to the good faith doctrine, defendant argued that barebones affidavits, once material misrepresentations are omitted, negate good faith, and further that the good faith exception cannot apply when the executing officers failed to act within the scope and terms of the search warrants leading to suppression of the evidence from the SD card [*see* Docs. 97, 100]. The magistrate judge concluded that "Detective Stallings acted in good-faith reliance on the state search warrant and [found] no Fourth Amendment violations with its execution," referring back to her earlier discussion on the issue of probable cause [Doc. 199, p. 79].

### e.    Specific Objections

Turning to defendant's objections, defendant asserts that the magistrate judge erred in making findings on probable cause, particularity, and execution with respect to the state search warrant. Defendant's objections maintain that the state search warrant is a bare bones or general warrant that lacks probable cause [Doc. 227, Obj. #7]; that the state search warrant and Detective Taylor's affidavit are based on defendant's false and coerced statements from the interview on May 2, 2018 [*Id.* at Obj. #8]; that Detective Stallings did not act in good faith reliance on the state search warrant and therefore violated his Fourth Amendment rights [*Id.* at Obj. #3, Obj. #4, Obj. #16]; and that the state search warrant is not sufficiently particular [*Id.* at Obj. #7, Obj. #17]. On the issue of execution, defendant

19

objects that the state search warrant only permitted the search of his cellphone and SIM card, not his SD card, which was not inside his cellphone at the time it was seized [*Id.* at Obj. #3], and he specifically contends that "some unknown person placed the SD card in the phone" [*Id.*].

### f.      Previous Arguments

Defendant's post-hearing briefs [Docs. 97, 100], which as noted he incorporates in his objections [*see* Doc. 227, p. 2], are replete with references to the state search warrant and accompanying affidavit from Detective Taylor being "general," "overbroad," "bare bones," "false," while lacking a nexus, probable cause, and particularity, with no capability of being saved by the *Leon* good faith exception [Docs. 97, 100]. Defendant also previously made the argument that his un-*Mirandized* statements were coerced by JCSO detectives and should not be used as support for the state search warrant [*Id.*]. In addition, defendant argued before that the state search warrant listed a SIM card, not SD card as an area to be searched and that the SD card was not located inside his cellphone at the time of seizure [*Id.*].

### g.      Ruling on Objections

After carefully and thoroughly exhausting each of defendant's arguments, the magistrate judge correctly concluded that the state search warrant is based on probable cause and is sufficiently particular. Further, Judge Poplin properly determined that the state search warrant permitted the search of defendant's SD card which was located inside the cellphone. Moreover, this Court accepted the magistrate judge's findings and

20

conclusions in the first R&R in whole, including the determination that defendant's statements were made voluntarily [Doc. 244, pp. 28-32] and that the SD card was found within defendant's cellphone [*Id.* at 24 n. 7]. Finally, Judge Poplin was correct in concluding that Detective Stallings acted in good faith reliance on the state search warrant and there were no Fourth Amendment violations with its execution.

The R&R [Doc. 199] is well-reasoned and highly detailed in addressing each argument raised by defendant in support of his request for suppression. Overall, defendant is simply disagreeing with virtually all of the magistrate judge's R&R, raising general and conclusory objections which are the very same arguments that he made previously. In doing so, defendant has failed to present any valid challenge to Judge Poplin's findings and conclusions as to the state search warrant. Moreover, the magistrate judge is entitled to deference regarding any credibility determinations she made in connection to these issues.

For all of these reasons, defendant's objections relating to the state search warrant are **OVERRULED**.

## 2. Defendant's Objections relating to Probable Cause, Particularity, Execution, and Good Faith as to the Federal Search Warrants

The magistrate judge found that the federal search warrants are supported by probable cause [Doc. 199, pp. 28-35] and that the federal search warrants are sufficiently particular [*Id.* at 64-67]. Judge Poplin determined that there were no errors with the execution of the federal search warrants [*Id.* at 70-74], and she further found that the second federal search warrant was signed and its delayed return did not warrant suppression of the evidence obtained in the search [*Id.* at 74-78]. Finally, Judge Poplin concluded that there

21

was reasonable reliance on the search warrants and no Fourth Amendment violations with their issuance or execution [*Id.* at 78-79]. In making these findings and conclusions, Judge Poplin carefully considered and addressed the positions of both parties, who briefed the issues at length. Defendant raises numerous objections relating to these issues.

### a.     Probable Cause

Defendant asserted three main arguments that the affidavits supporting the two federal search warrants lack probable cause. Judge Poplin considered defendant's first argument that the affidavits are based on information illegally obtained from the invalid state search warrant [Doc. 199, p. 28, citing Doc. 97], and as part of this analysis, she addressed the government's argument that the second federal search warrant is based on independent probable cause, specifically the position that the second federal search warrant was obtained independently from the evidence seized pursuant to the two prior search warrants [Doc. 199, p. 28, citing Doc. 24].

In resolving the parties' positions about the information gleaned from the state search warrant, Judge Poplin made the following findings with respect to the federal search warrants:

> [T]he Court finds that the evidence seized from the execution of the state search warrant need not be suppressed because the executing officer acted in good-faith reliance on the state search warrant. The Court also finds that the executing officers relied on both the first and second federal search warrants in good faith because both contain ample probable cause to believe evidence of solicitation of a minor would be found on Defendant's cellphone. Thus, the photographs obtained from the search of Defendant's SD card pursuant to the state search warrant could properly form the basis for the subsequent federal search warrants. *See Tucker*, 742 F. App'x at 1003.

***

22

The Court finds that this information [specifically a review of defendant's recorded jail telephone calls revealing information about V1, which led to information about V2] provides probable cause to search the data extracted from Defendant's cellphone and SD card. Thus, SA Norris's affidavit provides probable cause without relying on evidence seized pursuant to the two prior search warrants.

\*\*\*

[T]he Court finds that law enforcement would have continued to attempt to search Defendant's cellphone based upon their investigation of the Taveras complaint and Defendant's admissions in the May 2, 2018 interview, even if sexually explicit photographs had not been seized from Defendant's SD card.

\*\*\*

As to Defendant's argument that law enforcement never would have discovered V2 without the illegal search of his cellphone, the Court finds that the contact with V2 and her parents, who permitted the search of her phone, was sufficiently attenuated from the allegedly illegal search of his SD card pursuant to the state search warrant to permit the evidence of the identity of V2.

\*\*\*

Finally, the Court finds that … the "official misconduct" in Detective Taylor's affidavit (i.e., her failure to provide a nexus between the alleged illegal activity and Defendant's cellphone) was not flagrant. Instead, as the Court found above, the exclusionary rule should not apply to the evidence seized pursuant to the state search warrant because Detective Stallings reasonably relied on it. Moreover, law enforcement sought another search warrant, the first federal search warrant, in order to search Defendant's cellphone, which indicates [the] officers were trying to comport with the Fourth Amendment, rather than circumvent it.

Thus, the Court finds that even if law enforcement's identification of V2 stemmed from its review of Defendant's cellphone, rather than an independent source, the contact with V2 and consensual examination of her cellphone was sufficiently attenuated from the initial alleged illegality (the lack of nexus in Detective Taylor's affidavit) as to permit the use of this evidence in support of probable cause in the second federal search warrant.

In summary, the Court finds that the independent source and attenuation doctrines permit the search of Defendant's cellphone and SD card wholly apart from the

evidence gleaned from the initial search of the SD card pursuant to the state search warrant or the cellphone pursuant to the first federal search warrant.

[Doc. 199, pp. 28-35].

With respect to defendant's second argument that the federal search warrants fail to establish a nexus between his cellphone and the items to be seized [*see* Doc. 97], Judge Poplin determined that "both federal affidavits provide a nexus showing that evidence of child pornography would be found on Defendant's cellphone and SD card" [Doc. 199, p. 37]. In reaching this decision, Judge Poplin reviewed SA Pearson's affidavit to find specific and concrete connections between the place to be searched (the internal memory of defendant's cellphone) and the evidence to be seized (child pornography), as well as SA Norris's affidavit to find specific and concrete information from which it was reasonable to infer that evidence of child pornography would be found on defendant's cellphone and SD card [*Id.* at 36-37].

As to defendant's final argument that the federal affidavits lack probable cause because they rely on evidence of his prior conviction for child molestation which is both stale and irrelevant [*see* Doc. 97], the magistrate judge found that "both federal search warrants contain ample probable cause based upon recent evidence without relying on the reference to Defendant's prior conviction" and further that "the probable cause in both federal affidavits goes beyond his child molestation conviction and is not stale" [Doc. 199, p. 38]. Judge Poplin specifically disagreed with defendant's contention that his prior conviction for child molestation was irrelevant, stating that his "prior conviction does indicate his sexual interest in minors" [*Id.* at 38-39].

24

### b. Particularity

Defendant also raised arguments that the federal search warrants are not sufficiently particular. With respect to his argument that the first federal search warrant lacks sufficient particularity because it fails to incorporate the affidavit thereby rendering it facially defective and invalid [*see* Doc. 97], the magistrate judge found the first federal search warrant to be sufficiently particular because it "incorporates Attachment B, which describes with particularity the items to be seized" [Doc. 199, p. 65]. As to the argument by defendant that the second federal search warrant is insufficiently particular because it does not list the items to be seized [*see* Doc. 97], Judge Poplin found that "the second federal search warrant described the location to be searched with sufficient particularity" and further that "the second federal search warrant and Attachment A describe the items to be searched with sufficient particularity that the executing officer could locate them with reasonable effort" [Doc. 199, pp. 66-67]. Judge Poplin also acknowledged defendant's contention that digital searches should require a "heightened sensitivity to the particularity requirement" [*Id.* at 61, citing *United States v. Galpin*, 720 F.3d 436, 447 (2d Cir. 2013)].

Regarding his argument that the second federal search warrant does not state the alleged crimes and therefore is not sufficiently particular [*see* Doc. 97], Judge Poplin agreed that defendant was correct about the second federal search warrant not limiting the search of the Blu-ray disks to evidence of specific crimes; however, she found that the warrant incorporated Attachment B which "limited the executing officers' discretion by permitting a search for 'contraband, fruits, instrumentalities, and evidence of crimes'

25

described in the subsequent categories, which describe child pornography, transferring obscene materials to minors, and solicitation of minors for sex" [Doc. 199, p. 67].

### c.    Execution

Defendant made two arguments regarding the execution of the federal search warrants, and he also alleged irregularities in the second federal search warrant. With respect to his argument that the FBI violated his rights by accessing the data on his cellphone and SD card multiple times after obtaining the first federal search warrant [*see* Doc. 97], the magistrate judge concluded that "even if SA McFall performed two searches of Defendant's cellphone pursuant to the first federal search warrant, the Court finds this repeated access did not violate the Fourth Amendment" because the scope of the first search warrant was not exceeded [Doc. 199, p. 71].

Regarding his second argument that law enforcement "unduly delayed" seeking the second federal search warrant eighteen months after the first federal search warrant [*see* Docs. 20, 97], Judge Poplin found "the period of time between the execution of the state search warrant and the execution of the second federal search warrant was not unreasonable" [Doc. 199, p. 74]. In this regard, she reasoned: "While the record before the Court does not provide the reason for the delay in seeking the second federal search warrant, the Court observes that between the execution of the state search warrant in May 2018 and the access to the internal memory of Defendant's cellphone following the first federal search warrant issued in June 2018 and then the execution of the second federal search warrant [o]n November 19, 2019, law enforcement was identifying and interviewing

Case 3:19-cr-00218-TAV-DCP    Document 265    Filed 07/05/23    Page 26 of 40    PageID #: 5103

the minor victims to include a minor female in Bulgaria [*See* 98-22, Letter to Bulgarian General Directorate for Combating Organized Crime (dated September 13, 2018)]" [Doc. 199, pp. 73-74].

### d.     Irregularities

Finally, considering defendant's arguments that the second federal search warrant was never issued by a judge based upon irregularities in format, disclosure in discovery, and docketing, and based on fraud [*see* Docs. 97, 99, 113], the magistrate judge determined the following: "[T]he Court finds that the undersigned [Judge Poplin] issued the second federal search warrant on November 19, 2019, and signed it on the second page above the return.  The original search warrant is docketed as document number three in case number 3:19-MJ-1117.   The second federal search warrant was returned by SA Norris on September 13, 2021.  The Defendant has received a complete copy of the second federal search warrant and related supporting documents.  Finally, the Court finds that the delay in returning the second federal search warrant is not a basis to suppress the evidence seized pursuant to that warrant." [Doc. 199, p. 78].

### e.     Good Faith

As set forth earlier with respect to the state search warrant, defendant argued that barebones affidavits, once material misrepresentations are omitted, negate good faith, and further that the good faith exception cannot apply when the executing officers failed to act within the scope and terms of the search warrants leading to suppression of the evidence from the SD card [*see* Docs. 97, 100].   The magistrate judge addressed defendant's

27

arguments about the application of the good faith doctrine with respect to the state and federal search warrants, as follows:

> The Supreme Court recognized that "the abuses that gave rise to the exclusionary rule featured intentional conduct that was patently unconstitutional," such as breaking into an individual's house without a search warrant or even any basis on which to obtain one, seizing all the papers in an office "without a shadow of authority," or a search accomplished by handcuffing the homeowner and waiving a "false warrant." *Herring*, 555 U.S. at 702 (citations omitted). As discussed in relation to probable cause above, the Court finds that Detective Stallings acted in good-faith reliance on the state search warrant and finds no Fourth Amendment violations with its execution. The Court does not find any Fourth Amendment violations with respect to the issuance or execution of the first and second federal search warrants. The Court finds that, to the extent that the District Judge disagrees with any of the conclusions in this case, the evidence seized from the three search warrants should not be suppressed because law enforcement acted in reasonable reliance on the search warrants issued. The Court finds that the affidavits in support of the federal search warrants are lengthy and that probable cause to search Defendant's cellphone and SD card is ready apparent from the sexually explicit images seized from his SD card pursuant to the state search warrant and from the information from V1 and V2. Accordingly, the Court finds that exclusion of evidence in this case would not serve the deterrent purposes of the exclusionary rule and would come at [a] high price for our system of justice. *See id.*

[Doc. 199, p. 79].

### f.      Specific Objections

Moving to defendant's objections, defendant contends that the magistrate judge made erroneous findings on probable cause, particularity, execution with respect to the federal search warrants, and irregularities with respect to the second federal search warrant. Specifically, defendant raises objections that probable cause is lacking in the federal search warrants and accompanying affidavits [Doc. 227, Obj. #8, Obj. #10]. In addition, he objects that the federal search warrants are based on tainted evidence obtained from the illegal state search warrant which produced evidence from his cellphone and SD card, then

28

copied onto the Blu-ray disks [*Id.* at Obj. #2, Obj. #9, Obj. #20].  Further, defendant objects that SA Pearson "cannot have been said to have acted in good faith due to police misconduct" and therefore the *Leon* good faith exception does not apply to save the search warrants from the Fourth Amendment violations [*Id.* at Obj. #4, *see also* Obj. #3, Obj. #8].

Defendant also contends that the magistrate judge's reliance on the Independent Source Doctrine and the Attenuation Doctrine to support a finding of probable cause in the federal search warrants is unfounded because the government "failed to argue nor even mention either doctrine" [*Id.* at Obj. #1, Obj. #10, Obj. #11, Obj. #13, Obj. #14].  He objects that the two doctrines do not apply, specifically arguing that Judge Poplin's "findings and arguments are based on irrelevant inquiries, using parameters that do not apply, to the Attenuation Doctrine" [*Id.* at Obj. #13].  In addition, defendant objects that "State police may not illegally obtain evidence such as Def's cellphone and micro SD card and then give it to Federal Agents to use as evidence in a Federal Case.  See ("Silver Platter Doctrine") *Elkins v. United States*, 364 U.S. 206 (1960)" [Doc. 227, Obj. #19].

Defendant's objections also maintain that the federal search warrants are not sufficiently particular and that they are facially deficient and defective [*Id.* at Obj. #8, Obj. #17].  On the issue of execution, he asserts that the second federal search warrant is a "product of fraud and forgery" with respect to Judge Poplin's signature [*Id.* at Obj. #22].  He specifically "incorporates his lengthy discertation [sic]" of "54 pages of solid-proof reasoning (see Doc. 160, 160-1, 160-2, and 160-3[)] for a detailed and complete report on the fraudulent activities of the U.S. Attorney's Office, the Clerk of this Court, the FBI, and

29

*other party* herein," with a note that he "has been arguing this since early in the case" [*Id.* at Obj. #22].

Defendant also complains about the FBI's timing of extractions of data from his cellphone and SD card [*Id.* at Obj. #12]. With respect to the timing of the second federal search warrant, defendant objects that delaying "nearly nine months to extract data (Feb. 14, 2019) is an unreasonable delay outside the scope of the [first federal search warrant] (June 6, 2018) that is allowed pursuant to Fed. R. Crim. P. Rule 41(e)(2)(B)" [*Id.* at Obj. #18]. Finally, he objects to Judge Poplin's finding that "the executing officers relied on both the first and second federal search warrants in good faith because both contain ample probable cause to believe evidence of solicitation of a minor would be found on Defendant's cellphone," labeling this as "very perplexing … because neither the first nor the second federal warrants even mentioned solicitation of a minor, and certainly neither listed that as a suspected crime" [*Id.* at Obj. #6, citing Doc. 199, p. 30].

### g.    Previous Arguments

Defendant's post-hearing briefs [Docs. 97, 100], which as noted he incorporates in his objections [*see* Doc. 227, pp. 2, 24], are overflowing with the very same arguments that the federal search warrants are not based on a nexus or probable cause, cannot be saved by the good faith doctrine, are not sufficiently particular, and were fraudulently executed. In particular, defendant argued previously that the "June 6, 2018 federal search warrant … [is] completely bereft of probable cause, a 'bare bones' warrant, a facially defective warrant, and an invalid warrant" [Doc. 97, p. 12]. He also complained before

30

that the federal search warrants failed to incorporate the affidavits [*Id.* at 11-12]; that "the information being used to support probable cause [in all three warrants] was not obtained prior to the illegalities by police, and, as a matter of fact, content in the affidavits, both photos and statements, were illegally obtained in prior illegalities such as illegal seizures and involuntary statements from custodial interrogation" [*Id.* at 12-13]; and that under *Riley v. California*, 573 U.S. 373 (2014), there is a "heightened need for particularity with smartphones" [*Id.* at 22]. In addition, building on his argument that the state and federal search warrants were "bare bones" and lacked probable cause, he complained at length that police misconduct caused the illegal seizure of evidence, and therefore the good faith exception cannot not apply [*Id.* at 8-11, 26; Doc. 100, p. 3].

Previously, defendant maintained that the two FBI extractions were unreasonably delayed [*Id.* at 27]. In addition, he argued the following beforehand: "The FBI's two extraction reports, dated June 25, 2018 and February 14, 2019 were both overbroad because they searched and seized the entire contents of Def's LG cellphone that the [June 6, 2018] warrant … did not authorize, that there was no probable cause to search and seize information about the Def's entire life, and that nowhere in the combined output of the four corners of Pearson's … application for a search warrant, and affidavit existed any nexus, not even a remote nexus, between any crime, listed or not, to Def's LG cellphone. Nowhere in this entire instant case contains even a remote wisp of evidence creating a nexus to Def's LG cellphone, nor to his micro SD card, nor to his Google drive accounts contents …." *Id.* at 22].

Further, as it relates to the federal search warrants, defendant argued previously that his prior conviction for child molestation is stale and "does not equate with a propensity to collect or commit crimes involving child pornography" [*Id.* at 15]. With respect to the 60 recorded jail phone calls, defendant complained before that "[t]here would have been no 60 jail phone calls had there been no illegal arrests (2)" and "[t]here would have been no need to try to establish an independent source for the information had it not become apparent to FBI that all previous searches and seizures were illegal" [*Id.* a 24]. Finally, he previously made the argument in multiple documents that the second federal search warrant was not properly signed and contained irregularities in format, complaining that this is evidence of a "continued effort to defraud" him [*Id.* at 25; *see also* Docs. 99, 113].

## h.    Ruling on Objections

Throughout the well-reasoned R&R, the magistrate judge addressed each and every argument raised by defendant in correctly concluding that the federal search warrants are supported by probable cause and are sufficiently particular, and further that there were no errors with the execution of the federal search warrants, specifically finding that the second federal search warrant was signed and its delayed return did not warrant suppression and ultimately finding no Fourth Amendment violations warranting suppression.

The magistrate judge carefully combed through the four corners of the affidavits supporting the federal search warrants, as she was bound to do under *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir.), *cert. denied*, 560 U.S. 959 (2010); *see also Whiteley v. Warden*, 401 U.S. 560, 565 n.8 (1971). In doing so, Judge Poplin painstakingly

32

responded to each challenge asserted by defendant, which he repeats in his objections. For example, Judge Poplin considered defendant's argument that the affidavits are based on information illegally obtained from the invalid state search warrant, and she correctly found specific and concrete connections between the place to be searched (the internal memory of defendant's cellphone) and the evidence to be seized (child pornography) in SA Person's affidavit, as well as specific and concrete information from which it was reasonable to infer that evidence of child pornography would be found on defendant's cellphone and SD card in SA Norris's affidavit. In this regard, defendant has failed to raise a valid challenge in his objections, which are merely duplicative of his previous arguments.

As to defendant's objection that the magistrate judge made a "very perplexing [finding that there was ample probable cause to believe evidence of solicitation of a minor would be found on defendant's cellphone] because neither the first nor the second federal warrants even mentioned solicitation of a minor, and certainly neither listed that as a suspected crime" [Doc. 227, Obj. #6, citing Doc. 199, p. 30], the Court notes the second federal search warrant incorporated Attachment B which "limited the executing officers' discretion by permitting a search for 'contraband, fruits, instrumentalities, and evidence of crimes' described in the subsequent categories, which describe child pornography, transferring obscene materials to minors, and solicitation of minors for sex," as correctly found by Judge Poplin [*see* Doc. 199, p. 67]. In his objections, defendant has not presented any valid basis for sustaining his objections in this regard, as he overlooked the inclusion of information relating to solicitation of a minor within Attachment B incorporated into the

33

second federal search warrant. Moreover, addressing all of defendant's arguments, Judge Poplin correctly concluded that "the supporting affidavits provide probable cause for the issuance of the two federal search warrants and … although the state search warrant is lacking in a sufficient nexus, the executing officers acted in good faith" and further that federal search warrants are sufficiently particular [*Id.* at 2].

With respect to defendant's objection that the magistrate judge erroneously relied on the Independent Source Doctrine and Attenuation Doctrine while analyzing the probable cause issue, claiming the government failed to even raise either doctrine, the Court first points out that defendant himself raised the independent source doctrine in his post-hearing briefing [*see* Doc. 97, pp. 18, 24]. Second, the government did in fact raise the issue that the second federal search warrant was obtained independently from the evidence seized pursuant to the two prior search warrants [*see* Doc. 24, pp. 9-10]. And in any event, neither the magistrate judge nor this Court is hindered from relying on well-established doctrines or applicable case law. *See generally United States v. Powell*, 943 F. Supp. 2d 759, 787 (E.D. Mich. May 3, 2013) ("[t]hree exceptions to the exclusionary rule permit the admission of evidence, even when a Fourth Amendment violation has occurred: the independent-source, inevitable-discovery, and attenuation doctrines"); *Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("[d]istrict judges have no obligation to act as counsel or paralegal to *pro se* litigants"). Judge Poplin correctly analyzed the applicable law and found that "the independent source and attenuation doctrines permit the search of Defendant's cellphone and SD card wholly apart from the evidence gleaned from the initial

34

search of the SD card pursuant to the state search warrant or the cellphone pursuant to the first federal search warrant" [Doc. 199, p. 35]. Again, defendant has simply not proffered any adequate basis for the Court to sustain his objections in this regard, as they involve matters previously argued before the magistrate judge, who is not constrained from relying on established legal principles to analyze the matter.

Based upon a careful review of defendant's voluminous filings, it appears that he does raise the "Silver Platter Doctrine" for the first time, contending in an objection that "State police may not illegally obtain evidence such as Def's cellphone and micro SD card and then give it to Federal Agents to use as evidence in a Federal Case. See ("Silver Platter Doctrine") *Elkins v. United States*, 364 U.S. 206 (1960)" [*see* Doc. 227, Obj. #19]. In *United States v. Jackson*, No. 1:10-CR-94, 2010 WL 4320475 (E.D. Tenn. Aug. 25, 2010), the magistrate judge addressed the defendant's reliance upon *Elkins* and the "silver platter doctrine," as follows:

> When asked during the hearing to explain his reliance on *Elkins*, Defendant, th[r]ough counsel, said he relied on *Elkins* with respect to the "silver platter" doctrine. "The 'silver platter doctrine' was developed … when the Fourth Amendment did not apply to the states … and evidence seized pursuant to a legal search conducted by state officers, although illegal under the Fourth Amendment, could be handed over 'on a silver platter' for use in a federal criminal prosecution." *United States v. Meredith*, 107 F.3d 872, 1997 WL 73265, *8 (6th Cir. 1997) (citing *United States v. Searp*, 586 F.2d 1117, 1120 (6th Cir. 1978) and *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914)). The Supreme Court rejected the silver platter doctrine in *Elkins* and established that evidence obtained by state officers during a search which, if conducted by federal officers, would have violated the Fourth Amendment is inadmissible over the defendant's timely objection in a federal criminal trial. 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669. *See Meredith*, 1997 WL 73265, *8 (6th Cir. 1997). Merely citing *Elkins*, however, does little to support Defendant's argument because Defendant has failed to show how the search and seizure at issue violated the Fourth Amendment.

35

*Id.* at *4 (footnote omitted). Similarly, in the instant case, defendant's invocation of *Elkins* and the "silver platter doctrine" remains unclear. Moreover, this theory does not change the determination that suppression of the federal search warrants is unwarranted based upon the Court's *de novo* review of the matters at hand.

Further, the Court finds no error in the magistrate judge's finding about the timing of the FBI's extractions of data from his cellphone and SD card. With respect to the second federal search warrant, defendant objects that delaying "nearly nine months to extract data (Feb. 14, 2019) is an unreasonable delay outside the scope of the [first federal search warrant] (June 6, 2018) that is allowed pursuant to Fed. R. Crim. P. Rule 41(e)(2)(B)" [*Id.* at Obj. #18]. The magistrate judge addressed this argument and found that Fed. R. Crim. P. Rule 41(e)(2)(B) allows law enforcement to perform "a later review of the media or information consistent with the warrant" for electronically stored information [Doc. 199, p. 72], citing to the district court's explanation of multiple extractions of data from a cellphone and SD card in *United States v. Whipple*, No. 3:20-CR-31, 2022 WL 3684593, at *5 (E.D. Tenn. Aug. 25, 2022). On this point, defendant specifically contends that "his enemy/adversary – the Govt – argues zilch [and] [i]t is incumbent on the Govt – not the Honorable Court – to present a sufficient argument that there was not unreasonable delay" [Doc. 227, Obj. #18]. Again, the magistrate judge and this Court are not prevented from addressing the pending matters based upon a review of the evidence alongside the applicable law, and Judge Poplin did not err in this regard.

36

Finally, defendant's objections about second federal search warrant being a "fraud" and "forgery" have been made by him at nearly every turn. Defendant himself acknowledges that he has been raising these same issues "since early in the case" [*see* Doc. 227, Obj. #22]. In fact, he incorporates one of his many lengthy dissertations on the matter [*see Id.*, incorporating Doc. 160[5] with attachments]. Judge Poplin did not err in finding that the second federal search warrant was signed and its delayed return did not warrant suppression of the evidence obtained in the search, and defendant's objections about the second federal search warrant being rooted in "fraud" are duplications or iterations of the same arguments he made previously on numerous occasions.

Overall, defendant's previous arguments, which were debated by the parties in their extensive briefing, underpin each of his objections to the magistrate judge's R&R. Again, the R&R [Doc. 199] is thoughtful and incredibly thorough in addressing each argument raised by defendant in support of his request for suppression. Defendant's objections, which are general and conclusory to virtually the entirety of the R&R, simply do not substantiate any valid challenge to the magistrate judge's findings as to the federal search warrants.

For all of these reasons, defendant's objections relating to federal search warrants are **OVERRULED**.

---

[5] Doc. 160 involves defendant's "Motion for Leave of the Court to File Untimely Motion for an Order Declaring Search Warrant Application 3:19-MJ-1117 Was Not Approved by United States Magistrate Judge Poplin." After the magistrate judge denied this motion for leave [*see* Doc. 212], defendant filed an appeal of her ruling [Doc. 224], which is pending before this Court.

37

### 3. Defendant's objection relating to *Franks* challenge

A *Franks* hearing is the procedural mechanism that district courts employ to address challenges to the validity of a search warrant on the grounds that the warrant was based on an affidavit that contained false statements. *See United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008). The Court may grant a *Franks* hearing if a defendant "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and [] the allegedly false statement is necessary to the finding of probable cause." *Id.* (quoting *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)).

As noted above, defendant contends that, because of the imposed page limitation, "he will not be able to lodge his objections to the Franks Hearing request denial (pp. 39-61 of R&R) at all" [Doc. 227, p. 1]. He takes this position despite using his limited space to attempt to revive objections already ruled upon in the Court's Memorandum Opinion and Order [Doc. 244], such as the voluntariness of his statements, the location of the SD card within his cellphone, and the TSOR constitutional challenge. Based upon a careful review of defendant's objections, his only objection involving the *Franks* section of the magistrate judge's R&R out of his 23 objections is found in objection number 23.

In this objection, defendant states: "'The JCSO Preliminary Investigative Report that Defendant provided as an exhibit [Doc. 98-19] does not contain Corum's identifying information.' (R&R, p. 45, f.n. 19). That is not true. Def. provided one with identifying information. Someone at the Federal Judicial or Executive level redacted it wrongly. She

38

is not a minor. But that's okay because Def. has many more original copies (see attached for another one)." [Doc. 227, Obj. #23]. A comparison of the two JSCO preliminary investigative reports, Doc. 98-19 and Doc. 227-1 (Exhibit 1 to defendant's objections), simply reveals that Doc. 98-19 (Page ID#2225) redacts the identifying information of Jaycee Corum, while Doc. 227-1 (Page ID#4842) is unredacted. Regardless, the notes contained in Doc. 98-19 indicate that Detective Taylor called Corum and further that defendant gave Corum's contact information to the JCSO detectives during the May 2, 2018 interview, as noted by the magistrate judge in the R&R [*see* Doc. 199, pp. 45-46 n. 19]. Accordingly, defendant's objection has no merit. Given that defendant makes no other arguments on the *Franks* issue, he has waived review of any such issues by this Court. Fed. R. Crim. P. 52(b)(2) (failure to file objections within the time specified waives the right to review by the district court).

For these reasons, defendant's objection relating to the *Franks* issue is **OVERRULED** and any objections to the *Franks* issue not raised are **WAIVED**.

## IV. Conclusion

In sum, after reviewing the record in this case, including the R&R, the objections, the underlying briefs, and the relevant law, the Court will **OVERRULE** defendant's objections [Doc. 227], **ACCEPT IN WHOLE** the R&R [Doc. 199], and **DENY** defendant's Motion to Suppress All Evidence Obtained by a May 3, 2018 Jefferson County Search Warrant, a June 6, 2018 Federal Search Warrant, and a November 2019 Federal

39

Search Warrant [Doc. 20], Motion for a "Franks" Hearing [Doc. 34], and pro se motion relating to irregularities with the November 2019 search warrant [Doc. 99, pp. 4-6].

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE