UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

UNITED STATES OF AMERICA,       )
                                )
           Plaintiff,           )
                                )
v.                              )        No.:   3:19-CR-218-TAV-DCP-1
                                )
GLENN FRED GLATZ,               )
                                )
           Defendant.           )

## MEMORANDUM OPINION AND ORDER

This criminal case is before the Court on defendant's pro se Motion for New Trial [Doc. 298], which the government opposes [Doc. 299]. After considering the record and controlling law, and for the reasons that follow, the Court will **DENY** defendant's motion [Doc. 298].

## I.      Background

On December 17, 2019, defendant was charged in a nine-count indictment with various child pornography-related offenses occurring between December 2015 and May 2, 2018, within the Eastern District of Tennessee [Doc. 1]. Specifically, he was indicted on four counts of inducing a minor to engage in sexually explicit conduct to produce child pornography, in violation of 18 U.S.C. § 2251(a) and (e) (Counts One, Four, Six, and Eight), one count of receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(A) (Count Two), three counts of transferring obscene materials to a minor, in violation of 18 U.S.C. § 1470 (Counts Three, Five, and Seven), and one count of

possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) (Count Nine) [*Id.*].

These charges stem from data extracted from defendant's cellphone and SD card, which were seized by the Jefferson County Sheriff's Office ("JCSO") on May 2, 2018 [*see* Doc. 175, p. 3; Doc. 244, p. 2]. Defendant was initially appointed a federal public defender, Jonathan Moffatt, to represent him [Doc. 8]. On April 19, 2021, defendant moved to represent himself [Doc. 41]. Following a *Faretta*[1] hearing, United States Magistrate Judge Debra C. Poplin found that defendant knowingly and voluntarily waived his right to counsel, permitted him to represent himself, and appointed Attorney Moffatt to serve as elbow counsel [Doc. 48].

The case proceeded to trial on July 25, 2023 [Doc. 289]. At the close of the government's case-in-chief, defendant made an oral motion for a judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure, arguing that the government had failed to prove venue as to Count One and had failed to prove the elements of the offenses in Counts One through Nine [Sealed Doc. 329, p. 45]. Defendant also raised an argument about the sufficiency of the indictment [*Id.* at 48]. After hearing the parties' arguments and viewing the evidence in the light most favorable to the government, the Court denied defendant's Rule 29 motion and specifically incorporated its earlier memorandum opinion and order denying his appeal of the denial of his motion to dismiss the indictment due to lack of specificity [*Id.* at 45−51 (referring to Doc. 278)].

---

[1] *Faretta v. California*, 422 U.S. 806 (1975).

At the close of defendant's proof, defendant made his oral motion for a judgment of acquittal under Rule 29, reiterating his "continuing, running objection on the unspecific indictment," adding an argument about "a break in the chain of custody from Jefferson County" as to the seizure of his cellphone, and renewing his arguments about the government failing to prove venue and the elements of each charge [Sealed Doc. 330, pp. 80−83]. The Court heard the parties' positions and denied defendant's Rule 29 motion [*Id.* at 151−52]. In reaching this decision, the Court incorporated its previous rulings at the close of the government's case-in-chief and from its memorandum opinion and order denying defendant's motion to dismiss the indictment for lack of specificity [*Id.* at 151 (referring to Doc. 278)]. The Court also found that defendant's argument about a break in the chain of custody relating to his seized cellphone and the contents therein went to the weight to be given to the evidence, not its admissibility [*Id.* at 152]. Finally, viewing the evidence in the light most favorable to the government, the Court concluded that the government established venue as to Count One and presented sufficient proof to establish the elements of the offenses set forth in Counts One through Nine [*Id.*].

On July 28, 2023, after a four-day trial, the jury deliberated for approximately one-and-a-half hours before unanimously returning a verdict of guilty on all counts [*Id.* at 154−59; Doc. 294]. Defendant now files his Motion for New Trial [Doc. 298]. The government has filed a response in opposition [Doc. 299]. While no substantive response was provided, the government asserted that defendant's motion "is simply a

3

restatement/incorporation of prior arguments raised both before and during trial" and "[t]here are no new legal issues that require any additional analysis" [*Id.* at 1].

## II. Legal Standards

A motion for judgment of acquittal pursuant to Rule 29 challenges the sufficiency of the evidence to support the conviction. *See* Fed. R. Crim. P. 29(c); *United States v. Montgomery*, 358 F. App'x 622, 628 (6th Cir. 2009). When reviewing such a motion, the Court must decide "whether, after viewing the evidence in a light most favorable to the government, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Gardner*, 488 F.3d 700, 710 (6th Cir. 2007) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In conducting this analysis, the Court must not weigh evidence, assess witness credibility, or "substitute its judgment for that of the jury." *United States v. Chavis*, 296 F.3d 450, 455 (6th Cir. 2002). In other words, "[a]ll credibility determinations are drawn in favor of the prosecution." *United States v. DeJohn*, 368 F.3d 533, 543 (6th Cir. 2004) (citing *United States v. Avery*, 128 F.3d 966, 971 (6th Cir. 1997)). A defendant seeking acquittal based on evidence insufficiency bears a "very heavy burden." *Chavis*, 296 F.3d at 455 (quoting *United States v. Tocco*, 200 F.3d 401, 424 (6th Cir. 2000)).

Alternatively, the Court "may vacate any judgment and grant a new trial" under Rule 33 "if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Rule 33's 'interest of justice' standard allows the grant of a new trial where substantial legal error has occurred." *United States v. Munoz*, 605 F.3d 359, 373 (6th Cir. 2010). A Rule 33(a) motion

4

"may be premised upon the argument that the jury's verdict was against the manifest weight of the evidence." *United States v. Hughes*, 505 F.3d 578, 593 (6th Cir. 2007). But such motions should be granted only "in the extraordinary circumstances where the evidence preponderates heavily against the verdict," *id.* (quoting *United States v. Turner*, 490 F. Supp. 583, 593 (E.D. Mich. 1979)), or, in other words, "when the verdict exceeds the bounds of reasonableness." *United States v. Burks*, 974 F.3d 622, 625 (6th Cir. 2020). As the Sixth Circuit explained: "On the one hand, [the court] must scrutinize the record and ensure that a 'miscarriage of justice' did not occur. On the other hand, the court must respect the role of the jury and ensure that evidence-supported convictions are upheld." *Id.* (quoting *United States v. Lutz*, 154 F.3d 581, 589 (6th Cir. 1998)).

In contrast to a Rule 29 motion, a district judge considering a Rule 33 motion "can act in the role of a 'thirteenth juror' and consider the credibility of the witnesses and the weight of the evidence." *Lutz*, 154 F.3d at 589. However, the court "may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable." *Burks*, 974 F.3d at 625 (quoting *Butcher v. United States*, 368 F.3d 1290, 1297 (11th Cir. 2004)). "The decision whether to grant a new trial is left to the sound discretion of the district court . . . ." *United States v. Wheaton*, 517 F.3d 350, 361 (6th Cir. 2008) (quoting *United States v. Pierce*, 62 F.3d 818, 823 (6th Cir. 1995)). The defendant bears the burden of proving that a new trial should be granted under Rule 33. *United States v. Davis*, 15 F.3d 526, 531 (6th Cir. 1994) (citing *United States v. Seago*, 930 F.2d 482, 488 (6th Cir. 1991)).

5

## III.    Defendant's Motion for New Trial

As a preliminary matter, the Court is bound to construe defendant's Motion for New Trial liberally given that he is proceeding pro se.  *United States v. Green*, Nos. 4:12-CR-00370, 4:13-CV-890, 2013 WL 1858185, at *2 (N.D. Ohio May 2, 2013) (citing *Dell, Inc. v. Elles*, No. 07-2082, 2008 WL 4613978, at *4 (6th Cir. June 10, 2008)). Defendant files his new trial motion without citing any Federal Rule of Criminal Procedure in support of his request.  He begins his motion by stating that he "has no access to any law library and lodges his objection to his First Amendment right to access the courts and to do the research necessary to aid in his defense in support of the instant motion for new trial" [Doc. 298, p. 1].  He asserts that when he returned to the jail following the jury's verdict on July 28, 2023, he was moved from pod 4A to pod 6A [*Id.*].  He explains that he "had a tablet checked out to him in 4A but upon transfer to another pod, inmates are not permitted to carry the tablet with them outside the pod" and therefore he "must rely on narrative rather than legal authority to prepare the instant motion" [*Id.*].

To the extent defendant needed to research the standard for the relief sought in his post-trial motion, the Court will apply the liberal construction ascribed to his pro se filing. As a result, defendant has not been harmed by any inability to research the standards under Rule 29 and Rule 33 because the Court will liberally construe his motion under both standards.[2]  With respect to his general claim that he could not conduct legal research to

---

[2]  As the Court denied his motions for judgment of acquittal under Rule 29(a) at the trial, the instant motion is a renewed motion for judgment of acquittal pursuant to Rule 29(c).  *See* Fed. R. Crim. P. 29(a), (c).

support his motion, the Court notes that he only complains that he could not take the same tablet he had in the old pod with him to the new pod but does not otherwise address how that prevented him entirely from accessing legal resources. For instance, he does not say that he could not check out another tablet in his new pod during the 14-day period after the entry of the jury's verdict on July 28, 2023 [*see* Doc. 294]. Defendant filed his new trial motion on August 4, 2023 [*see* Doc. 298], yet he had up to August 11, 2023, to submit the filing. *See* Fed. R. Crim. P. 29(c) ("[a] defendant may move for a judgment of acquittal, or renew such a motion, within 14 days after a guilty verdict . . ."); Fed. R. Crim. P. 33(b)(2) ("[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty"). To the extent he was unable to conduct legal research between July 28 and August 4, 2023, the Court does not find any merit to his objection when he had an additional seven-day period to attempt to obtain a tablet in his new pod. And defendant did not file a motion to extend the time for filing his new trial motion.

The Court observes that defendant also had the resources of his elbow counsel to aid him if requested. As further detailed below, the record reveals that defendant has previously briefed at length many of the arguments he repeats now. To the extent he is arguing about the proof elicited at trial, he could rely on his memory or notes, just as any attorney would do without having a trial transcript at that stage. Therefore, the Court finds that defendant has not suffered any prejudice from his lack of legal resources during the brief period before he elected to file his post-trial motion.

## IV. Analysis

Defendant asserts that a new trial is warranted on several grounds [Doc. 298, pp. 1−9]. Although the motion is oftentimes rambling and repetitive, the Court has attempted to group together defendant's various claims into pretrial matters and trial matters. The Court will endeavor to address each specific ground in turn. Construing his motion liberally, the Court concludes that defendant cannot succeed in his quest for a judgment of acquittal under Rule 29 or for a new trial under Rule 33 and therefore will deny his post-trial motion.

### A. Pretrial Matters

### i. Seizure of Cellphone and SD card

Defendant argues that his cellphone and SD card were illegally seized in violation of his Fourth and Fifth Amendment rights [Doc. 298, p. 7]. He also states that his involuntary statements, which were "erroneously concluded [to be] voluntary statements," were "unconstitutionally used to support the seizure" [*Id.*]. Further, he asserts that "no valid warrant supported the search or seizure of [his] cellphone/SD card" [*Id.*].

With regard to the warrantless seizure of defendant's cellphone and SD card, the Court issued a Memorandum Opinion and Order [Doc. 244] overruling defendant's objections [Doc. 202] to the magistrate judge's Report and Recommendation ("R&R") [Doc. 175]. The Court accepted in whole the R&R's determination that defendant's motion to suppress all evidence resulting from the warrantless seizure of his LG cellphone and SD card [Doc. 19] should be granted in part in that his May 2, 2018, statements to the JCSO's

8

detectives cannot be used in the government's case-in-chief at trial and denied in all other respects [*see* Doc. 244]. As to the validity of the search warrants in this case, the Court entered a Memorandum Opinion and Order [Doc. 265], in which it overruled defendant's objections [Doc. 227] to the magistrate judge's second R&R [Doc. 199]. The Court accepted in whole the R&R's determination that defendant's motions to suppress and for a *Franks*[3] hearing [Docs. 20, 34, and 99, pp. 4–6] should be denied [*see* Doc. 265].

Moreover, the issue of suppression of evidence must be settled before trial and may not be reargued at trial. *See* Fed. R. Crim. P. 12(b)(3)(C); Fed. R. Crim. P. 41(h); *see also United States v. Musick*, 291 F. App'x 706, 723 (6th Cir. 2008) ("[t]he defendant is required to make any suppression motions before trial"). And, citing Rule 12(b)(3)(C) and Rule 41(h), the Court granted the government's motion in limine [Doc. 253], which requested that defendant be prevented from litigating any suppression issue at trial [Sealed Doc. 351, pp. 49−51].

Considering his arguments about the warrantless seizure of his cellphone and SD card and the validity of the search warrants, the Court will not revisit these pretrial issues, as they have already been resolved. Nothing that occurred at trial warrants reversal of the Court's position at the pretrial stage on these matters. Because the Court has already given consideration to these issues, it is not necessary to revisit these pretrial rulings which stand on the record. *See United States v. Booker*, No. 3:10-CR-44, 2011 WL 2200028, at *2 (E.D. Tenn. June 7, 2011) (denying the defendant's arguments for new trial pertaining to

---

[3] *Franks v. Delaware*, 438 U.S. 154 (1978).

alleged errors in the court's rulings on pretrial motions, including motions to suppress, explaining that it would not revisit rulings made prior to trial as they stand on the record). Moreover, defendant's argument about these pretrial issues does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" normally required to grant a motion for new trial under Rule 33. *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

### ii. Specificity of Indictment

Next, defendant contends that his "Fifth and Sixth Amendment rights to obtain a specific indictment and his right to have the indictment quashed with prejudice" were denied [Doc. 298, p. 2]. He states that the "Fifth Amendment presentment clause guarantees [him] the right to a specific federal indictment," including the nature and cause of the charges [*Id.* (emphasis omitted)]. In addition, defendant asserts:

> This failure by the government and failure by the grand jury to present a specific indictment is the exact scenario in which one is not able to plead a prior acquittal or conviction to defend himself in any future accusations against double jeopardy, a violation of the double jeopardy clause of the Fifth Amendment. This failure also violates the due process clause of the Fifth Amendment. Defendant's Sixth Amendment right to be notified of the accusations against him was violated for those same non-specific indictment issues.

[*Id.* at 3 (emphasis omitted)]. Defendant contends that the Court erroneously permitted, against his objections, the government to introduce evidence of images when "there was no specification as to which images were being used to substantiate any of the nine counts" [*Id.* at 2]. Therefore, he maintains that he was "unconstitutionally denied his right to

10

prepare his defense for any one, and for all nine counts" and "unable to proffer a specific defense" [*Id.* at 3].

As an example, relating to the production charges under 18 U.S.C. § 2251(a), defendant states that he presented evidence to the jury that most if not all of the images sent to him by the victim, F.R., "occurred totally unsolicited and unprompted by [him], unilaterally" but he was "unable to proffer a specific defense" because he did not know which images were being used to substantiate any one of the nine counts [*Id.* (emphasis omitted)]. Regarding the evidence contained in the WhatsApp conversations between him and F.R., defendant states that the government provided him with an image-redacted copy of pages 11 through 3800 only one week before trial and with an image-redacted copy of pages 3801 through 7091 only two days before trial [*Id.*]. When he first went to view the evidence, he contends that he "barely had enough time to study pages 11−3800 to isolate sections where images went sent by F.R. to defendant unsolicited by him" [*Id.* at 4]. Further, he advises that he "alerted elbow counsel to cancel a second viewing of the evidence from pages 3801−7091 because he was not anywhere even remotely close to preparing to defend himself as a pro se [d]efendant" [*Id.* at 5].

Finally, defendant contends that "[t]his also, unconstitutionally, gave the government what amounts to a 'blank check' to change their theory of criminality and to alter their prosecution to match how the testimony at trial unfolded" with the prosecution telling the jury they were "free to pick and choose as to which images they wish to apply to any one count" [*Id.*]. In the end, he maintains that the jury, if asked, would not be able

11

to identify "what evidence they considered to substantiate any one specific count" [*Id.*]. As an example, regarding the three obscenity charges under 18 U.S.C. § 1470, defendant states that no one "knows what evidence was offered to support them because the government never said so" [*Id.* at 6]. He explains that he asked his elbow counsel, and "Moffatt said he thinks videos of defendant masturbating were being used to substantiate those three counts, and yet, only two videos depicting that activity were introduced into evidence" [*Id.*]. He contends that "[i]n effect, what transpired, was nude images of F.R. were shown, other evidence of conduct were [sic] introduced, and the jury had no ability to use that evidence to satisfy themselves that all elements of each crime were proven" [*Id.*]. Therefore, defendant argues that the government was allowed "to present facts and evidence to convict [him] that the grand jury may not have even considered" [*Id.* at 5].

The Court notes that defendant has rehashed his argument about the specificity of indictment many times over throughout these proceedings. Even defendant acknowledges in his post-trial motion that he "has multiple times previous to trial submitted motions to [challenge the indictment for lack of specificity] which were denied" [*Id.* at 2 (emphasis omitted)]. Indeed, the Court issued a Memorandum Opinion and Order [Doc. 258] denying defendant's "Motion for Leave to File Motion to Dismiss the Indictment and All Criminal Charges, with Prejudice, due to Violations of Defendant's Rights under the First, Fourth, Fifth, Sixth, and Eighth Amendments That Have Denied Defendant a Fair Trial" [Docs. 237, 237-1]. Also, the Court issued a Memorandum Opinion and Order [Doc. 278] denying defendant's appeal [Doc. 197] which challenged Judge Poplin's order [Doc. 195] denying

12

his "Motion for Leave to File Motion for Reconsideration of Denial of Motion for Leave of Court to File Untimely Attached Motion to Quash the Indictment and Charges Therefrom" [Docs. 190, 190-1].

Then, the Court denied defendant's motion in limine [Doc. 255], which sought to prohibit evidence and testimony not related to the events that triggered the charges considered by the grand jury and to dismiss the indictment with prejudice, at the final pretrial conference [Sealed Doc. 351, pp. 52–55]. Taking a closer look at his motion in limine, he argued that the indictment should be dismissed based on lack of specificity and incorporated by reference his previous motions to dismiss the indictment [Docs. 176, 176-1, 190, 190-1, 237, 237-1], stating:

> The indictment does not mention where allegedly illegal evidence was located; it does not make any mention of Def's cellphone, Micro SD card, or Google Drive accounts; it does not make mention of the WhatsApp app; there are no descriptions of any allegedly illegal images, videos, or text; there is no mention of any reasons for making a showing that any evidence belonged to Def; there's no mention of any investigations that allegedly discovered evidence or who conducted the investigations; and the indictment is completely silent about any considerations made by the grand jury.

[Doc. 255, p. 1]. In denying this motion in limine, the Court concluded that the indictment [Doc. 1] is specific in accordance with Fed. R. Crim. P. 7(c)(1) [Sealed Doc. 351, p. 55]. Moreover, as indicated by the Court, Fed. R. Crim. P. 12(b)(3)(B)(iii) requires that a defendant seeking to challenge a defect in the indictment as to lack of specificity must be settled before trial, and therefore it may not be reargued at trial [*Id.* at 53].

Finally, the Court notes that throughout the trial defendant reiterated his "continuing, running objection" about the indictment not being specific when the

government introduced evidence [*see e.g.*, Doc. 327, pp. 56, 70; Doc. 328, pp. 20, 22, 23, 36−39, 42, 44, 47−48, 131−32; Doc. 329, p. 48; Doc. 330, pp. 80, 82]. In a similar fashion to his new trial motion, defendant orally argued in his Rule 29 motion that the government was taking the position that "you can take your pick of" photos to satisfy the offenses and that the prosecutor should be prevented "from roaming at will to adjust their theory and the evidence to fit the crimes from how the evidence proceeded at trial" [Sealed Doc. 329, p. 48]. In response, the government argued that this pretrial issue had already been determined and ordered by the Court [Sealed Doc. 329, p. 49; Sealed Doc. 330, p. 83]. The Court denied defendant's Rule 29 motions and rejected his argument about the specificity of the indictment, incorporating its previous rulings on the subject [Sealed Doc. 329, pp. 45−51; Sealed Doc. 330, pp. 151−52 (both referring to Doc. 278)].

Therefore, the Court has repeatedly rejected defendant's various arguments about the specificity of the indictment as lacking merit throughout the pretrial and trial proceedings. Nothing that occurred at trial warrants reversal of the Court's position on this issue. Having given consideration to this issue, it is not necessary to revisit these rulings that stand on the record. *See Booker*, 2011 WL 2200028, at *2. To the extent that his argument about the specificity of the indictment challenges the sufficiency of the evidence for purposes of a Rule 29 motion, the Court will address that issue below. The Court will also address below defendant's argument that he was denied sufficient time to prepare for trial, which is embedded in his argument about the indictment. Moving to Rule 33, the Court finds that defendant's argument regarding the indictment does not create the

14

"extraordinary circumstances" required to grant a motion for new trial under that standard. *See Hughes*, 505 F.3d at 593.[4]

### iii.    Subpoena for Trial

Defendant further argues that his Sixth Amendment right to confront his accusers was violated when the Court would not grant his request to subpoena for trial Federal Bureau of Investigation ("FBI") Special Agent Kristina Norris, who was the affiant in the warrant application in Case No. 3:19-mj-1117[5] [Doc. 298, pp. 1−2]. Defendant's motion simply reasserts the argument he made before trial regarding the issuance of a trial subpoena for Special Agent Norris, wherein he relied on his Sixth Amendment right to confront and compel witnesses [Sealed and Ex Parte Docs. 216, 240]. Judge Poplin denied this request [Sealed and Ex Parte Doc. 245], and then defendant filed an ex parte objection [Sealed Doc. 256]. Thereafter, the Court considered the matter and overruled defendant's objection, concluding that he failed to show that her decision was clearly erroneous or

---

[4] In his motion for new trial, defendant does not specifically argue that there was a variance in the proof adduced at trial as compared to the indictment or that the government made improper arguments at trial. "A variance 'occurs when the charging terms of the indictment are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *United States v. McQuarrie*, 817 F. App'x 63, 79 (6th Cir. 2020) (quoting *United States v. Caver*, 470 F.3d 220, 235 (6th Cir. 2006)). Further, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996). The Court observes that "[d]istrict courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments" on behalf of pro se parties, and it will not do so here given defendant's lack of argument on the matter. *Fowler v. Marous Bros. Const.*, No. 1:07-CV-531, 2007 WL 1169297, at *1 (N.D. Ohio Apr. 18, 2007) (citing *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985)).

[5] This case was opened for the purpose of processing an application for a search warrant relating to defendant.

15

contrary to law [Sealed and Ex Parte Doc. 267]. Because of the ex parte and sealed nature of this ruling, the Court will not recite further details herein.

Again, the Court will not revisit the pretrial issue about the trial subpoena for Special Agent Norris because it was previously resolved. *See Booker*, 2011 WL 2200028, at *2. Further, defendant's argument about this pretrial issue does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" required to grant a motion for new trial under Rule 33. *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

### B. Trial Matters

#### i. Preparation for Trial

As a ground for his post-trial motion, defendant argues that he did not have sufficient time to prepare for trial. In tandem with his position that the indictment was not sufficiently specific, defendant asserts that he was "unconstitutionally denied his right to prepare his defense for any one, and for all nine, counts" [Doc. 298, p. 3]. As mentioned above, he states that he received from the government an image-redacted copy of pages 11 through 3800 of the WhatsApp evidence only one week before trial and "barely had enough time" to study those pages [*Id.* at 3−4]. Further, he states that the government gave him an image-redacted copy of pages 3801 through 7091 of the WhatsApp evidence only two days before trial [*Id.* at 4]. As a result, he states that he advised elbow counsel to cancel his second review "because he was not anywhere even remotely close to preparing to defend himself as a pro se [d]efendant" [*Id.* at 5].

16

Defendant also argues that he filed a motion to continue the trial which the Court denied, "seem[ing] not to be concerned whatsoever that the Court and government had withheld [his] rights to prepare for trial" as it was "only concerned with not endangering the trial date" [*Id.* at 5, 8 (emphasis omitted)]. Similarly, defendant asserts that his "Fifth Amendment due process rights were violated" in that he did not have "sufficient time to prepare for trial after all [d]ispositive [m]otions had been dealt with" [*Id.* at 7−8 (emphasis omitted)]. He states that the Court "was still dealing with issuing orders of a denial of dispositive [m]otions up until the one day preceeding [sic] trial" [*Id.* at 7 (emphasis omitted)].

Finally, he complains about the page numbering system for the copy of the WhatsApp conversations that he was provided, stating that it did not match the page numbering system of the WhatsApp evidence that the government introduced into evidence [*Id.* at 8]. He explains that he had almost completed his direct examination of himself when an assistant of his elbow counsel began to assist him in "using an image-redacted copy of the WhatsApp messages that did correspond with the government's page numbers" [*Id.* (emphasis omitted)]. He asserts that he was "robbed of his opportunity to meaningfully defend himself" by not being provided this information months or years earlier [*Id.* (emphasis omitted)].

A walk-through of the relevant history will put defendant's arguments in perspective. As noted above, Judge Poplin conducted a *Faretta* hearing to determine whether defendant knowingly and voluntarily waived his right to counsel [Doc. 48]. At

the hearing on May 6, 2021, the government pointed out that defendant would not have full access to discovery, including the alleged child pornography ("CP") materials, if he represented himself [*Id.* at 2]. Judge Poplin continued the hearing to allow Attorney Moffatt sufficient time, among other things, "to discuss with defendant the limitations on his access to discovery if he represents himself" [*Id.* at 3]. At the second hearing on June 8, 2021, Attorney Moffat confirmed that defendant "understands he cannot review the pornographic videos" [*Id.* at 4]. In response, the government agreed that the pornographic materials could not be disclosed but stated that Attorney Moffatt could review the materials and describe them to defendant [*Id.*]. At both hearings, Judge Poplin expressed her concern about defendant's decision to represent himself given the limitations on his access to discovery, stating that he would be better off with counsel [*Id.* at 3, 5]. Defendant chose to represent himself after stating he had "weighed the pros and cons" [*Id.* at 4], and Judge Poplin noted this decision was "[d]espite the Court's strong recommendation" [*Id.* at 5−6]. At these hearings, defendant never objected to not being allowed to review the CP himself.

At the *Faretta* hearing, defendant stated "his main concern [was] viewing the data log files on his cellphone and micro SD card," explaining that he wanted to view the cellphone itself so he could obtain the dates of files and file types [*Id.* at 4]. Indeed, defendant's concern about accessing his cellphone was played out in multiple filings. He filed a "Motion to Compel Production of Defendant's LG Cellphone and Micro SD Card for Inspection of Text-Only File Information" [Doc. 57]. In a reply to the government's response to this motion, defendant mentioned 18 U.S.C. § 3509(m)(2)(B), not in the

18

context of asking to review the CP himself, but to argue that if he is allowed to view the CP, he ought to be allowed to inspect his cellphone [Doc. 77, pp. 14−15]. In fact, he expressly stated that he "will not ask to view child porn, so the judge will not need to deny that request that won't be requested" [*Id.* at 15].

In denying this motion to compel production on July 26, 2021, Judge Poplin concluded the following: (1) that the government's provision of a copy of the data on the cellphone and SD card complied with Rule 16(a)(1)(E); (2) that defendant was not entitled to inspect and manipulate the actual tangible items because doing so would compromise the integrity of the data therein; and (3) that pursuant to 18 U.S.C. § 3509(m)(1), defendant was not entitled to review materials that constituted CP, though his elbow counsel would be able to inspect the material [Doc. 67, pp. 3–4]. The Court ultimately issued a Memorandum Opinion and Order [Doc. 107] denying defendant's appeal [Doc. 82], which challenged Judge Poplin's order [Doc. 67] denying his motion to compel production [Doc. 57].

Then, in the context of his "Motion for Leave to File Motion for Reconsideration of Denial of Motion for Leave of Court to File Untimely Attached Motion to Quash the Indictment and Charges Therefrom" [Docs. 190, 190-1], defendant argued that elbow counsel's assistance with regard to the CP images cannot replace the requirement that the indictment inform him of the charges or protect him from a future double jeopardy violation [Doc. 190-1, pp. 7−9]. In denying this motion to reconsider on April 5, 2023, Judge Poplin concluded that litigation of a dispositive motion at this stage would jeopardize

19

the trial date of July 25, 2023, causing significant prejudice to the government and its witnesses [Doc. 195, p. 5]. She further noted, in response to defendant's argument that elbow counsel's assistance with viewing the CP images does not replace the requirement that the indictment specifically inform him of the charges, that the affidavits in support of the federal search warrants describe the images seized from his SD card as well as his interactions with at least one of the minors referenced in the indictment [*Id.*]. Thereafter, the Court issued a Memorandum Opinion and Order [Doc. 278] denying defendant's appeal [Doc. 197] which challenged Judge Poplin's order [Doc. 195] denying his motion to reconsider [Doc. 190-1].

On July 5, 2023, defendant filed a Motion for Leave to File Untimely Motion in Limine [Docs. 261, 261-1] and a Motion for Leave to File Untimely Motion in Limine [Docs. 262, 262-1], requesting respectively that the government and its witnesses be ordered to make no mention or present any evidence that defendant has been listed on the sex offender registry and that he had prior convictions. Within both motions, defendant argued that he had missed the deadline for filing the motions in limine in part because he had been "spend[ing] critical days in preparation for three responses to Motions to Dismiss filed by the five defendants" in one of his civil cases [*see* Doc. 261, p. 1; Doc. 262, p. 1].

Judge Poplin entered a Pretrial Order in this case on June 14, 2023, directing the parties to "provide to the opposing party copies of the proposed trial exhibits with a view toward stipulating the admissibility of as many exhibits as possible" [Doc. 242, p. 3]. Defendant filed a Motion to Continue the Trial Date on June 22, 2023, citing issues with

20

elbow counsel not sharing discovery (including two videotapes of alleged victims), issues with his information technology ("IT") expert, and issues with securing subpoenas, as well as not yet receiving notice of all pending issues [Doc. 248, p. 1]. He asked for at least six more months to prepare to represent himself at trial, explaining that he "is nowhere near ready for trial due to the great quantities of peripheral and collateral issues" and "still needs to learn proper techniques for defending himself at trial" [*Id.* at 1–2]. He also argued that "[t]his Honorable Court waited up to two years to mass-dump about 30 pretrial motions, en masse, in the last few weeks, right in between two R&R's and objections to each Def. needed to file" and therefore he "has had absolutely no time to plan for trial" [*Id.* at 1]. The government strenuously opposed a continuance [Doc. 249]. Finding that defendant failed to demonstrate good cause for a continuance, the Court denied defendant's request for a continuance in an Order dated June 26, 2023 [Doc. 254].

In an Order dated June 29, 2023, the Court directed that defendant be allowed to review the alleged CP prior to trial within strict parameters and pursuant to 18 U.S.C. § 3509(m) [Doc. 257]. The Court referenced defendant's recent request for a continuance in which he asserted that "[e]lbow counsel has still not shown Def two videotapes of alleged victims" [*Id.* at 1 (citing Doc. 248, p. 1)], which the Court treated as defendant's initial request to review the alleged CP. Thereafter, the government proposed a procedure by which defendant would be allowed to review the alleged CP along with the government's proposed exhibit list in a secure interview room with two FBI agents who would operate the trial director system [Doc. 259, p. 2]. Defendant could conduct this

21

review each workday from July 12, 2023, through July 21, 2023, from 9:00 a.m. until he needed to be returned to the jail by 5:00 p.m. [*Id.*]. Challenging the veracity of defendant's contention in his continuance motion that he had not yet reviewed certain discovery, the government noted that it had worked diligently to ensure that defendant had received all discovery, with the exception of the alleged CP, and that it had provided early *Jenks* material, including the two videotapes of alleged victims referred to in his motion [*Id.* at 1]. In his reply to this proposed procedure, defendant repeated his demands for access to the system files on his cellphone, but he did not object to any part of the government's proposal for how he could review the alleged CP in advance of trial [Doc. 273].

At the final pretrial conference on July 13, 2023, the Court found the procedure outlined by the government to be responsive to its order requiring the government to submit a procedure [Sealed Doc. 351, p. 38]. The government explained that it had completed all of its discovery obligations months in advance and that defendant had only recently requested to review the alleged CP himself [*Id.* at 39−40]. The Court announced that defendant had the opportunity to begin his review of the alleged CP immediately following the conference, pursuant to the procedure set forth by the government [*Id.* at 34]. In response, the government relayed its discussion with elbow counsel that defendant would start his review on Monday, July 17, 2023, at 12:30 p.m., with the option to review each day thereafter at his request [*Id.* at 34−35]. Further, the government explained that all proposed pieces of evidence would be available for defendant's review [*Id.* at 33−34, 40]. The government also stated that defendant had already been provided with a redacted copy

22

of the WhatsApp evidence and at the viewing, he would be able to see the image or play the video from the WhatsApp evidence, with the assistance of an FBI agent [*Id.* at 36–38]. When the trial of this case began on Tuesday, July 25, 2023, counsel for the government announced to the Court as a preliminary matter that defendant had "used approximately two-and-a-half hours" of the time available to him to conduct his review of the alleged CP [Doc. 327, p. 4].

A criminal defendant in a felony case has a Sixth Amendment right to counsel or to represent himself. *Faretta*, 422 U.S. at 818−19. However, "[i]t is well-settled that there is no constitutional right to hybrid representation." *United States v. Cromer*, 389 F.3d 662, 681 n.12 (6th Cir. 2004). In view of the above history, the Court finds no merit in defendant's argument that he did not have sufficient time to prepare for trial. The indictment in this case was filed on December 17, 2019 [*see* Doc. 1], with an initial trial date set on April 7, 2020 [*see* Doc. 6]. This case was litigated over the course of more than three-and-a-half years, with defendant representing himself more than half of that time [*see* Doc. 48]. He was strongly advised by Judge Poplin against this decision, and he understood that he would have to rely on his elbow counsel to review the alleged CP [*see* Doc. 48]. Thereafter, defendant proceeded with litigating his main concern of viewing his actual cellphone and the data therein [*see* Doc. 57] and his quest to dismiss or quash the indictment [*see* Docs. 190, 190-1], rather than directly asking to review the alleged CP. In fact, he stated at one time he was not so requesting [*see* Doc. 77, p. 15].

23

By the time his final motion to continue [Doc. 248] was filed, the Court had already granted seven continuances [*see* Docs. 14, 18, 26, 38, 87, 137, 173]. While the Court determined that defendant had failed to demonstrate good cause for yet another continuance [*see* Doc. 254, p. 3], the Court notes that defendant could have sought to review the alleged CP himself and moved for a continuance much earlier. In fact, after the sixth trial setting of July 26, 2022 [Doc. 137], defendant waited until approximately one month before trial was set to begin on July 25, 2023, to ask for relief [*see* Doc. 248]. During this one-year time frame, defendant received important rulings on his various dispositive motions [*see* Docs. 244, 265], ex parte objection [*see* Doc. 267], and appeals [*see* Docs. 272, 278, 284, 286, 288], following Judge Poplin's earlier recommendations and rulings on those issues. While defendant argues Judge Poplin and this Court issued these decisions en masse right up until his trial date, the Court finds that defendant knew the CP material existed from the beginning and did not have to wait for pretrial rulings before asking to review the alleged CP himself or asking for another continuance. The Court observes that defendant did not request additional time for his appeals or when he did, the request was granted [*see* Doc. 288, p. 4 (citing Docs. 228, 231)] and that defendant was spending critical time working on one of his civil cases [*see* Docs. 261, 262]

Then, in response to his assertion that he had not yet been shown two videotapes of alleged victims [*see* Doc. 248, p. 1], the Court directed the government to propose a procedure by which defendant could review the alleged CP [Doc. 257]. The government proposed a procedure [Doc. 259], and defendant replied [Doc. 273] but did not object. The

24

jury trial ultimately commenced on July 25, 2023 [*see* Doc. 289], with the government announcing at the outset that defendant only utilized two-and-a-half hours of the time available to review the CP material [Doc. 327, p. 4]. In addition, the Court had been informed that the government and elbow counsel reached an agreement for defendant to begin that process on Monday, July 17, 2023, rather than starting immediately after the final pretrial conference date of July 13, 2023 [Sealed Doc. 351, p. 35]. Therefore, the Court finds that defendant did not take advantage of the time allotted for him to review the alleged CP in accordance with the procedure approved by the Court. In fact, defendant squandered the time by directing his elbow counsel to cancel a second review and not returning thereafter, when he knew that the trial date was rapidly approaching. The Court also notes that there is no indication that the government did not comply with its discovery and inspection obligations under Rule 16(a), as well as 18 U.S.C. § 3509(m) from the start.

Considering this history, the Court concludes that defendant was given adequate time to prepare for his defense. The Court granted multiple continuances and directed the government to provide a procedure for defendant to review the alleged CP. Defendant chose to represent himself, and as such, he made the important and strategic decisions about how to move forward in his case. *See McKaskle v. Wiggins*, 465 U.S. 168, 178 (1984) (a pro se defendant is "entitled to preserve actual control over the case he chooses to present to the jury"). The Court cannot control that defendant made his own strategic decisions about how to spend his time, including tirelessly litigating pretrial matters and spending critical time on civil matters, even if in lieu of preparing a trial strategy. Moreover, his

25

argument about his lack of trial preparation does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" required to grant a motion for new trial under Rule 33. *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

### ii. Sufficiency of Evidence

Defendant briefly argues that the evidence at trial was insufficient to establish his guilt on each of the nine counts [Doc. 298, p. 6]. More specifically, he argues that "[t]here was insufficient evidence for the four production counts (§2251(a)) that [he] caused F.R. to send images" because "[he] showed repeatedly how F.R. sent such images wholly unsolicited and unilaterally" [*Id.*]. Further, he argues that the government was unable to prove venue on Count One for the alleged victim A.A. [*Id.*]. Defendant asserts that "the government was only able to show that over several three[-]month periods, [he] was present to sign a document on only one day out of three months" [*Id.*]. Because "[t]here is no evidence that [he] was in the Eastern District of Tennessee on the other 89 days of the 3-month period," he contends that "[t]here was no evidence that [he] committed any act of the alleged crime on that one day out of 90 days (3 months)" [*Id.*].

"Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones." *El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) (citation omitted). Further, "[a] motion that merely states general conclusions of law without substantiating allegations

with facts is without legal merit." *Maxwell v. United States*, Nos. 2:03-CR-72, 2:07-CV-143, 2009 WL 3615077, at *2, 5 (E.D. Tenn. Oct. 28, 2009) (citing *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959)). Accordingly, the Court will not address defendant's undeveloped arguments at length. The Court instructed the jury on each of the nine charges set forth in the indictment, and the Court provided the jury a copy of its written instructions [Doc. 330, pp. 136−42, 159]. "[J]urors are presumed to follow the court's instructions." *United States v. Bradley*, 917 F.3d 493, 508 (6th Cir. 2019) (alteration in original) (quoting *United States v. Hynes*, 467 F.3d 951, 957 (6th Cir. 2006)).

Count One involves whether defendant knowingly induced A.A., a minor, to engage in sexually explicit conduct to produce a visual depiction of such conduct, from in or about December 2015 through in or about June 2016, in violation of 18 U.S.C. § 2251(a) [Doc. 1]. Counts Four, Six, and Eight involve whether defendant knowingly induced F.R., a minor, to engage in sexually explicit conduct to produce a visual depiction of such conduct, on or about April 29, 2018, April 30, 2018, and May 2, 2018, in violation of 18 U.S.C. § 2251(a) [*Id.*]. These charges require the government to prove two elements beyond a reasonable doubt: (1) the defendant employed, used, persuaded, induced, enticed, or coerced a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of that conduct; and (2) the defendant knew or had reason to know that the visual depiction would be transported or transmitted using any means or facility of interstate and/or foreign commerce, or that the visual depiction was produced or transmitted using materials that were mailed, shipped, or transported in or affecting interstate and/or foreign

27

commerce by any means, including computer, or that the visual depiction was transported or transmitted using any means or facility of interstate and/or foreign commerce or in or affecting interstate and/or foreign commerce [Doc. 330, pp. 136−39].

Count Two involves whether defendant knowingly received CP from April 23, 2018, through on or about May 2, 2018, in violation of 18 U.S.C. § 2252A(a)(2)(A) [Doc. 1]. This charge has three elements which the government must prove beyond a reasonable doubt: (1) that the defendant knowingly received any CP and/or material that contained CP; (2) that the defendant knew that the material was and/or contained CP; and (3) that the CP and/or material contained CP that was using any means or facility of interstate and/or foreign commerce, shipped or transported in or affecting interstate and/or foreign commerce by any means, including by computer [Doc. 330, pp. 139−41].

Counts Three, Five, and Seven involve whether defendant knowingly transferred obscene materials to F.R., a minor not yet 16 years of age, on or about April 29, 2018, April 30, 2018, and May 2, 2018, in violation of 18 U.S.C. § 1470 [Doc. 1]. These charges require the government to prove the following elements beyond a reasonable doubt: (1) that the defendant used a facility or means of interstate or foreign commerce to; (2) knowingly transfer obscene matter to another individual; (3) such individual had not attained the age of 16 years; and (4) the defendant knew that such individual had not attained the age of 16 years [Doc. 330, pp. 142].

Finally, Count Nine involves whether defendant knowingly possessed CP involving a prepubescent minor not yet 12 years of age on or about May 2, 2018, in violation of 18

28

U.S.C. § 2252A(a)(5)(B) [Doc. 1]. This charge has three elements which the government must prove beyond a reasonable doubt: (1) the defendant knowingly possessed any material that contained an image of CP; (2) the defendant knew that the material was CP and/or contained CP; and (3) the image of CP was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer and/or produced using materials that had been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer [Doc. 330, pp. 141−42, 159].

The Court also provided the jury with instructions on the meaning of various terms contained within the elements of the charges, but those definitions will not be repeated here. Regarding venue, the Court instructed the jury that the indictment alleges that some acts in furtherance of the crimes charged occurred in the Eastern District of Tennessee; there is no requirement that all aspects of the crimes charged take place in the Eastern District of Tennessee; and before returning any guilty verdict, the government must convince the jury by a preponderance of the evidence that some act in furtherance of the crimes charged took place in the Eastern District of Tennessee [*Id.* at 135−36]. The Court specifically advised the jury that the government must prove all the offense-specific elements of any crime charged beyond a reasonable double, while the lesser standard of preponderance of the evidence only applies to the decision on the issue of venue [*Id.*].

The government offered several witnesses who testified and identified evidence in support of the charges. In relation to the approximate six-month time frame from

29

December 2015 through June or July 2016, A.A. testified[6] to the following information: (1) born in 2001, she had just turned 14 years of age and was living with her parents in Bulgaria, (2) she and defendant began communicating over the internet on Deviantart.com and later Skype, (3) she believed she was in a monogamous romantic relationship with defendant, who was age 59 and living in Kodak, Tennessee, (4) A.A. eventually told defendant that she was 14 years old, (5) defendant asked A.A. to see her nude body and asked her to masturbate for him during their video calls, (6) A.A. posed nude for him, exposed and spread open her vagina for him, and masturbated for him while holding a baby doll, (7) defendant took multiple screenshots of A.A.'s face, nude body, and exposed vagina without her permission, creating a collage of images, (8) defendant's face can be seen in the corner of certain screenshots, (9) defendant sent A.A. a picture of his genitals, (10) defendant threatened A.A.'s mother when she put a stop to the communications and he submitted a false report to Bulgarian law enforcement that A.A. was being abused by her parents, and (11) A.A. was interviewed by FBI Special Agent Pearson who showed her the screenshots that defendant had taken of her nude [Doc. 327, pp. 37−106]. Numerous nude images of A.A., including her masturbating with a baby doll, were introduced into evidence [*Id.*].

---

[6] A.A.'s testimony was given with the aid of an interpreter, and the jury was provided instructions about such evidence [Doc. 327, pp. 37−38, 41; Doc. 330, p. 129].

Sean Ridlon, F.R.'s father, testified in his daughter's absence.[7]  Ridlon testified to the following information: (1) F.R. was approximately 13 years of age in 2018, (2) F.R. lived with him and their family in Florida, (3) he was aware that she was using the website Deviantart.com for her artwork and he provided a cellphone for her, (4) he noticed a change in her behavior, including becoming secretive and combative, during 2018, (5) he discovered pubic hair in the bathroom where F.R. had shaved her pubic area in 2018, (6) he became aware that F.R. had been communicating with a man five decades older than her online via WhatsApp when two FBI agents knocked on his door, and he consented to a search of his home as they were looking for an SD card for a cellphone, and (7) he identified various nude photographs of 13-year-old F.R. between April and May of 2018, by recognizing her hands and legs as well as her night shirt and bed linens [Doc. 328, pp. 13−26].  Several nude images of F.R. were introduced into evidence [*Id.*].

FBI Special Agent Bianca Pearson, who specialized in violent crimes against children, testified that she was contacted by the JCSO in May 2018, for FBI assistance regarding what they suspected to be child sexual abuse material "CSAM" on defendant's SD card which was inside his cellphone and other information leading them to believe a victim was overseas [*Id.* at 121−24].  In response, Special Agent Pearson requested that FBI Special Agent Stephen McFall conduct a forensic examination of the contents from defendant's SD card and cellphone [*Id.* at 126].  Special Agent Pearson was able to fully

---

[7] Ridlon testified that his daughter would not have been able to testify because she was not functioning socially [Doc. 328, p. 19].

identify A.A. and F.R. based on the information pulled from defendant's SD card [*Id.* at 144]. In February 2019, when his cellphone content became accessible, Special Agent Pearson understood the extent that defendant had groomed and enticed A.A. and F.R. [*Id.*]. A Cellebrite report was prepared outlining the data extracted from defendant's cellphone [*Id.* at 144−45].

Special Agent Pearson provided the following testimony regarding A.A. and F.R.: (1) she traveled to Bulgaria to interview A.A., who confirmed her identity in the nude images that had been screenshotted, including A.A. spreading open her vagina and masturbating with a baby doll, (2) A.A. provided a thumb drive containing screen captures taken from her computer of Skype chats between A.A. and defendant, (3) defendant's web browsing history from late 2015 and early 2016 revealed that he conducted searches about Bulgaria, A.A.'s school, and A.A.'s mother, (4) defendant sent himself an email dated July 4, 2016, regarding the age of consent laws he discovered on the internet, (5) defendant sent an email communication dated July 5, 2016, to Bulgarian law enforcement claiming that A.A. was being sexually, physically, and emotionally abused by her parents, (6) defendant created notes dated February 26, 2018, on his cellphone which listed the names and ages of young females, including A.A., age 14, and F.R., age 13; (7) defendant's web browsing history revealed that he conducted searches of F.R. on DeviantArt and F.R.'s mother, (8) she attempted to obtain F.R.'s cellphone but F.R. had disposed of it per defendant's instructions, (9) she identified the WhatsApp communications (end-to-end encrypted) between defendant and F.R., which included over 7,000 pages of their communications

32

from April 22, 2018, to May 2, 2018, (10) via WhatsApp, defendant instructed F.R. to produce CSAM images of herself and instructed her how to do it in graphic terms, (11) via WhatsApp, F.R. sent images of her vagina, including spread open with her fingers, and videos of her masturbating to defendant at his request, (12) via WhatsApp, defendant sent pictures of his genitals to F.R., (13) via WhatsApp, defendant sent videos of him masturbating to F.R., yelling out her first name on at least one occasion, and (14) via WhatsApp, defendant sent CSAM to F.R., specifically pictures of A.A.'s breasts and vagina [*Id.* at 128−84].

Many nude images of A.A. from the Skype communications with defendant, numerous nude images of F.R. from the WhatsApp communications with defendant, as well as several videos of defendant masturbating were introduced into evidence through Special Agent Pearson [*Id.*]. Finally, Special Agent Pearson testified that the forensic examination of defendant's cellphone and SD card also revealed multiple images of other CSAM, including known series of CP that have been identified by the National Center for Missing and Exploited Children [*Id.* at 182]. She explained that his web browsing history reflected a search on a well-known CP website hosted in Russia [*Id.* at 148]. Several exemplar images of known series of CP were introduced into evidence [*Id.* at 183−84].

As this summary of the evidence illustrates, the record is replete with overwhelming evidence that supports defendant's convictions on each of the nine charges beyond a reasonable doubt. Considering the proof, a rational jury could have easily found him guilty of inducing a minor to engage in sexually explicit conduct to produce child pornography

33

in Counts One, Four, Six, and Eight, receiving child pornography in Count Two, transferring obscene materials to a minor in Counts Three, Five, and Seven, and possessing child pornography in Count Nine. While the jury heard evidence from defendant when he took the stand in his own defense and from his other witnesses, the jury was free to assess the credibility of all witnesses and reject defendant's theories and contradictory explanations as unconvincing. "The fact that the jury did not draw the desired inference from [the defendant]'s account of the evidence does not render his conviction invalid for want of sufficient evidence." *See United States v. Threadgill*, 572 F. App'x 372, 381 (6th Cir. 2014). Accordingly, defendant's motion for new trial under Rule 29 lacks merit. Moreover, after viewing all of the evidence in totality, the Court concludes that the jury's verdict on each of these counts was not "against the manifest weight of the evidence" for purposes of defendant's motion for new trial under Rule 33. *See Hughes*, 505 F.3d at 593.

Moving to defendant's argument that the government failed to prove venue with respect to Count One, the Court likewise finds that he fails to meet the standards for a new trial under Rule 29 or Rule 33. A criminal defendant has a constitutional right "to have his case adjudicated in the appropriate venue, i.e., in the state and district where the crime or crimes with which he has been charged were committed." *United States v. Kapordelis*, 569 F.3d 1291, 1307 (11th Cir. 2009) (citing U.S. Const. art. III, § 2, cl. 3). "Where a crime 'involv[es] the use of the mails, transportation, in interstate or foreign commerce, or the importation of an object or person into the United States,' the offense is a 'continuing crime,' i.e., one which begins in one district and is completed in another." *Id.* (citing 18

34

U.S.C. § 3237(a); *United States v. Rodriguez-Moreno*, 526 U.S. 275, 279−81 (1999)). "In such instances, venue is proper in any district in which the offense was started, continued, or completed." *Id.*

In *Kapordelis*, the defendant created sexually explicit photographs of a child while he was in Greece and South Carolina, and the photographs were later discovered in his possession in Georgia. *Id.* at 1299. The defendant moved to dismiss the charges against him in Counts 1 and 3 under 18 U.S.C. § 2251(a), arguing that venue was not appropriate in the Northern District of Georgia because the production of the images did not occur there. *Id.* at 1307. The district court denied the motions, and the Eleventh Circuit affirmed explaining:

> Section 2251(a) includes among its required elements that (1) that the defendant must know or have reason to know that "such visual depiction will be transported in interstate or foreign commerce or mailed," (2) that the "visual depiction was produced using materials that have been mailed, shipped, or transported in interstate or foreign commerce," or (3) that the "visual depiction has actually been transported in interstate or foreign commerce or mailed." Count 1 alleges that the digital photographs were transported from Greece to Georgia and Count 3 alleges that the digital photographs were transported from South Carolina to Georgia and created using a camera that had been "mailed, transported and shipped in interstate and foreign commerce."
>
> While neither the transportation of an image allegedly produced in violation of § 2251(a) from another jurisdiction nor the possession of such an image in the Northern District of Georgia changes the location of the "use" or "production" elements from Greece or South Carolina, as Defendant argues, § 2251(a) ties the punishment for the "use" of a minor in and "production" of visual depictions of sexually explicit conduct to the transport of the visual depictions or the means of producing those visual depictions in interstate or foreign commerce. Thus, under 18 U.S.C. § 3237, the violation of § 2251(a) as alleged in Counts 1 and 3 is a "continuing offense." Venue in the Northern District of Georgia into which the images (and the camera, in the case of

35

Count 3) moved, was appropriate, and the decision of the district court shall
be affirmed.

*Id.* at 1307−08.

Similarly, the proof in the instant case reveals that defendant engaged in a "continuing offense" when he communicated over the internet with A.A., then age 14 and living in Bulgaria, while he was age 59 and living in Kodak, Tennessee. Specifically, defendant requested that A.A. show him her nude body and masturbate for him during their video calls via Skype. A.A. honored his requests, including masturbating with a baby doll. Then, defendant screenshotted the live, nude images of A.A., and his face captured in the corner of some screenshots. Therefore, defendant's production of visual depictions of A.A. engaged in sexually explicit conduct was transmitted overseas via Skype on multiple occasions. This evidence was then found on defendant's SD card and/or cellphone when it was seized in Sevier County, Tennessee, which is located in the Eastern District of Tennessee.

In addition, the government presented the testimony of Thomas Williams, associate counsel in the Professional Standards Unit of the Tennessee Bureau of Investigations ("TBI") and custodian of business records for certain divisions [Doc. 328, pp. 5−12]. Williams testified regarding redacted documents[8] showing information collected from defendant in the normal course of business and under penalty of perjury, including his various email addresses and an address located in Kodak, Sevier County, Tennessee in the

---

[8] Introduced as the government's exhibit 5b, these TBI documents are defendant's redacted sex offender registrations.

Eastern District of Tennessee for June 3, 2015, September 25, 2015, December 11, 2015, March 18, 2016, June 29, 2016, and September 28, 2016 [*Id.*]. Also, Stephen McFall testified that use of a cellphone, SD card, and the internet would qualify as interstate and/or foreign commerce [Doc. 328, pp. 33−34, 39].

In light of this evidence, the jury, in convicting defendant, found that the government had established venue as to Count One by a preponderance of the evidence. With respect to venue, the Court instructed the jury that there is no requirement that all aspects of the crime charged take place in the Eastern District of Tennessee, so long as the government convinced the jury by a preponderance of the evidence that some act in furtherance of the crime charged took place in the district [Doc. 330, pp. 135−36]. *See Bradley*, 917 F.3d at 508 (observing it is presumed that jurors follow the court's instructions). Therefore, defendant cannot succeed on his motion for new trial under Rule 29 on this basis. Further, after viewing all of the evidence in totality, the Court concludes that the jury's verdict as to venue is not "against the manifest weight of the evidence" for purposes of defendant's motion for new trial under Rule 33. *See Hughes*, 505 F.3d at 593.

### iii. Evidentiary Rulings

#### 1. General

Defendant challenges various evidentiary rulings. He asserts that this Court "made numerous erroneous rulings contrary to United States Supreme Court precedent common law and Sixth Circuit Court of Appeals precedent common law, some of which are enumerated below" [Doc. 298, p. 1]. He states that the Court "repeatedly declined to allow

37

[him] to introduce into evidence documents that the Federal Rules of Evidence permit to be introduced" [*Id.*]. The Court observes that these arguments appear to be introductory or general statements. To the extent that he is raising specific grounds for his new trial motion, the Sixth Circuit has consistently instructed that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See El-Moussa*, 569 F.3d at 257 (citation omitted).

### 2. Chain of Custody

More specifically, defendant asserts that the trial testimony of Richard Collins, Michael Stallings, and Pamela Taylor proved that the "chain of custody of cellphone and micro SD card—the sources of all the evidence used against [him]—were [sic] broken between May 3, 2018 and May 23, 2018 [*Id.* at 6]. He states that there are no written records demonstrating the proper chain of custody for this property [*Id.* at 6−7]. He states that the Court ruled that "this broken chain of custody goes to the weight of evidence, but not to admissibility" despite him "offering legal authority otherwise" [*Id.* at 7]. Finally, defendant argues that he was prevented from introducing into evidence "an FBI document in which alleged victim F.R. was quoted as saying she had told [d]efendant she was 18 years old" [*Id.*]. He states that Special Agent Pearson authenticated the document, but the Court erroneously denied his attempt to introduce it into evidence [*Id.*]. !

Defendant, however, has provided no new argument as to why the Court's ruling was erroneous.[9]  "Broad discretion is given to district courts in determinations of admissibility based on considerations of relevance and prejudice . . . ."  *United States v. Jackson-Randolph*, 282 F.3d 369, 376 (6th Cir. 2002) (citations omitted).  Further, defendant's argument about the Court's evidentiary rulings does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" required to grant a motion for new trial under Rule 33.  *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

### 3.      Sex Offender Registry Status

Defendant also argues that the jury was able to learn that he "was on [the] sex offender registry in violation of prohibition against such by [m]otion in [l]imine through introducing it into evidence barely redacted at all" [Doc. 298, p. 8].  A brief background is necessary to place this argument in context.  As referenced above, defendant filed a Motion for Leave to File Untimely Motion in Limine [Docs. 261, 261-1] and a Motion for Leave to File Untimely Motion in Limine [Docs. 262, 262-1], in which he requested that the government and its witnesses be ordered to make no mention or present any evidence that defendant was on the sex offender registry and that he had prior convictions.  The Court heard the parties' positions at the final pretrial conference and took the motions under

---

[9]  For the record, and in any event, the Court notes that although the FBI document was not admitted into evidence, Special Agent Pearson testified on cross-examination that F.R. did initially tell the interviewer that she told defendant she was 18 years old [*see* Doc. 328, pp. 196−97].

advisement [Doc. 351, pp. 55−67]. Thereafter, the Court entered an Order [Doc. 277] granting defendant's motions for leave [Docs. 261, 262] and motions in limine [Docs. 261-1, 262-1]. The Court determined that any probative value of defendant's prior convictions and sex offender registry status would be substantially outweighed by a danger of unfair prejudice and would have the potential to mislead or confuse the jury, concluding that Federal Rule of Evidence 403 warrants exclusion of such evidence during the government's case-in-chief [Doc. 277, pp. 5−6]. The Court clarified that the ruling prohibited the government from tendering the entire unredacted WhatsApp communication between defendant and F.R. into evidence as it was reportedly replete with defendant's statements about his prior convictions and being on the sex offender registry, though the government would be allowed to introduce redacted exemplars from WhatsApp [*Id.* at 6].

At trial, the Court notes that defendant made the decision not to stipulate to venue [*see* Doc. 327, pp. 5−6], as was his right. However, the government has the burden of proof and needed to present proof to establish venue in light of defendant's refusal to stipulate. As noted above, the government presented the testimony of TBI associate counsel Williams, who introduced into evidence TBI documents of defendant's redacted sex offender registrations to reflect his address in Kodak, Sevier County, Tennessee throughout 2015 and 2016. Therefore, per the Court's order, the government took the necessary precautions to redact sensitive information from the documents. Nevertheless, the jury was able to see that defendant was reporting his personal information to the Sevier County Sheriff's Office on a routine basis and draw their own conclusions from the

evidence, so long as they followed the Court's instructions. However, there is certainly no indication from the trial that the government introduced evidence of defendant's sex offender registry status in disobedience of the Court's order. Finally, the Court notes that on several occasions throughout the trial, defendant made comments to the jury that he had been living in jail under harsh conditions for over five years [*see e.g.* Doc. 327, p. 26; Doc. 328, p. 92]. When defendant would make these comments, the Court would instruct defendant to focus on the evidence [*Id.*]. The Court also instructed the jury that the comments and arguments of the parties, including their questions and objections, do not constitute evidence [Doc. 330, p. 125]. However, on his cross-examination of Special Agent Pearson, defendant asked her whether she provided F.R. any information about his "activities or suspected activities" to which Special Agent Pearson responded, "Which activities, sir? The fact that you were involved with other minor females or --" [Doc. 328, p. 204]. Therefore, to the extent that the jury arrived at any conclusions about defendant's sex offender status, the Court concludes that defendant cannot complain when he injected or solicited the information himself. *See Faretta*, 422 U.S. at 834 n.46 ("[A] defendant who elected to represent himself cannot thereafter complain that the quality of his own defense amounted to the denial of 'effective assistance of counsel'"). Finally, defendant's argument about the introduction of the redacted TBI documents does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" required to grant a motion for new trial under Rule 33. *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

41

### iv. Fairness of Trial

Defendant also states that the "trial was unfair" without further elaboration [Doc. 298, p. 7]. The Court declines to address this argument at length in light of the Sixth Circuit's consistent instruction that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." *See El-Moussa*, 569 F.3d at 257 (citation omitted). The procedural history set forth above demonstrates that the Court exhaustively addressed defendant's arguments throughout the pretrial and trial proceedings. After defendant complained that he had not yet seen the alleged CP, the Court ordered the government to propose a procedure by which defendant could review the alleged CP prior to trial [Doc. 257]. When defendant requested prescription glasses at the final pretrial conference [Doc. 351, pp. 67−68], the Court directed the United States Marshals Service to provide transportation and funding for defendant to receive a vision examination and corrective lenses, if so prescribed [Doc. 287]. The Court recalls that defendant appeared at the trial with new glasses [*see* Doc. 328, p. 38]. Therefore, the Court took a number of extraordinary steps to ensure that defendant could be ready for trial. Finally, defendant's argument about the fairness of the trial does not challenge the sufficiency of the evidence for purposes of a Rule 29 motion, nor does it create the "extraordinary circumstances" required to grant a motion for new trial under Rule 33. *See* Fed. R. Crim. P. 29; *Hughes*, 505 F.3d at 593.

### v. Request for Hearing

At the conclusion of his motion for new trial, defendant requests that this Court hold a hearing [Doc. 298 at p. 9]. "The question of whether to decide a motion on the supporting evidence filed with the motion or to hold an evidentiary hearing is within the discretion of the trial court." *United States v. O'Dell*, 805 F.2d 637, 643 (6th Cir. 1986) (citation omitted). Given that there is overwhelming evidence of defendant's guilt, as discussed above, the Court exercises its discretion and declines to grant a hearing to resolve his new trial motion.

## V. Conclusion

For the reasons discussed, the Court finds, after viewing the evidence in a light most favorable to the government, that a rational trier of fact could have found defendant guilty beyond a reasonable doubt on Counts One through Nine of the indictment. Additionally, the Court finds that granting defendant a new trial is not in the interest of justice. Neither a judgment of acquittal under Rule 29 nor a new trial under Rule 33 is warranted, and defendant's motion [Doc. 298] is therefore **DENIED**.

IT IS SO ORDERED.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

43